**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

DONNA J. ALSTON                              :
                                             :
                 Plaintiff,                  :
                                             :
        v.                                   :      Civil Action No.:1:07cv00122(ESH)
                                             :
WASHINGTON METROPOLITAN AREA    :
   TRANSIT AUTHORITY                         :
                                             :
                 Defendant.                  :

## WMATA'S MOTION FOR SUMMARY JUDGMENT

The Defendant WMATA comes before this Court, through counsel, and

pursuant to Fed. R. Civ. P. 56 and LCvR 56.1 and moves this Court for summary

judgment on all claims by the Plaintiff, Donna Alston.  As support for this motion,

the Defendant states that the Plaintiff will be unable to establish a <u>prima</u> <u>facie</u> case

of any violation of the Rehabilitation Act of 1973.  The Defendant refers the Court

to the Memorandum of Points and Authorities filed in support hereof.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY**

/s/ _____
Carol B. O'Keeffe
Bar No. 445277
General Counsel

_____ /s/
Mark F. Sullivan
Bar No. 430876
Deputy General Counsel

/s/   Kathleen A. Carey
Kathleen A. Carey
Bar No. 357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
Kcarey@wmata.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Motion For Summary

Judgment, Memorandum in Support, Exhibits, Attachments and Proposed Order was

sent by email to CORLISSV @ ATT this    day of May, 2008 to:

Bruce M. Bender
Van Grack, Axelson, Williamowsky,
Bender & Fishman, P.C.
4 01 N. Washington Street, Suite 550
Rockville, MD 20850

Leizer Goldsmith
The Goldsmith Law Firm, LLC
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20004-1109

/s/   Kathleen A. Carey
Kathleen A. Carey

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

DONNA J. ALSTON                          :
                                         :
              Plaintiff,                 :
                                         :
       v.                                :       Civil Action No.:1:07cv00122(ESH)
                                         :
WASHINGTON METROPOLITAN AREA  :
     TRANSIT AUTHORITY                   :
                                         :
              Defendant.                 :

_____**WMATA'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

       The Defendant WMATA comes before this Court, through counsel, and pursuant

to Fed. R. Civ. P. 56 and LCvR 56.1 and moves this Court for summary judgment on

all claims by the Plaintiff, Donna Alston.  As support for this motion, the Defendant

states that the Plaintiff will be unable to establish a <u>prima</u> <u>facie</u> case of any violation

of the Rehabilitation Act of 1973 (Rehabilitation Act).

**PRELIMINARY STATEMENT**

       On January 18, 2007, Donna Alston filed the Complaint in this litigation alleging

violations of the Rehabilitation Act.  Ms. Alston alleges that WMATA discriminated

against her by failing to reasonably accommodate her actual or perceived disability.

(Plaintiff's Complaint at paragraphs #33 and #40).

<u>Facts</u>

       On August 16, 1999, Plaintiff, Donna Alston, began her employment with

WMATA as a bus operator trainee. (Exhibit #1).   Ms. Alston was unable to

successfully complete the training for that position for a number of reasons.  The

defendant terminated her employment on August 23, 1999 (Exhibit #2). On June 26, 2000, she was re-hired in the position of Bus Cleaner Shifter. (Exhibit #3). As a Bus Cleaner Shifter she was a member of the Amalgamated Transit Union AFL-CIO, Local Union 689, Construction and Maintenance District. (Id.). The position required that Ms. Alston have a Commercial Driver's License (CDL). (Id.). Ms. Alston failed the CDL examination on two occasions (Exhibit #4b). She was, therefore, no longer qualified for the position. She accepted a voluntary demotion to Bus Cleaner (Exhibit #4a), Local 689, Construction and Maintenance District, a position which does not require a CDL (Exhibit #6). She continued to work in that position and continued to be a member of Local Union 689 until WMATA declared her medically disqualified to work as a Bus Cleaner on or about May 25, 2006. (Exhibit #7).

There is a Collective Bargaining Agreement (CBA) in effect from May 1, 2004 to June 30, 2008 between Local Union 689 and WMATA. The terms of the CBA were the subject of negotiations between the union and the employer, WMATA. All members of Local Union 689 are charged with the knowledge of the terms of the CBA and rely upon it for wage and hour information, job security, professional advancement and a number of other protections, rights and benefits. Several of the provisions of that CBA are relevant to the facts and actions taken by WMATA with respect to the employment of Ms. Alston. Most significantly, the CBA provides that any employee who is medically disqualified from continuing to work in his or her current position is entitled to the procedures provided by Section 124 of that agreement. (Exhibit #8, pages 37-38). Section 124 provides, in pertinent part, as follows:

2

An employee who becomes physically disqualified (other than temporarily) from performing the work of the employee's class shall be offered the first permanent vacancy or new job in the bargaining unit which pays not less than seventy-eight percent  (78%) of the rate of the employee's job class for which the employee is qualified.  No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g. 301, 506).

Section 301 of the CBA applies to Maintenance and Construction Personnel and specifically to the issues of seniority, transfer and promotion ( Exhibit #8, pages 89-93).   Specifically, Section 301(a) mandates that "[s]eniority shall be on the basis of three (3) seniority districts: one (1) district shall be composed of all operating employees, another of all maintenance and construction employees, and the other of all administrative and clerical employees."

The position of Bus Cleaner is in the Bus Maintenance Shop, which is an internal division of the Maintenance and Construction District.  (Exhibits #3 and #8 page 89)**.**

Section 301(a) describes when and where job vacancies are announced and how they are to be filled.

(c) Whenever vacancies occur, notice will be posted within ten (10) calendar days on the bulletin boards in the appropriate locations giving opportunity for those who desire to apply to file their applications and to take examinations. The posting notice shall show the duties of the job and assigned days off. Transfers and promotions will be made within forty-five (45) calendar days on the basis of fitness and ability and the applicants will be advised promptly of the results of such examinations; provided, however, that in all cases where two (2) or more employees have approximately equal qualifications for the vacancy, seniority in the maintenance and construction seniority district shall rule.  In determining an employee's fitness and ability, consideration will be given to examination results, work record, job performance and demonstrated ability.

(f) If the vacancy is not filled as a result of internal posting for bid, the job shall be advertised on a maintenance and construction-wide basis under the

3

procedures outlined above.  If the vacancy is not filled as a result of posting on a maintenance and construction-wide basis it shall be next made available system-wide within the bargaining unit.  If the vacancy is not filled as a result of posting on a system-wide basis, it shall be filled from outside the bargaining unit.

What is clear from the wording of Sections 124 and 301, is that employee rights pursuant to Section 124 yield to the protections provided all employees pursuant to Section 301.  The provisions in these two sections have remained the same in the three preceding negotiated Collective Bargaining Agreements in effect since 1992. (Exhibits #8a, #8b and #8c).  It is clear from this history that the expectations of the work force are that the protections provided them by the seniority rules are protected and have been consistently in place for more than fifteen (15) years.

**Plaintiff's Claims**

Ms. Alston claims that she:

> suffers from a permanent impairment to her respiratory system as a result of her injuries on the job.  Said condition causes her to be substantially limited in the major life activity of breathing as she has substantial problem breathing, chest pain and shortness of breath and can only walk short distances.

(Plaintiff's Complaint, paragraph 21).

Over the course of the six (6) years that Ms. Alston was in a paid status as a WMATA employee, she applied for a number of positions posted as vacant within WMATA.  However, for the purposes of this litigation, Plaintiff's claims relate to only six (6) positions for which she allegedly applied and qualified.  She claims that because

4

of her permanent impairment, she should have been placed in one of these positions under Section 124.   Those positions are Facilities Maintenance Clerk, Job Access Information Assistant, Garage Clerk, Receptionist, Customer Information Agent, and Bus Communication Specialist.   With respect to each of these six (6) positions, Plaintiff claims that placement in any of these positions would be a legally-mandated, reasonable accommodation to her disability.   The job descriptions for each position are attached hereto as Exhibits #11-16, respectively.   Plaintiff further claims that WMATA had a duty under to the Rehabilitation Act to preferentially place or transfer Ms. Alston, without competition and in derogation of the CBA, into one of these positions.

**Defendant's Defenses**

Defendant disagrees with the allegations in the Plaintiff's complaint, asserting that WMATA has complied fully with Section 504 of the Rehabilitation Act and that Plaintiff cannot establish a <u>prima</u> <u>facie</u> case with respect to any of the positions for which she submitted an application because she was not a qualified applicant.

**<u>LEGAL ARGUMENT</u>**

I.    **<u>Standards Applicable to Motions for Summary Judgment.</u>**

On a motion for summary judgment,

[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial –– whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 250 (1986). Summary judgment may be granted only where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of

5

material fact and the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c); <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. <u>Liberty Lobby</u>, 477 U.S. at 248. A genuine issue is one where the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party,' <u>id.</u>, as opposed to evidence that 'is so one-sided that one party must prevail as a matter of law.' <u>Id.</u> at 252. A court considering a motion for summary judgment must draw all justifiable inferences from the evidence in favor of the nonmovant. <u>Id.</u> at 255. The nonmoving party, however, must do more than simply 'show that there is some metaphysical doubt as to the material facts.' <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the nonmovant must "come forward with" specific facts showing that there is a genuine issue for trial.' <u>Id.</u> at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original). In the end, 'the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

<u>Kersey v. WMATA</u>, 533 F. Supp. 2d 181, 189 (D.C. Cir. 2008).

## II.    Burden of Proof Pursuant to Claim of Discrimination Under The Rehabilitation Act.

The Rehabilitation Act prohibits discrimination "solely by reason of her or his disability" against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). Because of the similarities of the Rehabilitation Act and the Americans With Disabilities Act (ADA) "cases interpreting either are applicable and interchangeable." <u>Gorman v. Bartch</u>, 152 F.3d 907, 912 (8th Cir. 1998), <u>rev'd on other grounds</u>, <u>Barnes v. Gorman</u>, 536 U.S. 181 (2002); <u>Woodruff v. Peters</u>, 482 F.3d 521, 526 (D.C. Cir. 2007); <u>Breen v. DOT</u>,  282 F.3d 839, 841 (D.C. Cir. 2002).

There are two distinct types of discrimination recognized under the Rehabilitation Act and each has a different burden of proof.  To establish a <u>prima facie</u> case of disparate treatment under the Rehabilitation Act, the Plaintiff must

demonstrate that she is (1) a handicapped person within the meaning of the Act; (2) who is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of the handicap. Scarborough v. Natsios, 190 F. Supp. 2d 5, 19 (D.D.C. 2002).

In this case, in which the Plaintiff alleges that the Defendant failed to make a reasonable accommodation, the Plaintiff must prove "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Id.

Ms. Alston applied for six positions which are currently at issue.  They are:

Facilities Maintenance Clerk
Job Access Information Assistant
Garage Clerk
Receptionist
Customer Information Agent
Bus Communications Specialist

Defendant will address the merits of Ms. Alston's claim with respect to each position, seriatim.

**III.    WMATA Is Unable To Make A Reasonable Accommodation Because The Applicable Collective Bargaining Agreement Seniority System Trumps The Rehabilitation Act In Filling The Position Of Facilities Maintenance Clerk.**

At WMATA there are three major labor unions, Local Union 689, Local 2 and Local 922, affiliated with different national unions.  A Collective Bargaining Agreement

controls working conditions for all Local Union 689 employees of WMATA. The CBA includes a neutral system that allocates job opportunities, without regard to the disabled status of the employees it covers (Exhibit #17). One of the stated purposes of the collecting bargain agreement is to "provide the best possible working conditions for the employees. . . ." Id. Within Local Union 689 there are also three seniority districts, comprised of operating employees, maintenance and construction employees, and administrative and clerical employees. The CBA, specifically Section 301, requires that all job vacancies which arise must be posted in the district wherein the job vacancies occur thus providing Local 689 and district employees the opportunity to apply for the vacancy. If "two (2) or more employees have approximately equal qualifications for the vacancy, seniority in the maintenance and construction district shall rule." (Exhibit #8 page 90). Plaintiff, Donna Alston, is a member of Local Union 689, within the construction and maintenance district, and is subject to the provisions of the CBA negotiated between WMATA and the union. Her seniority date within this district of Local Union 689 is determined by her date of hire into the district, June 26, 2000. That seniority date identifies her competitive seniority position vis-a-vis other applicants for vacant positions within the union and same district. If vacant positions cannot be filled from within the location of the open position, position vacancies are next made available district-wide; if vacant positions cannot be filled from within the district (i.e., Administrative and Clerical), the positions are then made available to the entire Local 689 bargaining unit, which is what occurred in Ms. Alston's case. Id.

Ms. Alston applied for the position of Facilities Maintenance Clerk. That position

was posted on September 25, 2003.  The position is a Local 689 position within the Administrative and Clerical District of Local 689.  WMATA selected James Randolph, III, a Local 689 employee in the Maintenance and Construction Division, to fill the position.  (Exhibit #23); (Affidavit of Steven Godbey at paragraph 8).  Mr. Randolph was qualified for the position and, with a seniority date of September 29, 1996, had more Local 689 seniority than Ms. Alston,. (Id.).

In U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002) the Court was asked to resolve the "potential conflict between: (1) the interests of a disabled worker who seeks assignment to a particular position as a 'reasonable accommodation,' and (2) the interests of other workers with superior rights to bid for the job under an employer's seniority system." Id. at 393-4.  In response, the Court held that there is "nothing in the statute that suggests Congress intended to undermine seniority systems . . . . " (Id.). The Court held that "the employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to overcome an employee challenge pursuant to the ADA.  Id. at 405.  The Court reviewed the regulatory and statutory scheme of the ADA and concluded that, when considered in the context of an existent collective bargaining agreement, Congress did not intend to undermine those protections and expectations bargained for and agreed upon between employers and employees.

In Barnett, the Court also looked by analogy to those cases construing violations of Title VII, the Rehabilitation Act, or the ADA where the seniority system was employer-imposed, and not the subject of a collective bargaining agreement.  In each

9

case, the lower courts have held that "collectively bargained seniority trumps the need for reasonable accommodation . . . ." Id. at 403-4. Additionally, this is not proof that need be established on a case-by-case basis "because it would not be reasonable in the run of cases that the assignment in question trump the rules of a seniority system. To the contrary, it will ordinarily be unreasonable for the assignment to prevail." Id. at 403. It is clear that neither the ADA nor the Rehabilitation Act require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining system. A "showing that the assignment would violate the rules of a seniority system warrants summary judgment for the employer - - unless there is more." Id. at 406. The "more" requires that Plaintiff bear the burden of establishing special circumstances to overcome the employers adherence to the seniority rules, and that it would be reasonable to select Ms. Alston over the more senior candidate. Id. Plaintiff is unable to meet that burden.

In EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307 (4th Cir. 2008) the Court upheld the primacy of a seniority system in a religious discrimination claim under Title VII. There the Court repeatedly recognized the importance of a collectively bargained seniority system for both the employer and the rank and file employees. The Court held that "employers must be given leeway to plan their business operations and possible accommodative options in advance, relying on an accommodation's predictable consequences along the way. If an employer reasonably believes that an accommodation would entail a violation of the applicable CBA or impose 'more than a de minimis impact on coworkers,' then it is not required to offer the accommodation.

. . ." Id. 317 (Citation omitted).  Employers are permitted to consider the impact an accommodation would have on a seniority system when evaluating an accommodation.

Plaintiff's argument that she is entitled to direct <u>placement</u> in a job without competition from other Local 689 employees, is, therefore, contrary to the holding in <u>Barnett</u>.

Plaintiff has failed to develop any evidence of any special circumstances requiring her selection of the individuals for the position of Facilities Maintenance Clerk. Therefore, with respect to this job, the Defendant is entitled to summary judgment on the Plaintiff's claims of violations of the Rehabilitation Act.

**IV.    Plaintiff Cannot Establish a Prima Facie Case Because She Either Failed to Apply or Was Not Qualified**

The Rehabilitation Act does not require that an employer transfer a disabled employee into a position for which she is not qualified. Id.; 42 U.S.C. Section 12112(b)(5)(A).

**A.    Job Access Information Agent.**

The position of Job Access Information Assistant, a Local 2 position, involves coordinating transportation services for disabled customers.  (Exhibit #13).  Some of the various job requirements included assisting with the preparation of federal government documentation in support of continued funding for the program, assisting with the creation and maintenance of a web-site, and assisting with the preparation of program promotions, including brochures and other outreach materials.  Therefore, pursuant to the CBA, the Plaintiff had no seniority when she applied for the position,

11

and was properly treated as an external applicant.   The Defendant was precluded by the Local 2 agreement from considering Ms. Alston over other qualified Local 2 employees.  The Defendant received applications from eligible applicants from within Local 2. The Local 2 CBA required that those applicants be given priority over Ms. Alston for the vacancy, notwithstanding her seniority under the Local 689 contract. No internal candidate was qualified for the position.  (Affidavit of Steven Godbey at Paragraph #8).

WMATA hired Keisha White, an external candidate,  to fill the position.  After reviewing the applications, it was determined that Ms. White had direct experience in the transit industry (Central Ohio Transit Authority) with disabled customers, which was a necessary qualification for this position.  Ms. Alston has no such experience. (Affidavit of Steven Godbey at paragraph 7, Exhibit #22, Application of Keisha White). WMATA has discretion to decide what experience is required for a successful applicant.

The D.C. Circuit has recognized an employer's "unfettered discretion" to choose among qualified candidates for a position, and warned against precisely the sort of second-guessing and comparisons that are the gravamen of Plaintiff's claims of discrimination. <u>Fischbach v. Department of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  The <u>Fischbach</u> court reversed a judgment for the employee, finding that Plaintiff had failed to carry his burden of proof with regard to pretext. The Court found that "even if a court suspects that a job applicant was victimized by poor selection procedures it may not second guess an employer's personnel

12

decision absent demonstrably discriminatory motive. . . . [T]he issue is not the correctness or desirability of the reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." Fischbach, 86 F.3d at 1183.  Federal anti-discrimination laws do "not authorize a federal court to become "a super-personnel department that reexamines an entity's business decisions." Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999). Accord, Jordan v. Summers, 205 F.3d 337, 344 (7th Cir. 2000) (discrimination laws serve only to prevent consideration of forbidden characteristics--like race--but they are not, as we have repeatedly noted, court-enforced merit selection programs.)  Even where the differences between the candidates' qualifications are a "close call," the courts "assume that the employer is more capable of assessing the significance of small differences in the qualifications. . ." Barnette v. Chertoff, 453 F.3d, 513, 518 (D.C. Cir. 2006).  Similarly, the Court in Carter v. George Washington University, 387 F.3d 872 (D.C. Cir. 2004) upheld the University's personnel decision when choosing between two candidates for the position of Director of Development. The Court held that given that the successful candidate had more extensive fund-raising experience, there was "no basis for a jury to find that a reasonable employer would have found [the Plaintiff] more qualified - let alone more significantly more qualified - for the position. . . ." Id. at 882.

Given the total absence of any experience with this type of transit program, WMATA's decision not to select Ms. Alston over Ms. White simply does not create a jury question.

13

### B.    Garage Clerk.

In 2003 Ms. Alston submitted an application for the position of Garage Clerk (Exhibit # 16).  There were two Garage Clerk positions advertised In 2003.  Ms. Alston and other applicants were considered for both positions.  Ms. Alston failed the typing test which required that she be able to type 25 words per minute.  She was not eligible to proceed to the next round of interviews for either position. The successful applicants were Nena Spriggs and Christopher Smart.  While each candidate was less senior than Ms. Alston, both candidates passed the initial typing examination which was a requirement for the position.  (Affidavit of Steven Godbey at Paragraph 9).

She was, therefore, not a qualified applicant for that position.

### C.    Receptionist and Customer Information Agent.

WMATA's records indicate that Ms. Alston never applied for the Receptionist or the Customer Information Agent position.  The attached affidavit from Steven Godbey, Supervisor, Human Resources confirms that fact.  (Exhibit #20).  The latter position was reclassified as an Administrative Aide and ultimately abolished on July 2, 2007.

### D.    Bus Communications Specialist.

The Bus Communications Specialist position requires that the applicant have a CDL (Exhibit #14).  Ms. Alston does not have such a license, and although she attempted to secure such a license in 2000, she was unable to pass the test. (Exhibit #4b Letter to Donna Alston dated August 2, 2000).

14

The Garage Clerk, Receptionist, Customer Information Agent, and Bus Communications Specialists positions are, therefore, no longer in issue, and claims related to those positions should be dismissed.[1]

The Defendant asserts that Ms. Alston was unable to perform the essential functions of these positions, never applied for two of the positions, and that reasonable accommodations could not be made for Ms. Alston.

**V.    Plaintiff is Unable to Demonstrate Violations of the Rehabilitation Act with Respect to Positions Applied for Before WMATA Was on Notice of the Plaintiff's Disability.**

Further, Plaintiff's claims of discrimination pursuant to the Rehabilitation Act fail with respect to her applications for any position posted and applied for prior to April 25, 2006. It was not until that date when the Plaintiff was deemed medically disqualified by WMATA Health Services from her position as a Bus Cleaner. (Exhibit #7). Three of the positions for which Ms. Alston submitted her application were positions in which vacancies were posted, and for which Ms. Alston applied, years before the Plaintiff was perceived disqualified on April 25, 2006. The Garage Clerk position was posted from September 11, 2003 through September 24, 2003 (Exhibit # 18); the Facilities Maintenance Clerk from September 25, 2003 through

---

[1]Additionally, Plaintiff's expert vocational rehabilitation witness, Lee Mintz, also identified in her initial report (Exhibit #9) that Ms. Alston was qualified for the position of Mail Clerk Driver. However, in an addendum report (Exhibit #10), Ms. Mintz withdrew that position from consideration.

October 8, 2003 (Exhibit #19); and Job Access Information Clerk on September 12, 2005 (Exhibit #20).

As alleged in the Plaintiff's complaint at paragraphs 15 through 17, Plaintiff's physician released her to a light duty status with no exposure to bus fumes as of February 2006. WMATA declared Ms. Alston medically disqualified from her position on April 25, 2006. Ms. Alston first informed WMATA's Medical Services Unit, Gina Pervall-Walker, M.D. on February 17, 2006 that she had received a mask in response to respiratory symptom (Exhibit #21, deposition of Gina Pervall-Walker at pages 17 and 18). The earliest date that WMATA had notice of the Plaintiff's disability and need for an accommodation was February 17, 2006. Therefore, Plaintiff cannot claim that her employer failed to accommodate her in violation of the Rehabilitation Act in regard to these earlier posted positions. In Flemings v. Howard University, 198 F.3d 857, 861 (D.C. Cir. 1999), the Court held that only requests for accommodations made at the time of the known disability and not prior to establishment of the need for an accommodation are relevant. The employer must be made aware of the "impairment itself and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability." Crandall v. Paralyzed Veterans of America, 146 F.3d 894, 897 (D.C. Cir. 1998).

## CONCLUSION

Plaintiff is unable to establish a prima facie case with respect to any of the six (6) positions at issue. For the positions applied for before April 25, 2006, there

can be no violation of the Rehabilitation Act, since WMATA was unaware of Ms. Alston's alleged need for an accommodation. The CBA seniority system takes precedence over Section 124 employees and the term "reasonable accommodation" does not to require WMATA to violate that system. Therefore, she was not qualified for the Facilities Maintenance Clerk position. Ms. Alston did not meet the minimal qualifications for the position of Job Access Information Assistant. WMATA's records indicate that Ms. Alston failed to apply for the positions of Receptionist and Customer Information Agent. She has produced no evidence to the contrary.

Additionally, as the attached affidavit of Roslyn Rikard demonstrates, WMATA has consistently assisted and attempted to assist the Plaintiff in securing a different position within WMATA and has more than met its burden under the Rehabilitation Act.

Therefore, the Defendant requests that the Court grant its motion for summary judgment on all claims.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

/s/_____

Carol B. O'Keeffe
Bar No. 445277
General Counsel

_____/s/_____

Mark F. Sullivan
Bar No. 430876
Deputy General Counsel

/s/ Kathleen A. Carey_____

Kathleen A. Carey
Bar No. 357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1496
Kcarey@wmata.com

 WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY 

# PERSONNEL ACTION REPORT

009843

## SECTION 1 - TYPE OF PERSONNEL ACTION

DATE : 06 - 14 - 99

| EMPLOYMENT ACTIONS | | COMPENSATION ACTIONS | |
|---|---|---|---|
| I New Hire | Voluntary Reassignment | Title Change | Salary Increase |
| Re-Hire | Involuntary Reassignment | Reclassification | Salary Adjustment |
| Limited Hire | Demotion | Disability Leave | Delay Salary Increase |
| Reinstatement | Suspension | Long-Term Disability | Acting Assignment |
| Promotion | Leave Without Pay (LWOP) | Longevity | Termination of Acting Assignment |
| Transfer | Sick Over 30 Days | Career Ladder | |
| Return to Duty | Worker's Compensation Over 30 Days | | |

Effective Dates of Action(s)

1  08 - 16 - 99    3  __ - __ - __

2  __ - __ - __    4  __ - __ - __

## SECTION 2 - EMPLOYEE INFORMATION

| Employee Number | Dist. Code | Social Security Number | Date of Hire | Home Phone Number | Birth Date |
|---|---|---|---|---|---|
| 001102 | 91 | 577 96 3198 | 08 - 16 - 99 | 202 397 - 2674 | 06 - 21 - 65 |

| First Name | Middle Name | Last Name |
|---|---|---|
| DONNA | J | ALSTON |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 724 Langston Terr, NE | Washington | D C | 20002 |

| Position Title | Class Code | Line Control No. |
|---|---|---|
| Student M/Bus Oper PT | 6501 | 002670 |

| Employment Categories | | | | | Employment Type(s) | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Regular | ☐ Temporary | ☒ Trainee | ☐ Intern | ☐ Pensioner | ☐ Full-Time | ☒ Part-Time | | ☐ Limited Duration |

| Dept / Office | Office Code | Location Code | Union Code | Shift | Hours | Salary | Grade/Step |
|---|---|---|---|---|---|---|---|
| OSQT/TRNG | 3133 | 3016 | 0689 | D | 30 | $10,712.00 | U |

| Employment Group | | Reports to (Name and Title) |
|---|---|---|
| ☒ Rep | ☐ Non-Rep | Stephen A. Petruccelli, Supervisor |

## SECTION 3 - STATUS CHANGE

| New Position Title | Class Code | Line Control No. |
|---|---|---|
| | | |

| Employment Categories | | | | | Employment Type(s) | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Regular | ☐ Temporary | ☐ Trainee | ☐ Intern | ☐ Pensioner | ☐ Full-Time | ☐ Part-Time | | ☐ Limited Duration |

| Dept / Office | Office Code | Location Code | Union Code | Shift | Hours | Last Day Worked | Dist / Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Employment | | Reports to (Name and Title) |
|---|---|---|
| ☐ Rep | ☐ Non-Rep | |

## SECTION 4 - SALARY CHANGE

| From (Annual) Salary | Grade Step | To (Annual) Salary | Grade-Step | Amount of Increase |
|---|---|---|---|---|
| | | | | |

| % of Increase | Date of Last Increase | Reason for Change | | |
|---|---|---|---|---|
| | | ☐ Salary Increase | ☐ Promotion | ☐ Other ___ |

| From (Annual) Salary | Grade/Step | To (Annual) Salary | Grade Step | Amount of Increase |
|---|---|---|---|---|
| | | | | |

| % of Increase | Date of Last Increase | Reason for Change | | |
|---|---|---|---|---|
| | | ☐ Salary Increase | ☐ Promotion | ☐ Other ___ |

## SECTION 5 - FOR HMRP USE ONLY

| Seniority Date | Anniversary Date | Next Review Date | CSBR Review / Approval Signature | Date |
|---|---|---|---|---|
| | | | | |

## SECTION 6 - APPROVAL

| Risk | Date | Office Director | Date | COO / BUS | Date |
|---|---|---|---|---|---|
| | | Sherman L. Raney, Jr. | 6 - 14 - 99 | | |

| Dept / DGM | Date | Manager / ESBR | Date |
|---|---|---|---|
| | | | |

| Director / HRMP | Date | General Manager | Date |
|---|---|---|---|
| Richard L. Plante | 7 22 99 | | |

## SECTION 7 - REMARKS

DEFENDANT'S

```
                    UPDATE POSITION INFORMATION                    Y130-01

SEARCH VALUE   001102                CURRENT PAY PERIOD   08-07-1999
EMPLOYEE KEY   HRY  001102           DATE OF HIRE         08-16-1999
NAME           D J ALSTON            DIST  CODE           91

DATE  06-14-1999           FYR  2000         ANN. DATE  08-16-1999
EFFECTIVE DATE 08-16-1999                    GRDE / STEP
PAR APPR DTE 07-22-1999    DEPT CODE  3165      PROGRESSION 1000
TYPE OF PERS ACTION  NH                       NORMAL HOURS    30.00
SENIORITY DATE  08-16-1999 ACTION CODE AR     HRLY RATE $   5.1500
SENIORITY SEQ CODE         ECAT   R                          .0000
UNION CODE  0689           ETYP  PT           ANNUAL SALARY $   10712.00
WK LOC CODE 3016           POS LINE #                            .00
CK LOC CODE 3016                     002670   CLASS CODE  6501
STATE CODE  52             TA/TS/TP           "RED CIRCLE" / EXCEPTION
SHIFT CODE D               SP/NP/OP  OP          TO PAY - SCALE   N


F1 - EMPLOYEE KEY                  F7   - *******************
F2 - EMPLOYEE NUMBER               F9   - WMATA EMPLOYEE MENU
F3 - LAST NAME                     F10  - HUMAN RESOURCES MENU
F4 - SOCIAL SECURITY NUMBER        F12  - ONLINE SYSTEM MENU
Press Enter to Confirm Change                              => _____
```

# M E M O R A N D U M

**metro**

**SUBJECT:** Dismissal - Donna J. Alston    **DATE:** August 23, 1999
Employee No. 001102

**FROM:** OPAS - Stephen A. Petruccelli

**TO:** Donna J. Alston
724 Langston Terrace, N.E.
Washington, DC 20002

On August 16, 1999, you reported with Class 99-15 to the OPAS Bus Central Training Facility for training as a New Service Part-time Bus Operator Candidate.

On August 20, 1999, you were interviewed by Instructor H. Bridges and myself concerning your unsatisfactory progress in developing bus operating skills. During the interview, you were informed that you must show immediate and substantial improvement in your operating skills by close of business, August 23, 1999.

On August 23, 1999, Instructor Bridges reported that you had failed to demonstrate substantial, consistent improvement in your operating skills and had failed to improve from your performance review of August 20.

Therefore, effective August 23, 1999, your training is being discontinued for failure to improve your operating skills and failure to improve from your performance interview of August 23, 1999. Your WMATA temporary I.D. card, keys and any other Authority property in your possession should be returned to Bladensburg/Central Training, Stephen Petruccelli. These items, totalling $504.00, will be deducted from your final check if not immediately returned to the Authority. Any remaining monies due you can be collected from the Office of the Secretary-Treasurer, 600 Fifth Street, N.W., Washington, D.C.

Washington
Metropolitan Area
Transit Authority

All future inquiries regarding any other employment opportunities with the Washington Metropolitan Area Transit Authority should be directed to the Office of Human Resources and Management Development, also located at 600 Fifth Street, NW, Washington, D.C., 20001.

cc: OPAS - J. Hughes
ESBR - L. Young
M. Moore
BTRA - R. Peterson
S. Burton



EXHIBIT

Alston 12

DEFENDANT'S



**M metro** WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
# PERSONNEL ACTION REPORT

## SECTION 1—TYPE OF PERSONNEL ACTION                    DATE : 06-15-00

**EMPLOYMENT ACTIONS**

| | | | |
|---|---|---|---|
| | New Hire | ___ Voluntary Reassignment | ___ Involuntary Reassignment |
| 1 | Re-Hire | ___ Demotion | |
| | Limited Hire | ___ Suspension | |
| | Reinstatement | ___ Leave Without Pay (LWOP) | |
| | Promotion | ___ Sick Over 30 Days | |
| | Transfer | ___ Worker's Compensation Over 30 Days | |
| | Return to Duty | | |

**COMPENSATION ACTIONS**

___ Title Change            ___ Salary Increase
___ Reclassification        ___ Salary Adjustment
___ Disability Leave        ___ Delay Salary Increase
___ Long-Term Disability    ___ Acting Assignment
___ Longevity               ___ Termination of Acting Assignment
___ Career Ladder

Effective Dates of Action(s)

1    06-26-00        3
2                    4

## SECTION 2—EMPLOYEE INFORMATION

| Employee Number | Dist. Code | Social Security Number | Date of Hire | Home Phone Number | Birth Date |
|---|---|---|---|---|---|
| 001102 | 91 | | | | |

| First Name | Middle Name | Last Name |
|---|---|---|
| Donna | J | Alston |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 724 Langston Terrace, N.E. | Washington | DC | 20002 |

| Position Title | Class Code | Line Control No. |
|---|---|---|
| Cleaner-Shifter | 1902 | 005859 |

| Employment Categories | | | | | Employment Type(s) | | |
|---|---|---|---|---|---|---|---|
| X Regular | ___ Temporary | ___ Trainee | ___ Intern | ___ Pensioner | X Full-Time | ___ Part-Time | ___ Limited Duration |

| Dept/Office | Office Code | Location Code | Union Code | Shift | Hours | Salary | Grade/Step |
|---|---|---|---|---|---|---|---|
| BUS/BLMT | 3232 | 3020 | 0689 | M | 40 | $ 18,820.88 | U |

| Employment Group | Reports to (Name and Title) |
|---|---|
| X Rep    ___ Non-Rep | John Smith, Superintendent |

## SECTION 3—STATUS CHANGE

| New Position Title | Class Code | Line Control No. |
|---|---|---|
| | | |

| Employment Categories | | | | | Employment Type(s) | | |
|---|---|---|---|---|---|---|---|
| ___ Regular | ___ Temporary | ___ Trainee | ___ Intern | ___ Pensioner | ___ Full-Time | ___ Part-Time | ___ Limited Duration |

| Dept/Office | Office Code | Location Code | Union Code | Shift | Hours | Last Day Worked | Dist/Code |
|---|---|---|---|---|---|---|---|
| | | | 0000 | | | | |

| Employment Group | Reports to (Name and Title) |
|---|---|
| ___ Rep    ___ Non-Rep | |

## SECTION 4—SALARY CHANGE

| From (Annual) Salary | Grade-Step | To (Annual) Salary | Grade-Step | Amount of Increase |
|---|---|---|---|---|
| | | | | |

| % of Increase | Date of Last Increase | Reason for Change | | |
|---|---|---|---|---|
| | | ___ Salary Increase | ___ Promotion | ___ Other |

| From (Annual) Salary | Grade-Step | To (Annual) Salary | Grade-Step | Amount of Increase |
|---|---|---|---|---|
| | | | | |

| % of Increase | Date of Last Increase | Reason for Change | | |
|---|---|---|---|---|
| | | ___ Salary Increase | ___ Promotion | ___ Other |

## SECTION 5—FOR HMRP USE ONLY

| Seniority Date | Anniversary Date | Next Review Date | CSBR Review/Approval Signature | Date |
|---|---|---|---|---|
| | | | | |

## SECTION 6—APPROVAL

| RISK | Date | Office Director | Date | Dept/AGM | Date |
|---|---|---|---|---|---|
| | | Phillip C. Wallace | 6-15-00 | | |

| Dept/DGM | Date | Director/HMRP | Date |
|---|---|---|---|
| | | | 06-22-00 |

| Assistant General Manager/HMRS | Date | General Manager | Date |
|---|---|---|---|
| | | | |

## SECTION 7—REMARKS

amh/B-23-CS

DEFENDANT'S

# WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
## PERSONNEL ACTION REPORT    8-17-00    018101

## SECTION 1—TYPE OF PERSONNEL ACTION                    DATE : 08-03-00

**EMPLOYMENT ACTIONS**

| | | |
|---|---|---|
| New Hire | 1 Voluntary Reassignment | |
| Re-Hire | Involuntary Reassignment | |
| Limited Hire | Demotion | |
| Reinstatement | Suspension | |
| Promotion | Leave Without Pay (LWOP) | |
| Transfer | Sick Over 30 Days | |
| Return to Duty | Worker's Compensation Over 30 Days | |

**COMPENSATION ACTIONS**

| | |
|---|---|
| Title Change | Salary Increase |
| Reclassification | Salary Adjustment |
| Disability Leave | Delay Salary Increase |
| Long-Term Disability | Acting Assignment |
| Longevity | Termination of Acting Assignment |
| Career Ladder | |

Effective Dates of Action(s)

1    08-03-00    3

2    4

## SECTION 2—EMPLOYEE INFORMATION

| Employee Number | Dist. Code | Social Security Number | Date of Hire | Home Phone Number | Birth Date |
|---|---|---|---|---|---|
| 001102 | 91 | | | | |

| First Name | Middle Name | Last Name |
|---|---|---|
| Donna | J | Alston |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

| Position Title | | | | Class Code | Line Control No. |
|---|---|---|---|---|---|
| Cleaner-Shifter | | | | 1902 | 005859 |

Employment Categories: ☒ Regular  ☐ Temporary  ☐ Trainee  ☐ Intern  ☐ Pensioner
Employment Type(s): ☒ Full-Time  ☐ Part-Time  ☐ Limited Duration

| Dept/Office | Office Code | Location Code | Union Code | Shift | Hours | Salary | Grade/Step |
|---|---|---|---|---|---|---|---|
| BUS/BLMT | 3234 | 3220 | 0689 | M | 40 | $ 18,820.88 | U |

Employment Group: ☒ Rep  ☐ Non-Rep
Reports to (Name and Title): John Smith, Superintendent

## SECTION 3—STATUS CHANGE

| New Position Title | | | | Class Code | Line Control No. |
|---|---|---|---|---|---|
| Cleaner | | | | 1901 | 005629 |

Employment Categories: ☒ Regular  ☐ Temporary  ☐ Trainee  ☐ Intern  ☐ Pensioner
Employment Type(s): ☒ Full-Time  ☐ Part-Time  ☐ Limited Duration

| Dept/Office | Office Code | Location Code | Union Code | Shift | Hours | Last Day Worked | Dist/Code |
|---|---|---|---|---|---|---|---|
| BUS/FMMT | 323A | 3420 | 0689 | D | 40 | | 91 |

Employment Group: ☒ Rep  ☐ Non-Rep
Reports to (Name and Title): Anthony Johnson, Superintendent

## SECTION 4—SALARY CHANGE

| From (Annual) Salary | Grade-Step | To (Annual) Salary | Grade-Step | Amount of Increase |
|---|---|---|---|---|
| $ 18,820.88 | U | $18,350.38 | U | |

% of Increase | Date of Last Increase | Reason for Change: ☐ Salary Increase  ☐ Promotion  ☒ Other Voluntary Reassignment

| From (Annual) Salary | Grade/Step | To (Annual) Salary | Grade Step | Amount of Increase |
|---|---|---|---|---|
| | | | | |

% of Increase | Date of Last Increase | Reason for Change: ☐ Salary Increase  ☐ Promotion  ☐ Other

## SECTION 5—FOR HMRP USE ONLY

| Seniority Date | Anniversary Date | Next Review Date | CSBR Review/Approval Signature | Date |
|---|---|---|---|---|
| | | | | |

## SECTION 6—APPROVAL

| RISK | Date | Office Director | Date | Dept/AGM | Date |
|---|---|---|---|---|---|
| | | Phillip C. Wallace | 8 3 00 | | |

| Dept/DGM | Date | | |
|---|---|---|---|
| Assistant General Manager/HMRS | Date | General Manager | Date 8/5 |

## SECTION 7—REMARKS

amh/F-03-C

DEFENDANT'S

Case 1:07-cv-00122-ESH    Document 14-3    Filed 05/06/2008    Page 6 of 84

08/02/00  WED 11:48 FAX 2029625396                                                    ☑001

# M E M O R A N D U M



**SUBJECT:** Voluntary Demotion          **DATE:**  August 2, 2000

**FROM:**    BLMT  John Smith

**TO:**       Ms. Donna J. Alston, 001102

      Ms. Alston, it was reported this date, by Mr. Petrucelli of the Bus Training department, that you have failed to pass are receive your CDL license on two occasions.

Therefore, you were offered and agreed to accept a voluntary demotion to the position of cleaner at the Four Mile Run bus division trick number F03C on the Day shift 06:30am to 3:00pm and you are to report to Mr. Anthony Johnson, Superintendent of Maintenance on August 3, 2000.

Your signature below indicates, that you have been offered and accepted this voluntary demotion from Cleaner Shifter, to Cleaner, and that you have read, and received a copy of this document.

_Donna J. Alston_  8-2-00   11:46
Donna J. Alston  001102        Date        Time

**Washington**
**Metropolitan Area**
**Transit Authority**

4 Mile Bus Maint
202-635-6950

DEFENDANT'S

Code No.: 1902

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

### JOB DESCRIPTION

POSITION:    Cleaner Shifter

DATE: 12-09-99

REVIEWED:
DEPT./OFFICE:    BUSV/BMNT

BUSV: _12-9-99_
HRMP: _12-7-99_

REPORTS TO:    Garage Shift Supervisor

LABR: _JCPhess 12/8/99_

### POSITION SUMMARY:

This is entry level manual maintenance work involving the routine maintenance, cleaning, servicing, and operating of WMATA vehicles. Employee in this class becomes familiar with the various types of vehicles, routine maintenance procedures and shop/yard safety and environmental procedures while performing general cleaning and servicing duties. Employee works under close supervision or within well established guidelines. Employee reports to the Lead Mechanic or Supervisor of the shift to which assigned. Work is reviewed through spot checks and occasional checking of results by a Lead Mechanic or Supervisor.

### DUTIES:

Cleans and washes interiors and exteriors of vehicles, manually and/or with automatic equipment. Removes debris from inside the vehicles, inspects for personal property left in vehicles, and releases to proper authority.

Removes graffiti from interior and exterior surfaces manually and/or with machine type devices and chemical cleaning devises.

Checks and replenishes various fluid levels to include; engine or transmission fluid, coolant, diesel fuel, and maintains appropriate records indicating fluids dispensed.

Reports conspicuously visible damages and unusual conditions warranting corrective action; performs duties in conformance with safety, environmental, and maintenance practices and procedures.

Assist in preparation of maintenance activity or related reports as required.

DEFENDANT'S

Code No.: 1902

Assists in maintaining cleanliness of work area which may include heavy physical labor.

Operates Authority vehicles as required.

Works various hours, locations, and days.

Performs related duties as required.

## KNOWLEDGE, SKILLS, AND ABILITIES

Ability to operate buses and other Authority vehicles.

Ability to clean WMATA vehicles and facilities, and work with approved cleaning products.

Ability to service WMATA vehicles to include mechanical and safety checks.

Ability to perform a variety of manual tasks under continuous exposure to various weather conditions.

Ability to understand and follow  instructions.

Ability to work various hours, locations, and days.

Ability to communicate effectively.

Ability  to properly complete  vehicle/maintenance reports and other reports as required.

Ability to gain knowledge of Authority safety and maintenance rules and regulations.

Ability to perform strenuous physical tasks including frequent lifting of objects weighing up to 30 pounds and occasionally to 50 pounds.

Ability to deal courteously and effectively with supervisors and co-workers.

Performs related duties as required.

**Code No.: 1902**

## MINIMUM QUALIFICATIONS AND EXPERIENCE

An applicant must be a high school graduate or possess a high school equivalency certificate, and be a minimum of 21 years of age.

## LICENSE:

Possession of or ability to rapidly obtain and maintain a valid Commercial Driver's License (CDL) with appropriate endorsement from jurisdiction of residence for passenger bus, and air brakes.

All Cleaner Shifters must maintain a CDL with appropriate endorsements.

No applicant will be considered for employment who has accrued more than four points, more than one moving violation, or suspension or revocation of driver's permit within the 24 months preceding application. Numerous traffic violations of any type which would reflect immaturity may cause applicant to be disqualified.

## MEDICAL GROUP:

Ability to complete satisfactorily the medical examination for this class. The employee must be able to perform the essential functions of this job either with or without reasonable accommodation(s).

Cleaner Shifter = 80% of the Top Operator Rate (84 month progression to reach top Cleaner rate)

55% for the 1st 12 months
60% for the next 12 months
68% for the next 12 months
76% for the next 12 months
84% for the next 12 months
92% for the next 12 months
100% after 84 months of service

Code No.: 1901

# WASHINGTON METROPOLiTAN AREA TRANSIT AUTHORITY

## JOB DESCRIPTION

POSITION:        Cleaner

DEPT./OFFICE:    BUSV/BMNT

REPORTS TO:      Garage Shift Supervisor

DATE: _12-9-99_

REVIEWED:
BUS _12-9-99_
HRM _12-7-99_
LAB _Local 689, ATU_
_Peters 12/8/99_

## POSITION SUMMARY:

This is routine manual work involving the interior and exterior cleaning and servicing of transit vehicles. Employee becomes familiar with the various types of vehicles and shop/yard safety procedures while performing general duties as a Cleaner. Employee works under close supervision or within well established guidelines. Employee reports to the Lead Mechanic or Supervisor of the shift assigned. Work is reviewed through spot checks and occasional checking of results by a Lead Mechanic or Supervisor.

## DUTIES:

Cleans and washes interiors and exteriors of vehicles, manually and/or with machine type devices, automatic washing equipment, and various chemical cleaning products.

Removes debris left in vehicles by passengers.

Removes graffiti from interior and exterior surfaces manually and/or with machine type devices and chemical cleaning products.

Inspects vehicles for personal property left by passengers releasing same to proper authority.

Performs majority of duties while exposed to various weather conditions.

Assists in maintaining cleanliness of work area and WMATA facilities which may include trash removal and heavy physical labor.

DEFENDANT'S

**Code No.: 1901**

Performs vehicle servicing duties and completes appropriate records of fuel delivery.

Works various hours, locations, and days. Operates Authority vehicles as required.

Completes appropriate records of accomplished and pending cleaning assignments.

Performs related duties as required.

## KNOWLEDGE, SKILLS, AND ABILITIES

Ability to perform cleaning on WMATA vehicles and facilities and work with approved cleaning products.

Ability to perform vehicle servicing functions on WMATA vehicles.

Ability to understand and follow instructions.

Ability to communicate effectively.

Ability to properly complete vehicle/maintenance reports and other reports as required.

Ability to gain knowledge of Authority safety and maintenance rules and regulations.

Ability to perform a variety of manual tasks under continuous exposure to various weather conditions.

Ability to perform strenuous physical tasks including frequent lifting of objects weighing up to 30 pounds and occasionally to 50 pounds.

Ability to work various hours, locations, and days.

Ability to deal courteously and effectively with supervisors and co-workers.

Perform related duties as required.

## MINIMUM QUALIFICATIONS AND EXPERIENCE

An applicant must be a high school graduate or possess a high school equivalency certificate, and be able to comply with the following:

Must be at least 18 years of age.

Code No.: 1901

**LICENSE:**

Possession of, or ability to rapidly obtain and maintain a valid motor vehicle operator's permit  issued from the jurisdiction of residence.

**MEDICAL GROUP:**

Ability to complete satisfactorily the medical examination for this class. The employee must be able to perform the essential functions of this job either with or without reasonable accommodation(s).

Ability to perform strenuous physical tasks including frequent lifting of objects weighing up to 30 pounds and occasionally to 50 pounds.

Cleaner = 78% of the Top Operator Rate (84 month progression to reach top Cleaner rate)

55% for the 1st 12 months
60% for the next 12 months
68% for the next 12 months
76% for the next 12 months
84% for the next 12 months
92% for the next 12 months
100% after 84 months of service

# M E M O R A N D U M



SUBJECT: Medical Disqualification                    DATE:    April 25, 2006
            **Donna Alston, #001102**

FROM: HRMS/MSBR - Gina C. Perv

TO: HRMS - Roslyn Rikard

Please be advised that **Donna Alston** who was medically disqualified effective **April 25, 2006**, from the position of **Bus Cleaner** has been approved and being referred to the Office of Human Resource Management Services for Section 124 placement.

Should you have further questions, you can reach me at (202) 636-7141.

cc:   BMNT/SATR - Stephen Edwards
       FILE

**Washington
Metropolitan Area
Transit Authority**

DEFENDANT'S

# JOB PLACEMENT - MEDICAL REFERRAL
# Medically Disqualified - Local 689 - Section 124

NAME   Alston     Donna

            LAST       FIRST      MIDDLE

ADDRESS   5017 East Capitol Street, SE

CITY   Washington    STATE  DC  ZIP  20019

HOME PHONE NUMBER   202-583-2177

NEW POSITION    /    DEPT

001102
**PAYROLL NUMBER**

BMNT  /  SATR
**DEPT   /  DIVISION**

Bus Cleaner
**FORMER POSITION**

06/26/2000
**DATE OF HIRE**

04/25/2006
**DATE DISQUALIFIED**

## PHYSICAL RESTRICTIONS

1.  MAY LIFT AND CARRY UP TO  #_____    OCCASIONALLY  _____    FREQUENTLY  _____
                                 pounds

2.  MAY SIT, STAND, WALK    #_____
                               hours

3.  SHOULD NOT WORK AROUND MOVING MACHINERY  _____

4.  SHOULD NOT WORK IN UNPROTECTED HEIGHTS  _____

5.  SHOULD NOT DRIVE METRO VEHICLE  _____

ADDITIONAL RESTRICTIONS

Diagnosis:  Respiratory Disorder.

_____    4/20/06
ASSOCIATE MEDICAL OFFICER         DATE

*TO BE COMPLETED BY HRMS:*

DATE MEDICAL REFERRAL REC'D  _____

REFERRED TO:  _____

cc:  HRMS - Roslyn Rikard



**AGREEMENT**

between

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

and

**LOCAL UNION 689**

of the

**AMALGAMATED TRANSIT UNION AFL-CIO**

Effective from May 1, 2004

to

June 30, 2008

DEFENDANT'S

notice, for renegotiation of the affected provision. If the parties are unable to resolve the matter by negotiation within thirty (30) days following such reopening, the dispute on the reopener may be submitted to final and binding arbitration hereunder by either party.

### Sec. 124 - Physically Disqualified Employees

An employee who becomes physically disqualified (other than temporarily) from performing the work of the employee's class shall be offered the first permanent vacancy or new job in the bargaining unit which pays not less than seventy-eight percent (78%) of the rate of the employee's job class for which the employee is qualified. No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g., Sec. 301, 506).

If such disqualified employee refuses to accept a job offer, which pays ninety-two percent (92%) or more of the employees job class, the employee will not be considered "physically or mentally disabled from performing his/her duties" as defined in Section 8 (c), Appendix A.

If no bargaining unit job is available, the Authority will make every reasonable effort to place such employee in a non-bargaining unit job for which the employee is qualified at the established rate for that job. Further, if no bargaining unit job is available, or if the employee refuses a job offer, the employee will remain on the entitlement list for three (3) years from the date of disability or until retirement if sooner. Such employee may, however, refuse job offers which pay seventy-eight percent (78%) but less than ninety-two percent (92%) without loss of retirement or re-employment rights.

Physically disqualified employees who, as a result of this provision, transfer from one seniority district to another

37

shall carry accrued seniority with them and continue to ac-
crue seniority in the district from which the employee was
transferred.  It is understood, however, that such total Au-
thority seniority will be exercised for purposes of vacation
picks, work selection, etc. but not for bidding out of the job
class awarded in accordance with this provision.

Employees accepting employment under this Section
shall continue to accrue service for all benefit purposes.

An employee who becomes disqualified from performing
the work of his/her job for reasons other than physical
shall be given reasonable opportunity to fill any new job or
permanent vacancy in the bargaining unit for which the
employee is qualified, at the established rate for that job.
An employee shall not be considered "disqualified" as that
term is used in this paragraph if the employee is or has
been dismissed for sufficient cause.

Employees who are declared permanently physically dis-
qualified from performing the work of their classification,
but who, if actively employed would hold a bidding right
into a classification, within their current seniority district,
for which they are qualified, physically and otherwise, will
be permitted to exercise that bidding right notwithstanding
any other provision of this Agreement to the contrary.  Em-
ployees who are declared temporarily disqualified from per-
forming the work of their classification will, upon return to
work, be permitted to bump into their classification (on the
run, shift, location, etc.) in accordance with their seniority.

### Sec. 125 - Wages

(a)  The base rates in effect from April 30, 2004 through June
30, 2004 shall be as specified under the terms of the arbitra-
tion award rendered on December 17, 2004 by the arbitra-
tion panel chaired by Robert O. Harris.

### Section 11 - Term of Agreement

This Agreement, originally effective June 16, 1954, as amended, shall remain in effect through June 30, 2008, and from year to year thereafter unless change is requested by either of the parties hereto by written notice ninety (90) calendar days prior to June 30, 2008, or ninety (90) calendar days prior to June 30 of any year thereafter.

### Section 12 - Arbitration of Disputes Concerning Changes

The parties hereto specifically agree that disputes concerning changes in this Health and Welfare Fund Agreement are subject to the provisions of Section 106 of the collective bargaining agreement of which this Agreement is a part.

Executed this 10th day of July 2006.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

By _____   7/10/06
Dan Tangherlini, CEO and General Manager   (Date)

By _____   7/10/06
D. Richard Froelke, Director of Labor Relations   (Date)

LOCAL 689, AMALGAMATED TRANSIT UNION, AFL-CIO

By _____   7/10/06
Michael Golash, President-Business Agent   (Date)

## PART THREE
## MAINTENANCE AND CONSTRUCTION PERSONNEL

### Sec. 301 - Seniority, Transfer and Promotion

(a) Seniority shall be on the basis of three (3) seniority districts: one (1) district shall be composed of all operating employees, another of all maintenance and construction employees, and the other of all administrative and clerical employees.

(b) The following Internal Divisions are grouped under the maintenance and construction seniority district; however, there shall be a one-time transition pick for any classification where the seniority unit is narrowed from existing practice:

1. Bus Maintenance Shop;
2. Bus Maintenance Garages;
3. Rail Car Maintenance Shop (bench type work and major overhaul);
4. Rail Car Maintenance and Inspection (all other type work);
5. Plant Maintenance;
6. Elevator and Escalator Maintenance;
7. Track & Structures Maintenance;
8. Systems Maintenance - Automatic Train Control (ATC);
9. Systems Maintenance - Automatic Fare Collection (AFC);
10. Systems Maintenance - Communications;
11. Systems Maintenance - Power;
12. Systems Maintenance - Shops; and,
13. Engineering and Technical Support - Computer.

(c) In the event the Authority elects to adjust or continue staffing manpower levels and work schedules between

89

work selections (picks), vacancies, including those created by the departure of an incumbent or occasioned by an increase in manpower demands, shall be initially advertised for transfer in the internal division where the vacancy exists to the eligible bid group (AA and A, and B and C, D [Helper], and Lead) within classification. Thereafter, the resulting vacancy may be posted by the Authority as the "ultimate" vacancy and filled following advertisement, by a qualified applicant at the bid group level sought. Selection shall be made from the list of qualified employees in seniority order, with first preference given to internal division applicants, then applicants within this Section (Maintenance and Construction) and then on a System-Wide basis.

Whenever vacancies occur, notice will be posted within ten (10) calendar days on the bulletin boards in the appropriate locations giving opportunity for those who desire to apply to file their applications and to take examinations. The posting notice shall show the duties of the job and assigned days off. Transfers and promotions will be made within forty-five (45) calendar days on the basis of fitness and ability and the applicants will be advised promptly of the results of such examinations; provided, however, that in all cases where two (2) or more employees have approximately equal qualifications for the vacancy, seniority in the maintenance and construction seniority district shall rule. In determining an employee's fitness and ability, consideration will be given to examination results, work record, job performance and demonstrated ability.

(d) Time spent in taking examinations shall be paid for at straight-time rates. Time spent in taking an examination more than twice for the same classification within a six-month period will not be paid.

(e) The Union shall be immediately notified in writing of the

90

existence of any vacancy and the date that such vacancy occurs and shall also be notified immediately of the identity of the employee promoted and the date of such promotion.

(f) If the vacancy is not filled as a result of internal posting for bid, the job shall be advertised on a maintenance and construction-wide basis under the procedures outlined above. If the vacancy is not filled as a result of posting on a maintenance and construction-wide basis it shall be next made available system-wide within the bargaining unit. If the vacancy is not filled as a result of posting on a system-wide basis, it shall be filled from outside the bargaining unit.

(g) Notwithstanding the above, promotions within RAIL classification Groups II through VII set forth in Appendix C shall be made without competition or a posted vacancy in accordance with the following provisions:

1. Classifications within the RAIL Department in Groups II through VII shall have pay grades, expressed as a percentage of the one-hundred percent (100%) operator rate, as follows:

| Pay Grades | Group II | Group III | Group IV | Group V | Group VI | Group VII |
|---|---|---|---|---|---|---|
| Grade D (Helper) | 90 | 85 | 82 | 78 | 78 | 85 |
| Grade C | 100 | 90 | 85 | 80 | 82 | 90 |
| Grade B | 102.5 | 95 | 90 | 83 | 90 | 95 |
| Grade A | 104 | 100 | 95 | 87 | 95 | 100 |
| Grade AA | 112 | 104 | 100 | 90 | – | 103 |

2. Vacancies in entry grade "Grade D" shall be made in accordance with Section 301(c). Advancement from Grade D to Grade AA within classifications shall be in accordance with the procedures described herein.

3. Twelve (12) months after an employee achieves a par-

91

ticular pay grade level, he/she shall advance to the next grade level provided he/she has taken and passed the required written and practical test(s) and is not delayed in accordance with paragraph five (5) below. All promotional tests shall be offered in April and October of each year. Promotions will be effective concurrent with job picks in June and December of each year. The Authority will make available to employees the tools, equipment and written material required to prepare for promotional testing.

4. It is understood that for work assignment purposes D, C, B, A and AA graded employees may be utilized interchangeably, although each position is distinguished by levels of proficiency and efficiency. It is further understood that the Laborers classification shall be restricted to purely laboring tasks to be identified and agreed upon by the parties.

5. Notwithstanding test results and time in service, a promotion may be delayed by management in increments of six months if the individual in question has failed to demonstrate fitness and ability as defined in Section 301 (c) herein. Should such a delay occur, it will be accompanied by a written, supervisory appraisal and the Union will receive a summary of the reasons for the delay. Management recognizes its responsibility to continuously inform employees of their performance during the course of the year. It is understood that management will provide counseling throughout the year to inform each employee and attempt to provide the guidance required to enhance his/her opportunity for promotion. If required, a plan will be developed to improve an employee's performance.

92

6. Nothing in this agreement will prevent WMATA from posting for bid under Section 301 additional vacancies in any grade beyond those necessary to provide the promotional opportunities guaranteed under this agreement.

(h) The Bus Maintenance Restructuring Agreement and related letters of understanding are set forth in Appendix D of this agreement.

(i) The Technical Skills Training Program and related letters of understanding are set forth in Appendix E and separate documents and hereby incorporated and made part of this agreement.

## Sec. 302 - Work by Supervisors

Supervisors in maintenance and construction departments shall not perform any manual or mechanical work other than such work as may be necessary in instructing employees or testing machines or mechanical equipment.

## Sec. 303 - Regular Work Week and Shift Hours

(a) All employees are hereby guaranteed a minimum of work of a five (5) day week of eight (8) hour days; provided, any employee failing to make and complete a report on any day for any reason shall forfeit the day's proportion of said minimum guarantee. All employees shall have two (2) consecutive days off in seven (7).

(b) Shift hours shall be established by the Authority at its discretion except as otherwise provided herein. Each shift shall be composed of eight and one-half consecutive hours including one-half hour unpaid meal relief.

It is understood that work assignment selection will be bid in accordance with Section 310 or 311. In the event of a change in selected shift hours or days off, the affected

### Section 11 - Term of Agreement

This Agreement, originally effective June 16, 1954, as amended, shall remain in effect through June 30, 2008, and from year to year thereafter unless change is requested by either of the parties hereto by written notice ninety (90) calendar days prior to June 30, 2008, or ninety (90) calendar days prior to June 30 of any year thereafter.

### Section 12 - Arbitration of Disputes Concerning Changes

The parties hereto specifically agree that disputes concerning changes in this Health and Welfare Fund Agreement are subject to the provisions of Section 106 of the collective bargaining agreement of which this Agreement is a part.

Executed this 10th day of July 2006.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

By _____        7/10/06
Dan Tangherlini, CEO and General Manager        (Date)

By _____        7/10/06
D. Richard Froelke, Director of Labor Relations        (Date)

LOCAL 689, AMALGAMATED TRANSIT UNION, AFL-CIO

By _____        7/10/06
Michael Golash, President-Business Agent        (Date)

### Sec. 505 - Work By Supervisors

Supervisors of administrative and clerical employees shall not perform duties which are normally performed by bargaining unit employees, except in cases of emergency or for purposes of instruction.

### Sec. 506 - Transfer and Promotion

(a) Vacancies in administrative and clerical classifications shall be advertised first within the job series, except for the position of Compiler Assistant within the Planning Series. Preference will be accorded to applicants from within the job series based on seniority. If there are no qualified applicants within the series, vacancies will be advertised within the administrative and clerical district. Whenever vacancies occur notice will be posted within ten (10) calendar days on the bulletin boards in the proper locations giving opportunity for those who desire to apply to file their application and to take required examinations.

The posting notice shall show the duties of the job, hours of work and the assigned days off. Transfers and promotions will be made within thirty (30) calendar days on the basis of fitness and ability, and applicants will be advised promptly of the results of such examinations; provided, however, that in any case in which two (2) or more employees are determined to have equal ability and qualifications for the vacancy, seniority in the administrative and clerical district shall rule.

(b) Time spent in taking examinations shall be paid for at straight-time rates. Time spent in taking an examination more than twice for the same classification within a six-month period will not be paid.

(c) The Union shall be immediately notified in writing of the existence of any vacancy and the date that such vacancy

114

occurs and shall also be notified immediately of the identity of the employee promoted and the date of such promotion.

(d) If the vacancy is not filled as a result of internal posting for bid, the job shall be advertised on a system-wide basis within the bargaining unit. If the vacancy is not filled as a result of posting on a system-wide basis, it shall be filled from outside the bargaining unit.

(e) An employee promoted or transferring pursuant to this section shall be subject to a thirty (30) calendar day trial period during which time he or she shall be given reasonable opportunity to perform the work of the new position. If during this period the employee does not desire to retain the position, he or she may return to the former position and rate of pay without loss of seniority. If during this period the employee does not meet the qualifications of the position, in the judgment of the immediate supervisor, the employee may be returned to the former position, at the discretion of the Authority, without loss of seniority.

(f) In classifications which have more than one "Level," vacancies will generally be advertised at the lowest level, Level 1. However, this does not prevent the Authority from posting vacancies at higher levels, if needed.

Regardless of the existence of a vacancy, an employee shall be entitled after one year of service at one level to move up to the next higher level of their own job classification, provided that they have taken and passed any applicable written and practical tests and are not delayed in accordance with paragraph 3 herein. Tests will be offered in a timely fashion (every six months) so that each employee has at least two opportunities to take a test during their year of service at any particular level. Promotions shall be

115

effective with the first payroll period in January and July of each year.

Notwithstanding test results and time in service, a promotion may be delayed by the Authority in increments of six months if the individual in question has failed to demonstrate fitness and ability.

Should such delay occur, it will be accompanied by a written, supervisory appraisal and the Union will receive a summary of the reasons for the delay.

The Authority recognizes its responsibility to continuously inform employees of their performance during the course of the year. It is understood that the Authority will provide counseling throughout the year to inform each employee and attempt to provide the guidance required to enhance their opportunity for promotion. If required, a plan will be developed to improve an employee's performance.

(g) Except as provided under Section 511, and in the absence of a reduction in force, there shall be no bumping within job classifications. However, in the event that a vacancy occurs, the assignment associated with that vacancy will be offered in seniority order to the other employees of the same job classification before it is otherwise posted under Section 506(a). The residual assignment shall then be posted in accordance with Section 506(a).

(h) It is understood that for work assignment purposes employees within a job classification regardless of level may be utilized interchangeably, although each position is distinguished by levels of proficiency and efficiency. Multigrade level employees will be provided training and the opportunity to work all job tasks within the job classification.

116

### Sec. 507 - Present Benefits

Except as modified by the parties, the working conditions and benefits of the administrative and clerical employees existing prior to May 1, 1974, shall continue in effect during the life of this Agreement.

### Sec. 508 - Part-Time Employees

(a) The Authority shall be permitted to hire part-time employees in the classifications of Ridership Information Agent, Traffic Clerk, Computer Operator, PABX Console Attendant, Revenue Processing Technician, Transit Sales Clerk, the Ticket Order Clerk function, Mail Clerk/Driver and Consumer Services Clerk.  Such employees shall be covered by all provisions of the Agreement applicable to Administrative and Clerical personnel (except as provided in paragraphs (b) and (c) below) and provided further that benefits shall be made available on a pro rata basis in the same manner as extended to "new hire" part-time bus operators.

(b) Part-time employees will progress through the wage grades in a job classification, where applicable, on the same length of service basis as full-time employees.

(c) Part-time employees shall be eligible for upgrade to full-time vacancies within a job classification after the position has been advertised to the interested full-time employees in the classification.  Full-time employees shall have preference over part-time employees in promotion and transfer decisions and in selection for vacancies outside the classification based on seniority.

### Sec. 509 - Layoff and Recall

(a) Should a reduction in force be necessary in a given classification, the junior employee or employees based on Admin-

117

### Section 11 - Term of Agreement

This Agreement, originally effective June 16, 1954, as amended, shall remain in effect through June 30, 2008, and from year to year thereafter unless change is requested by either of the parties hereto by written notice ninety (90) calendar days prior to June 30, 2008, or ninety (90) calendar days prior to June 30 of any year thereafter.

### Section 12 - Arbitration of Disputes Concerning Changes

The parties hereto specifically agree that disputes concerning changes in this Health and Welfare Fund Agreement are subject to the provisions of Section 106 of the collective bargaining agreement of which this Agreement is a part.

Executed this 10th day of July 2006.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

By _____    7/10/06
Dan Tangherini, CEO and General Manager    (Date)

By _____    7/10/06
D. Richard Froelke, Director of Labor Relations    (Date)

LOCAL 689, AMALGAMATED TRANSIT UNION, AFL-CIO

By _____    7/10/06
Michael Golash, President-Business Agent    (Date)



AGREEMENT

between

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

and

LOCAL UNION 689

of the

AMALGAMATED TRANSIT UNION
AFL-CIO

Effective from May 1, 1992

to

April 30, 1995

DEFENDANT'S



### Sec. 124 - Physically Disqualified Employees

An employee who becomes physically disqualified (other than temporarily) from performing the work of the employee's class shall be offered the first permanent vacancy or new job in the bargaining unit which pays not less than seventy-eight percent (78%) of the rate of the employee's job class for which the employee is qualified. No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g., Sec. 301, 506).

If such disqualified employee refuses to accept a job offer, which pays ninety-two percent (92%) or more of the employees job class, the employee will not be considered "physically or mentally disabled from performing his/her duties" as defined in Section 8 (c), Appendix A.

If no bargaining unit job is available, the Authority will make every reasonable effort to place such employee in a non-bargaining unit job for which the employee is qualified at the established rate for that job. Further, if no bargaining unit job is available, or if the employee refuses a job offer, the employee will remain on the entitlement list for three (3) years from the date of disability or until retirement if sooner. Such employee may, however, refuse job offers which pay seventy-eight percent (78%) but less than ninety-two percent (92%) without loss of retirement or re-employment rights.

Physically disqualified employees who, as a result of this provision, transfer from one seniority district to another shall carry accrued seniority with them and continue to accrue seniority in the district from which the employee was transferred. It is understood, however, that such total Authority seniority will be exercised for purposes of vacation picks, work selection, etc. but not for bidding out of the job class awarded in accordance with this provision.

Employees accepting employment under this Section shall continue to accrue service for all benefit purposes.

An employee who becomes disqualified from performing the work of his/her job for reasons other than physical shall be

30

given reasonable opportunity to fill any new job or permanent vacancy in the bargaining unit for which the employee is qualified, at the established rate for that job. An employee shall not be considered "disqualified" as that term is used in this paragraph if the employee is or has been dismissed for sufficient cause.

**Sec.125 - Wages**

(a) All base rates effective May 1, 1992, shall be indicated in Appendix C of this Agreement.

(b) All base rates, other than those fixed to the Operator Rate reflected in Appendix C shall be increased effective May 1, 1994 by 4.0% (rounded to the nearest whole cent). In addition, all base wage rates, which are fixed to the operator rate shall be adjusted accordingly thereafter (rounded to the nearest whole cent).

(c) In the event the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W), U.S. City Average, All Items (1982-84=100), as published and revised by the Bureau of Labor Statistics, U.S. Department of Labor, increases by more than 4.0% from March 1994 to March 1995, then such percentage increase over 4.0% times a factor of 0.8 will be applied to the base rates other than those fixed to the operator rate (rounded to the nearest whole cent) effective the pay period beginning nearest April 30, 1995 and all base rates fixed to the operator rate shall be adjusted accordingly thereafter. Such increase, if any, shall be incorporated into the base rate and be paid thereafter.

(d) Progressions

1. Hiring Progression

   a) All employees newly hired into "Operating" job classes are subject to the following 36-month progression.

   - First 12 months     75% of the classification rate
   - Next 12 months      80% of the classification rate

31

## PART THREE
## MAINTENANCE AND CONSTRUCTION PERSONNEL

### Sec. 301 - Seniority, Transfer and Promotion

(a) Seniority shall be on the basis of three (3) seniority districts: one (1) district shall be composed of all operating employees, another of all maintenance and construction employees, and the other of all administrative and clerical employees.

(b) The following Internal Divisions, are grouped under the maintenance and construction seniority district:

1. Bus Maintenance Shop;
2. Bus Maintenance Garages;
3. Rail Car Maintenance Shop (bench type work and major overhaul);
4. Rail Car Maintenance and Inspection (all other type work);
5. Plant and Track & Structures Maintenance;
6. Systems Maintenance - Automatic Train Control;
7. Systems Maintenance - Automatic Fare Collection;
8. Systems Maintenance - Communications;
9. Systems Maintenance - Power;
10. Systems Maintenance - Computer; and,
11. Systems Maintenance - Shops.

(c) Vacancies in maintenance and construction classifications shall be advertised first in the Internal Division where the vacancy exists. Whenever vacancies occur, notice will be posted within ten (10) calendar days on the bulletin boards in the appropriate locations giving opportunity for those who desire to apply to file their applications and to take examinations. The posting notice shall show the duties of the job and assigned days off. Transfers and promotions will be made within thirty (30) calendar days on the basis of fitness and ability and the applicants will be advised promptly of the results of such examinations; provided, however, that in all cases where two (2) or more employees have approxi-

69

mately equal qualifications for the vacancy, seniority in the maintenance and construction seniority district shall rule. In determining an employee's fitness and ability, consideration will be given to examination results, work record, job performance and demonstrated ability.

(d) Time spent in taking examinations shall be paid for at straight-time rates. Time spent in taking an examination more than twice for the same classification within a six-month period will not be paid.

(e) The Union shall be immediately notified in writing of the existence of any vacancy and the date that such vacancy occurs and shall also be notified immediately of the identity of the employee promoted and the date of such promotion.

(f) If the vacancy is not filled as a result of internal posting for bid, the job shall be advertised on a maintenance and construction-wide basis under the procedures outlined above. If the vacancy is not filled as a result of posting on a maintenance and construction-wide basis it shall be next made available system-wide within the bargaining unit. If the vacancy is not filled as a result of posting on a system-wide basis, it shall be filled from outside the bargaining unit.

(g) Notwithstanding the above, promotions within classification Groups II through VII set forth in Appendix C shall be made without competition or a posted vacancy in accordance with the following provisions:

   1. Classifications within Groups II through VII shall have pay grades, expressed as a percentage of the 4th-year operator rate, as follows:

| Pay Grades | Group II | Group III | Group IV | Group V | Group VI | Group VII |
|---|---|---|---|---|---|---|
| Grade D (Helper) | 90 | 85 | 82 | 78 | 78 | 90 |
| Grade C | 95 | 90 | 85 | 80 | 82 | 100 |
| Grade B | 102.5 | 95 | 90 | 83 | 90 | 102.5 |
| Grade A | 104 | 100 | 95 | 87 | 95 | 104 |
| Grade AA | 110 | 104 | 100 | 90 | — | 110 |

70



DEFENDANT'S
EXHIBIT
86

AGREEMENT

between

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

and

LOCAL UNION 689

of the

AMALGAMATED TRANSIT UNION
AFL-CIO

Effective from May 1, 1998
to
April 30, 2001



sequence of the elimination of the transit exemption from the overtime provisions of the Fair Labor Standards Act, which results in a significant change in costs or benefits under this labor agreement, the party adversely affected may reopen the Agreement upon thirty (30) days' notice, for renegotiation of the affected provision. If the parties are unable to resolve the matter by negotiation within thirty (30) days following such reopening, the dispute on the reopener may be submitted to final and binding arbitration hereunder by either party.

### Sec. 124 - Physically Disqualified Employees

An employee who becomes physically disqualified (other than temporarily) from performing the work of the employee's class shall be offered the first permanent vacancy or new job in the bargaining unit which pays not less than seventy-eight percent (78%) of the rate of the employee's job class for which the employee is qualified. No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g., Sec. 301, 506).

If such disqualified employee refuses to accept a job offer, which pays ninety-two percent (92%) or more of the employees job class, the employee will not be considered "physically or mentally disabled from performing his/her duties" as defined in Section 8 (c), Appendix A.

If no bargaining unit job is available, the Authority will make every reasonable effort to place such employee in a non-bargaining unit job for which the employee is qualified at the established rate for that job. Further, if no bargaining unit job is available, or if the employee refuses a job offer, the employee will remain on the entitlement list for three (3) years from the date of disability or until retirement if sooner. Such employee may, however, refuse job offers which pay seventy-eight percent

37



(78%) but less than ninety-two percent (92%) without loss of re-
tirement or re-employment rights.

Physically disqualified employees who, as a result of this pro-
vision, transfer from one seniority district to another shall carry
accrued seniority with them and continue to accrue seniority in
the district from which the employee was transferred. It is un-
derstood, however, that such total Authority seniority will be
exercised for purposes of vacation picks, work selection, etc.
but not for bidding out of the job class awarded in accordance
with this provision.

Employees accepting employment under this Section shall
continue to accrue service for all benefit purposes.

An employee who becomes disqualified from performing the
work of his/her job for reasons other than physical shall be given
reasonable opportunity to fill any new job or permanent vacancy
in the bargaining unit for which the employee is qualified, at the
established rate for that job. An employee shall not be consid-
ered "disqualified" as that term is used in this paragraph if the
employee is or has been dismissed for sufficient cause.

**Sec.125 - Wages**
(a) All base rates in effect on April 30, 1998 shall remain in ef-
fect through October 31, 1998.
(b) Effective as of the following dates the Operator Rate in ef-
fect on April 30, 1998 shall be increased as follows:

    2.0% effective November 1, 1998
    2.0% effective November 1, 1999
    2.5% effective November 1, 2000

In addition, all base rates which are fixed to the Operator
Rate shall be adjusted to reflect the increase in the Operator
Rate.
(c) All base rates, other than those fixed to the Operator Rate,
shall be increased as follows:

38

**PART THREE**
**MAINTENANCE AND CONSTRUCTION PERSONNEL**

**Sec. 301 - Seniority, Transfer and Promotion**

(a) Seniority shall be on the basis of three (3) seniority districts: one (1) district shall be composed of all operating employees, another of all maintenance and construction employees, and the other of all administrative and clerical employees.

(b) The following Internal Divisions, are grouped under the maintenance and construction seniority district; however, there shall be a one-time transition pick for any classification where the seniority unit is narrowed from existing practice:

    1. Bus Maintenance Shop;
    2. Bus Maintenance Garages;
    3. Rail Car Maintenance Shop (bench type work and major overhaul);
    4. Rail Car Maintenance and Inspection (all other type work);
    5. Plant Maintenance;
    6. Track & Structures Maintenance
    7. Systems Maintenance - Automatic Train Control (ATC);
    8. Systems Maintenance - Automatic Fare Collection (AFC);
    9. Systems Maintenance - Communications;
    10. Systems Maintenance - Power;
    11. Systems Maintenance - Shops; and,
    12. Engineering and Technical Support - Computer.

(c) Vacancies in maintenance and construction classifications shall be advertised first in the Internal Division where the vacancy exists. Whenever vacancies occur, notice will be

87

posted within ten (10) calendar days on the bulletin boards
in the appropriate locations giving opportunity for those
who desire to apply to file their applications and to take ex-
aminations. The posting notice shall show the duties of the
job and assigned days off. Transfers and promotions will
be made within thirty (30) calendar days on the basis of fit-
ness and ability and the applicants will be advised
promptly of the results of such examinations; provided,
however, that in all cases where two (2) or more employ-
ees have approximately equal qualifications for the va-
cancy, seniority in the maintenance and construction sen-
iority district shall rule. In determining an employee's fit-
ness and ability, consideration will be given to examination
results, work record, job performance and demonstrated
ability.

(d) Time spent in taking examinations shall be paid for at
straight-time rates. Time spent in taking an examination
more than twice for the same classification within a six-
month period will not be paid.

(e) The Union shall be immediately notified in writing of the
existence of any vacancy and the date that such vacancy
occurs and shall also be notified immediately of the iden-
tity of the employee promoted and the date of such promo-
tion.

(f) If the vacancy is not filled as a result of internal posting for
bid, the job shall be advertised on a maintenance and con-
struction-wide basis under the procedures outlined above.
If the vacancy is not filled as a result of posting on a main-
tenance and construction-wide basis it shall be next made
available system-wide within the bargaining unit. If the va-
cancy is not filled as a result of posting on a system-wide
basis, it shall be filled from outside the bargaining unit.

(g) Notwithstanding the above, promotions within RAIL classi-

88



AGREEMENT

between

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

and

LOCAL UNION 689

of the

AMALGAMATED TRANSIT UNION
AFL-CIO

Effective from May, 200

to

April 30, 200

metro

DEFENDANT'S
EXHIBIT
8c

tration or the Courts, a rule is finally determined as a consequence of the elimination of the transit exemption from the overtime provisions of the Fair Labor Standards Act, which results in a significant change in costs or benefits under this labor agreement, the party adversely affected may reopen the Agreement upon thirty (30) days' notice, for renegotiation of the affected provision. If the parties are unable to resolve the matter by negotiation within thirty (30) days following such reopening, the dispute on the reopener may be submitted to final and binding arbitration hereunder by either party.

### Sec. 124 - Physically Disqualified Employees

An employee who becomes physically disqualified (other than temporarily) from performing the work of the employee's class shall be offered the first permanent vacancy or new job in the bargaining unit which pays not less than seventy-eight percent (78%) of the rate of the employee's job class for which the employee is qualified. No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g., Sec. 301, 506).

If such disqualified employee refuses to accept a job offer, which pays ninety-two percent (92%) or more of the employees job class, the employee will not be considered "physically or mentally disabled from performing his/her duties" as defined in Section 8 (c), Appendix A.

If no bargaining unit job is available, the Authority will make every reasonable effort to place such employee in a non-bargaining unit job for which the employee is qualified at the established rate for that job. Further, if no bargaining unit job is available, or if the employee refuses a job offer, the employee will remain on the entitlement list for three (3) years from the date of disability or until retirement if sooner. Such employee may, however, refuse job offers which pay seventy-eight percent

35

(78%) but less than ninety-two percent (92%) without loss of re-
tirement or re-employment rights.

Physically disqualified employees who, as a result of this pro-
vision, transfer from one seniority district to another shall carry
accrued seniority with them and continue to accrue seniority in
the district from which the employee was transferred. It is un-
derstood, however, that such total Authority seniority will be
exercised for purposes of vacation picks, work selection, etc.
but not for bidding out of the job class awarded in accordance
with this provision.

Employees accepting employment under this Section shall
continue to accrue service for all benefit purposes.

An employee who becomes disqualified from performing the
work of his/her job for reasons other than physical shall be given
reasonable opportunity to fill any new job or permanent vacancy
in the bargaining unit for which the employee is qualified, at the
established rate for that job. An employee shall not be consid-
ered "disqualified" as that term is used in this paragraph if the
employee is or has been dismissed for sufficient cause.

### Sec. 125 - Wages

(a) All base rates in effect on April 30, 2001 shall remain in ef-
    fect through October 31, 2001.

(b) Effective as of the following dates the Operator Rate in ef-
    fect on April 30, 2001 shall be increased as follows:

> 4.0 % effective November 1, 2001
> 4.0 % effective November 1, 2002
> 4.0 % effective November 1, 2003

In addition, all base rates which are fixed to the Operator
Rate shall be adjusted to reflect the increase in the Opera-
tor Rate.

(c) All base rates, other than those fixed to the Operator Rate,
    shall be increased as follows:

36

## PART THREE
## MAINTENANCE AND CONSTRUCTION PERSONNEL

**Sec. 301 - Seniority, Transfer and Promotion**

(a) Seniority shall be on the basis of three (3) seniority districts: one (1) district shall be composed of all operating employees, another of all maintenance and construction employees, and the other of all administrative and clerical employees.

(b) The following Internal Divisions, are grouped under the maintenance and construction seniority district; however, there shall be a one-time transition pick for any classification where the seniority unit is narrowed from existing practice:

1. Bus Maintenance Shop;
2. Bus Maintenance Garages;
3. Rail Car Maintenance Shop (bench type work and major overhaul);
4. Rail Car Maintenance and Inspection (all other type work);
5. Plant Maintenance;
6. Track & Structures Maintenance
7. Systems Maintenance - Automatic Train Control (ATC);
8. Systems Maintenance - Automatic Fare Collection (AFC);
9. Systems Maintenance - Communications;
10. Systems Maintenance - Power;
11. Systems Maintenance - Shops; and,
12. Engineering and Technical Support - Computer.

(c) Vacancies in maintenance and construction classifications shall be advertised first in the Internal Division where the vacancy exists. Whenever vacancies occur, notice will be

84

85

posted within ten (10) calendar days on the bulletin boards in the appropriate locations giving opportunity for those who desire to apply to file their applications and to take examinations. The posting notice shall show the duties of the job and assigned days off. Transfers and promotions will be made within forty-five (45) calendar days on the basis of fitness and ability and the applicants will be advised promptly of the results of such examinations; provided, however, that in all cases where two (2) or more employees have approximately equal qualifications for the vacancy, seniority in the maintenance and construction seniority district shall rule. In determining an employee's fitness and ability, consideration will be given to examination results, work record, job performance and demonstrated ability.

(d) Time spent in taking examinations shall be paid for at straight-time rates. Time spent in taking an examination more than twice for the same classification within a six-month period will not be paid.

(e) The Union shall be immediately notified in writing of the existence of any vacancy and the date that such vacancy occurs and shall also be notified immediately of the identity of the employee promoted and the date of such promotion.

(f) If the vacancy is not filled as a result of internal posting for bid, the job shall be advertised on a maintenance and construction-wide basis under the procedures outlined above. If the vacancy is not filled as a result of posting on a maintenance and construction-wide basis it shall be next made available system-wide within the bargaining unit. If the vacancy is not filled as a result of posting on a system-wide basis, it shall be filled from outside the bargaining unit.

(g) Notwithstanding the above, promotions within RAIL classification Groups II through VI set forth in Appendix C shall

86

# MINTZ & ASSOCIATES

## VOCATIONAL CONSULTING

TO:
Bruce M. Bender, Esquire
Van Grack, Axelson, Williamowsky, Bender & Fishman
401 N. Washington Avenue, Suite 550
Rockville, Maryland 20850

DATE: 8/31/07
CASE: Alston v. WMATA

FROM: Lee R. Mintz, M.Ed., CRC, CDMS, CCM, ABDA

### EMPLOYABILITY ASSESSMENT

The case of Diane Alston v. WMATA was referred to Mintz & Associates to perform Vocational Assessment in order to determine the employability and earning capacity of Ms. Diane Alston. This Consultant met with Ms. Alston on 7/17/07 .

### MEDICAL

Ms. Alston originally began working as a Bus Cleaner for Washington Metropolitan Area Transit Authority (WMATA) in 2000 with responsibilities at her first assignment in Montgomery County of cleaning the interior and exterior of buses. Shortly thereafter she was assigned to the District of Columbia where she was responsible for cleaning the interior of two buses including windows, ceilings, rails and graffiti. She mainly worked in a garage setting and experienced recurrent episodes of becoming ill from exhaust fumes. Per medical records and Ms. Alston's account she developed shortness of breath and dizziness. She has been seen at Suburban and George Washington University Emergency Rooms on several occasions with complaints of chest discomfort, wheezing, dizziness and/or difficulty breathing. A pulmonary function test of 2/10/06 revealed "This pattern is most consistent with a combined mild obstructive and mild restrictive ventilatory defect."

A letter written on 1/28/06, by Dr. Paul A. Silver, M.D., F.A.C.P., Associate Professor of Medicine, Assistant Director, Division of General Internal Medicine of The George Washington University Medical Faculty Associates wrote in reference to Ms. Alston, "The patient is suffering from a pulmonary condition which is exacerbated by fumes. She needs to be placed in a work environment which is free from noxious fumes." On 5/3/06 Dr. Silver wrote, "I am writing to inform you that the above named patient is suffering from a pulmonary condition secondary to fume exposure in her work place. She must be placed in an area free of toxic fumes, cleaning chemicals, etc." On 5/26/06 Dr. Silver wrote, "The above named patient can only work in an environment where there are no noxious fumes. This would include fumes from cleaning materials and vehicle exhaust."



DEFENDANT'S
EXHIBIT
9

-3-

## SOCIAL/EDUCATIONAL/VOCATIONAL

Ms. Alston is 42 years old (DOB 6/21/65). She is single and lives in Washington D.C. She reports she has no criminal record, has excellent credit, a clear driving licenses and has transportation. She enjoys solving problems, helping people to get their credit together and working as and activist for the elderly and her church.

Ms. Alston is a 1984 graduate of Anacostia High School's academic program. She attended University of D.C. for one year, attended Howard University's ROTC program, completed a B.S. degree at a non-accredited college. She attends Southeastern University and earned an A.A. Degree in Business in 2003 and has only two courses left to earn her Bachelor's Degree in Business Management. Per Ms. Alston she has earned mainly A's and B's and occasional C's. She enrolled in a funded program MOUSE through (Opportunities Industrialized Center) OIC which teaches Microsoft Office Suite including Microsoft Word, Excel, Access, PowerPoint and a knowledge of and proficiency in standard office practices. She indicates she types approximately 30 wpm. Ms. Alston has taken a public speaking class and some gospel singing courses.

In addition to her employment with WMATA, Ms. Alston was employed as a Day Care Worker at Peace Baptist and United Planning Organization from 1997-1999. She reports she held a Clerk Typist position at Walter Reed in the 1990's and Ms. Alston was employed as a Secretary at the V.A. Hospital in 1993, with responsibilities for typing filing and answering phones. Additionally she held a Clerk Typist position at Walter Reed in the 1990's through a work study program. She was a Counselor Aide for drug offenders in 1990 though a Howard University summer program. In the summer of 1970 she worked in a clerical position during the summer.

Ms. Alston has been very active in community organizations and from 1990-1999 assisting citizens with health awareness and insurance issues and as well as representing the community in public forums. Ms. Alston has volunteered as a Staff Writer for Southwestern Community Newspaper in D.C., interviewing citizens and researching information for articles.

## TESTING

In order to assess Ms. Alston's academic and intellectual competencies, a battery of tests was administered. The results will be used to assist in judging ability to adapt to a new vocation, use transferable skills in a related vocation, or undergo training to learn a new skill.

-2-

In an Independent Medical Evaluation of Ms. Alston performed by Dr. Jeff B. Hales of Pulmonary and Medical Associates his review of prior medical history "includes morbid obesity, laparoscopic surgery for gynecologic issues, asthma since at least February of 2005, and one episode of carbon monoxide poisoning when her CO2 level measured 1.8%, the normal range for nonsmokers being less than 1.5%.. Dr. Hales noted that Ms. Alston was a lifelong nonsmoker, has had no pets and had no evidence of lung problems in her family's medical history. He wrote that "Pulmonary function tests reveal a combined obstructive and restrictive defect with a diminished gas transfer and significant improvement to bronchodilators." "A polysomnography report dated 10/18/06 from George Washington University Sleep Disorder Center reveals mild obstructive sleep apnea with an AHI index of 10.8 events per hour, and moderate oxygen desaturation. This was markedly worse in REM sleep."

Dr. Hales assessed the following in response to questions put before him by Bruce M. Bender, Esquire; that Ms. Alston has asthma and mild obstructive sleep apnea, that based on her history there are several irritating chemicals that cause exacerbation of her symptoms and worsening of her asthma and he would recommend that she avoid working in enclosed spaces without proper ventilation and in particular avoid working as a bus cleaner.

In response to Mr. Bender's question about being substantially limited in the majority of her life activity in regards to breathing Dr. Hales stated "I believe Ms. Alston does indeed have some pulmonary limitations. This is combined from her obesity and her asthma." Mr. Bender asks whether exposure to bus fumes from her job as a bus cleaner over the years caused permanent pulmonary condition and/or sleep apnea to a reasonable degree of medical certainty to which Dr. Hales replied in reference to Ms. Alston's pulmonary condition, "I believe the bus fumes  acted as an airway irritant and exacerbated an underlying predisposed condition of asthma. Recurrent exposure over time to airway irritants can cause persistent inflammation and damage, and I would recommend she avoid this in the future." When asked for a permanent partial disability rating per AMA Guidelines Fourth Edition regarding her pulmonary condition Dr. Alston stated "I believe that Ms. Alston is class II approximately 25% impairment of the whole person based on her diminished vital capacity of 69% predicted, which is only partially reversible with bronchodilators. She also has a mildly diminished diffusing capacity."

Ms. Alston reported to this Consultant that she was recently hospitalized from 7/2-7/4/07.  She continues to experience difficulty breathing and limited ability to walk and go up steps or any strenuous activity because of shortness of breath. She reports she must sleep in an elevated position and that her asthmatic condition makes her urinate more frequently. Ms. Alston relays that she has recently gained additional weight due to stress and medications which is now Albuterol Inhaler 3 time daily.

-4-

Pictorial Reasoning Test

Ms. Alston demonstrated a Low Average nonverbal reasoning ability.  This test measures general
learning ability independent of language and reading skills and provides an assessment of an
individual's conceptual and reasoning ability as well as the ability to discover interrelating principles.

Wide Range Achievement Test III

Ms. Alston's word reading, spelling and arithmetic levels were tested.  Ms. Alston's word reading was
rated at the High School level, which would place her in the 30th percentile of people in that age range.
Ms. Alston's spelling was rated at the High School grade level, which would place her in the  39th
percentile of people in that age range.  Her arithmetic score was rated at the 5th grade level, which
would place her in the 5th percentile of people in that age range.  Ms. Alston was able to complete
simple addition, subtraction, multiplication, division and fractions, however she has taken and passed
accounting courses and as well as other requiring these skills.

LABOR MARKET SURVEY

Aside from her consistent work history working as a Bus Cleaner for WMATA, Ms. Alston has had
other work experience, much of a clerical nature  as well  as a daycare worker in the late 1990's.  She
types approximately 30 wpm and is currently learning Microsoft Word at OIC.

**Clerical**

Recently advertised positions for which Ms. Alston might qualify would include:

| | | |
|---|---|---|
| Howard University | Front Desk Receptionist | $8.00/hour |
| Trak Companies | Receptionist | $12.00/hour |
| Level One Personnel | Medical Receptionist | $11-13.00/hour |
| Field School | Receptionist | $10.00/hour |
| Ronco Consulting | Office Clerk | $10.00/hour |
| Carlos Rosario Public Charter School | Office Assistant | $11.00/hour |
| American University | Office Assistant | $8-10.00/hour |

Additional consideration was given for Sedentary to Light level Cashiering positions:

| | | |
|---|---|---|
| CVS | Cashier | $8.00/hour |
| Natural Food Café | Cashier | $9-11.00/hour |
| Firehook Bakery | Cashier | $8-10.00/hour |

-5-

## Washington Metropolitan Area Transit Authority Jobs

As stated earlier in this report there was a letter dated 5/3/06, from Dr. Paul A. Silver to Mr. Kenneth G. Macleay stating re Ms. Alston, "I am writing to inform you that the above named patient is suffering from a pulmonary condition secondary to fume exposure in her work place. She must be placed in an area free of toxic fumes, cleaning chemicals, etc."

Subsequent to the receipt of that letter, Ms. Alston received a letter dated 5/15/06, from R.E. Rikard, Employment Program Specialist, Office of Human Resource Services of the Washington Metropolitan Area Transit Authority. Ms. Rikard wrote that their office (HRMS) had been advised by the Medical Services Branch that Ms. Alston had "been permanently medically disqualified from the position of Cleaner, effective April 25, 2006. In accordance with the agreement between the Washington metropolitan Area Transit Authority and Local Union 689, Section 124, you were referred to HRMS for assistance in a job change." Ms. Alston was referred to Mary Bailey as her contact person and it was stated by Ms. Rikard "For you information, your Section 124 entitlement will expire of April 25, 2009, three years from the date you were medically disqualified." A copy of the most recent position vacancy listing was enclosed as well as in-house application forms to assist her in applying for vacant positions. Ms. Aston signed off that she had received notification of the 5/15/06 letter, on 5/16/06.

This Consultant is in possession of all but three of the 55 job descriptions for jobs for which Ms. Alston has applied in the past, as supplied by Kathleen A. Carey, Assistant General counsel for WMATA. Given her educational level, skills and work experience this Consultant believes that Ms. Alston is able to perform the substantial functions and meets the minimal qualifications and experience for the following listed positions at the listed salaries:

| | |
|---|---|
| Garage Clerk | $55,562-59,692 |
| Facilities Maintenance Clerk | $55,562-59,692 |
| Mail Clerk/Driver | $29,910-40,192 |
| Bus Communications Specialist, TS-5 | $58,272-80,120 |
| Job Access Information Assistant, TA-10 | $32,039-48,403 |

Reportedly Ms. Alston has not been given an interview for any of the above listed positions.

-6-

CONCLUSION

It is therefore the opinion of this Consultant, within a reasonable degree of vocational certainty and
probability, that Ms. Donna Aston, a 42 year old woman who is suffering from a pulmonary condition
secondary to fume exposure in her workplace and can no longer be exposed to toxic fumes and
cleaning chemicals and can no longer work in her position as a Bus Cleaner for WMATA, a position in
which she was employed for approximately six years, would qualify for positions as listed above with
the WMATA ranging in salary from $29,910-80,120. If she were to go to work in the private sector,
using the skills she has developed thus far over her career she would qualify for positions earning from
$8-13.00/hour, at an average range of $10.50/hour. At the time of her injury Ms. Alston was earning
$18.00/hour. Ms. Alston has therefore incurred a loss of earning capacity of at least $7.50/hour
($18.00 prior as a Bus Cleaner as compared to $10.50/hour currently) to as much as $28.02/hour
(which is $38.52/hour or $80,120 at 40 hours a week, 52 weeks a year minus $10.50/hour). In yearly
salaries this would mean a loss of earning capacity of $15,600 up to $58,282.

Lee R. Mintz, M.Ed., CRC, CDMS,CCM,ABDA
Vocational Consultant (MCRSP #G0299)

# MINTZ & ASSOCIATES

## VOCATIONAL CONSULTING

TO:
Bruce M. Bender, Esquire
Van Grack, Axelson, Williamowsky, Bender & Fishman
401 N. Washington Avenue, Suite 550
Rockville, Maryland 20850

DATE: 1/28/08
CASE: Alston v. WMATA

FROM: Lee R. Mintz, M.Ed., CRC, CDMS, CCM, ABDA

### EMPLOYABILITY ASSESSMENT ADDENDUM

This Consultant was asked to review additional WMATA job postings, listed subsequent to those previously reviewed. Additionally I spoke with Ms. Alston to clarify further her work experience. She reports that in addition to listed secretarial/clerical experience, she worked for one year in a clerical position at the Washington Navy yard performing phone, filing and typing duties.

Of those postings reviewed the positions of Receptionist-06-0441-CE and Customer Information Agent I-06-0071-EY, would be positions of which Ms. Alston is able to perform the substantial functions and meets the minimal qualifications and experience. No salaries were listed.

Additionally this Consultant is deleting Mail Clerk/Driver from the list of positions Ms. Alston would be able to perform as stated in my report of 8/31/07.

Lee R. Mintz, M.Ed., CRC, CDMS, CCM, ABDA
Vocational Consultant (MCRSP #G0299)



DEFENDANT'S
EXHIBIT
10

Code No.: 5728

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

### JOB DESCRIPTION

POSITION:   Customer Information Agent I, Local 689   DATE: *5-2*-03*
This position is the First of a Two level Career Ladder Series

DEPT/OFFICE:   .COM/CSVC

APPROV...
.COM: *2 5/3/03*
HRMP: *05-15-03*

REPORTS TO:   Customer Information Agent
Supervisor

LABR: *...Rep*
*BCPhen*

## POSITION SUMMARY:

This is an In-bound (ACD) Call Center operation and regional transit information customer service position. An employee in this class is responsible for providing public transit routing and scheduling information throughout the Washington Metropolitan area, by utilizing both manual and automated resources. In addition, the employee is required to respond to customer inquiries regarding Bus/Rail fares, hours of operation, connection with public/private transit operations and other miscellaneous transit information within the region.

The employee should demonstrate the ability to efficiently handle multiple inquiries calmly and efficiently in a fast paced work environment. The employee is responsible for handling a high volume of in-bound customer calls. The employee in this position must be able to quickly recognize the nature of the customer inquiry and use interpersonal skills to handle inquiries to the point of complete customer satisfaction. The employee must use judgment with minimal latitude to answer customer inquiries within the prescribed guidelines. There are two levels of Information Agents. The classification series may progress to the II level dependent upon successfully completing assignments and meeting the minimum qualifications at each level of progression. At intervals of not more than twelve months, employee performance evaluations shall be conducted.

## DUTIES:

Operates manual and automated computerized equipment to assist customers in obtaining optimum routing and scheduling information.

Effectively utilizes and understands transit related resource materials, to include but not be limited to, area maps, fare matrix, transit information binders, published literature/brochures, headway sheets, service changes. etc.

DEFENDANT'S
EXHIBIT
11

Maintains a working knowledge of and demonstrates effective use of the on-line ARTS system.

Responds to telephone inquiries from customers regarding bus/rail schedules, service changes, fares and routes, and other miscellaneous transit information.

Demonstrates ability to provide consistently courteous and concise information to customers, in a timely and complete manner.

Completely and/or accurately and efficiently answers all customer inquiries regarding transit operations or refers customers as necessary.

Accepts customer requests for bus/rail published schedules and fulfills as appropriate.

Maintains route books, maps, and related materials and updates as required.

Required to work during inclement weather conditions and/or other emergencies.

Effectively operates the TTY/TDD system and performs associated duties as required.

Maintains an acceptable attendance record as outlined in the Attendance Reporting Procedures and the Absentee Policy Instruction.

Performs related tasks/duties as required.

## KNOWLEDGE, SKILLS AND ABILITIES:

Demonstrates ability to proficiently operate keyboard controlled equipment, used in the customer information section to provide transit routing, scheduling, and/or miscellaneous information in a timely, accurate and complete manner.

Must be self-motivated and enjoys working with the public.

Ability to provide timely, accurate, complete and courteous responses to public inquiries.

Ability to rapidly become familiar with the operational and organizational structure of the Authority.

Demonstrate ability to successfully complete all required training programs, within specified time frames.

Demonstrate ability to and knowledge required for maintaining satisfactory performance levels, as outlined in the Performance Evaluation Standards.

Displays a professional manner and the ability to communicate effectively, in a clear and concise manner.

## MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate. A minimum of 2 years customer service, inbound marketing (ACD) and/or telephone experience required. Typing at a minimum of 25 words per minute.  Excellent communication skills, attention to detail and articulate phone skills a must.

## MEDICAL GROUP:

Ability to complete satisfactorily the medical examination for this job. The employee must be able to perform the essential functions of this job either with or without reasonable accommodations.

**FLSA:  Non-Exempt**

0819/10

Code No. 5331

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

CLASS SPECIFICATION

Facilities Maintenance Clerk
(Local 689)

## DEFINITON OF CLASS:

This is administrative and clerical support maintenance work involving the provision of technical and administrative assistance to the FMNT facility to which assigned. Employee is responsible for preparing and maintaining reports and records, and for utilizing designated office equipment such as personal computers, visual data terminals, data processors, electronic typewriters, calculators and reproduction machines. Employee has limited latitude for independent judgment and action. Employee reports to the designated supervisor.

## EXAMPLES OF DUTIES:

Prepares, establishes and/or maintains files, records and reports required of the maintenance facility operation.

Operates standard office equipment to include personal computers, visual data terminals, data processors, electronic typewriters, calculators and reproduction machines.

Assists in the development and compilation of statistical maintenance operating data; performs mathematical calculations.

Maintains weekly and monthly work schedules for all shifts as assigned.

Reviews or verifies information contained on data processing reports and other documents pertinent to the maintenance facility.

Responds to inquiries made by Authority organizations effectively and in a timely manner; maintains effective work relationships with other Authority facilities and offices.

Maintains and distributes maintenance work clothes, tools, equipment, etc. for the assigned facility as required.

May operate an Authority motor vehicle.

May work variable hours and at various locations.

Performs related duties as required.

DEFENDANT'S
EXHIBIT
12

0819/11                                                        Code No. 5331

                                    -2-

KNOWLEDGE, SKILLS AND ABILITIES:

Knowledge of the Authority's maintenance administrative support procedures, rules and regulations.

Knowledge of, or the ability to rapidly acquire a knowledge of, the FMNT operations of the function to which assigned.

Ability to effectively prepare assigned reports and to maintain related files and records.

Ability to effectively utilize standard office equipment, and data display equipment or the ability to rapidly acquire knowledge of the latter.

Ability to effectively compile data and to review reports.

Ability to establish and maintain effective working relationships with those individuals and organizations with whom interface is required.

Ability to work variable hours and at various Authority locations.

Ability to type twenty-five words per minute.

MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate.  Responsible technical and administrative support or related experience in a plant maintenance activity.

Or, an equivalent combination of education and experience.

LICENSE:

Possession of a valid District of Columbia, Maryland or Virginia motor vehicle operator's permit issued from jurisdiction of residence or the ability to acquire one on a timely basis.

MEDICAL GROUP:

Ability to complete satisfactorily the medical examination for this class.

              Approvals:

              Dept/Office: _____ Date: 1 Mar. 88

              PERS/Comp: _____ Date: 9 March 1988

              LABR: Local 689 Represented 9K Date: 3/28/88

Class Established:  04/
          Revised:  02/1  Refer to the current **Union Contract** for the
                    12/1  current **Progression Rates** for this position.

Code No.: **3751**

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

### JOB DESCRIPTION

POSITION:    Job Access Information Assistant, TA-10    Date: *06-06-00*

REVIEWED
DEPT/OFFICE: BUSV/ATJ    BUSV: *4/13/00*
HRMP: *A=H 5-23-00*
REPORTS TO: Manager, Access to Jobs and    LAB. *Neal 2 Rep*
Reverse Commute Program    *DCPres 5/26/00*

#### POSITION SUMMARY:

This is paraprofessional administrative work to support operation and implementation of the Job Access and Reverse Commute Program. Responsibilities include coordinating the business and assisting in the daily operation of the Job Access and Reverse Commute Call Center. Answers phone calls and processing requests for assistance and information. Provides assistance with planning trip itineraries and brokering trips. Collects and compiles data and assists in the preparation of various reports and documents. Establishes and maintains official files for the Call Center and provides general support for the Job Access and Reverse Commute Program.

#### DUTIES:

Coordinates and disseminates Job Access information and actions among partners, staff, clients, and other entities.

Answers Call Center telephone inquiries. Expedites and processes requests for Job Access and Reverse Commute services within established deadlines. Maintains required detailed documentation.

Assists with the preparation of weekly, monthly and quarterly reports to include Federally required reports for continued funding.

Acts as a resource to provide information regarding Job Access and Reverse Commute Program.

Page 1 of 3

DEFENDANT'S EXHIBIT
13

Code No.: 3751

Maintains and updates database for determining eligibility and tracking clients served by the One Stop Call Center. Initiates development of improved computerized tracking and reporting systems.

Assists program manager with development and implementation of the Access to Jobs/Call Center marketing plan.

Assists manager with development of program promotions to include preparation of written materials, brochures, visuals, and other outreach materials.

Assists in the design, development and update of the Web-site. Initiates modifications as required.

Performs other related duties as required.

## KNOWLEDGE, SKILLS, AND ABILITIES:

Thorough knowledge of business English, spelling, punctuation, arithmetic, and general office practices and procedures.

Considerable knowledge of the Washington Metropolitan Area, its roadways, public transit, and other transportation options.

Ability to create and maintain a database, spreadsheets and word processing applications on a personal computer and to use Authority standard display devices and office equipment.

Ability to effectively learn, or utilize existing computer systems such as ARTS and GIS to plan trips and itineraries.

Ability to exercise good judgement and discretion.

Ability to work both independently and as a team member on a variety of assignments and tasks.

Ability to establish and maintain effective working relationships with individuals and organizations inside the Authority, other agencies and the general public.

Ability to properly establish and maintain complex file systems.

Ability to communicate effectively.

Code No.:  3751

## MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate with some college level or formal administrative or secretarial training. Considerable progressively responsible administrative support experience.

## MEDICAL GROUP:

Ability to satisfactorily complete the medical examination for this job.  The employee must be able to perform the essential functions of this job either with or without reasonable accommodation(s)

This is a full-time temporary position to be funded for the duration of the TEA 21 grant program.

Page 3 of  3

3202h                                                    Code No. 6450

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

CLASS SPECIFICATION

Bus Communications Specialist, TS-5

DEFINITION OF CLASS:

This is professional traffic management work. Employee in this class is responsible for coordination of communications between the Central Control Office and operating units within the Metropolitan area. Employee receives information by radio/telephone relative to breakdowns, accidents, occurrences, etc., and contacts the proper department or person for action. Additional duties include writing and producing detailed reports and maintaining precise records. Employee has latitude for independent judgment and action within established guidelines. Employee is supervised by the Supervisor of Central Communications.

EXAMPLES OF DUTIES:

Maintains two-way communication with supervisors and Metrobus Operators in revenue/non-revenue operation, road service/snow crews and other radio-equipped vehicles. Dispatches and directs service trucks in the effort to respond to disabled buses. Maintains immediate communications with divisional and mechanical departments relative to operating requirements.

Maintains current files of various operating records; completes daily report of Metrobus operations. Maintains to ensure clocks are correct, an hourly record of temperature, humidity and weather conditions obtained by phone, observation and daily time checks with all divisions.

Receives detention reports from operators on accidents, disabled buses, sick or injured passengers, toxicated and/or disorderly passengers, fare disputes, robberies and other occurrences. Notifies a supervisor as required and requests police, fire department and other assistance as needed in accordance with operating procedures.

Records detours of routes as described by Street Supervisors caused by construction, fires, weather conditions, etc. Coordinates with divisions involved as to effective date and time when service is returned to regular route. Maintains communications with D.C. Highway Department, jurisdictional police departments, construction firms and other organizations as appropriate.

Maintains radio contact with sand and salt trucks during snow operations. Receives information relative to street conditions; relays information and dispatches trucks to route or location needed most in an effort to keep buses moving. Maintains records of entire operation.

Provides instructions to bus operators in the absence of a Street Supervisor.

Works variable shifts as required.

Performs related duties as required.



DEFENDANT'S
EXHIBIT
14

3202                                                      Code No. 6450

-2-

KNOWLEDGE, SKILLS AND ABILITIES:

Thorough knowledge of Transportation Department safety rules and regulations and Federal Communications Regulations, U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier safety rules and regulations.

Working knowledge of current routes, fares and transfer points.

Ability to attain knowledge of two-way radio communication procedures.

Ability to communicate effectively orally and in writing including ability to type reports at 25 words per minute.

Ability to work variable shifts.

Ability to exercise good judgment and follow through and to document actions effectively.

Ability to maintain composure during stressful situations.

Ability to establish and to maintain successful working relationships with co-workers and the public.

MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate with extensive experience in bus operation work, preferably with experience or training as an Operator Training and Safety Instructor, Street Supervisor or Utility Street Supervisor.

Or, an equivalent combination of education and experience.

LICENSE:

Possession of a valid District of Columbia, Maryland or Virginia motor vehicle operator's permit issued from the jurisdiction of residence and appropriately classed to operate a passenger bus.

MEDICAL GROUP:

Ability to complete satisfactorily the medical examination for this class.

Approvals:
Dept/Office: _LeRoy L. Bailey_ X Date: _1-24-89_
PERS/Comp: _Seanen K. Borton_ Date: _30 January 1989_
LABR: _Local 2 Requested_ JK Date: _1/31/89_

Class Established:   02/12/75
          Revised:   11/16/76
                     03/01/83
                     04/15/88
                     11/22/88

*Code: 5975*

# WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

## JOB DESCRIPTION

POSITION: Receptionist

DEPT/OFFICE: .COM/CSVC

REPORTS TO: Supervisor, Facilities Services

DATE: *July 30, 2002*

REVIEWED:
.COM : *UB 7/30/02*
LABR : *Ernlt 7-19-0 2 member*
HRMP: *MM 7-16-02*

### POSITION SUMMARY:

Clerical and receptionist work, responsible for greeting and assisting visitors, vendors, and patrons to the Jackson Graham Building and/or public service facilities . Employee has some latitude for independent judgment and action within established guidelines.

### DUTIES:

Greets visitors at the designated reception area, and ascertains nature of their business.

Maintains schedule Authority Special Activity Meetings to enable contacts with appropriate office, department or employee escorts.

Contacts proper office and, after verifying visitor can be received, checks visitor's identification and issues visitor badge.

Coordinates preauthorization of visitors and meetings via Group Wise E-Mail and telephone maintaining an up-to-date list of contacts.

Responds to walk-in queries relative to WMATA employment and distributes employment applications as necessary.

Responds to walk-in employment Inquiries for work on construction projects referring applicants to appropriate employing agencies.

Receives hand-delivered mail/packages from carriers and takes prompt disposition action.



DEPOSITION
EXHIBIT

Page 1 of 2

DEFENDANT'S
EXHIBIT
_15_

Reception Desk.

Provides relief in areas such as PABX as required.

Provides daily reports of work to supervisor, reporting any problem as they occur.

Maintain supplies, including application forms, materials in hand-out rack for distribution.

Furnishes visitors departing the Authority facility general information on bus routes and other related information as requested.

Maintain an accurate count of all WMATA's Senior Citizen applications.

Performs related duties as required.

## KNOWLEDGE, SKILLS, AND ABILITIES:

Knowledge of or the ability to rapidly attain a working knowledge of the general operation of the Authority and the location of offices and employees.

Knowledge of office practices, procedures and standard office equipment and photographic equipment.

Ability to speak clearly and distinctly and In a well modulated and pleasant voice.

Ability to rapidly associate names with offices and locations.

Ability to obtain and furnish information with utmost tact and courtesy.

Ability to control emotions at all times when under stress of a difficult situation.

Ability to maintain proper pass control of visitors access/egress.

Ability to deal courteously and effectively with others.

## MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate with two (2) years of experience as a receptionist in a busy office where inquiries are varied and numerous.

## MEDICAL GROUP:

Ability to satisfactorily complete the medical examination for this job. The employee must be able to perform the essential functions of this job either with or without reasonable accommodation(s).

**FLSA NON-EXEMPT**

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY          Code No. 5683

CLASS SPECIFICATION

Garage Clerk

DEFINITION OF CLASS:

This is administrative and clerical support maintenance work of a moderately difficult nature. Employee in this class is responsible for providing technical and administrative assistance to the operating maintenance facility to which assigned, including preparing and maintaining reports and records and for utilizing designated office equipment. Employee has limited latitude for independent judgment and action. Employee reports to the designated supervisor at the assigned bus maintenance facility.

EXAMPLES OF DUTIES:

Prepares, establishes and/or maintains files, records and reports required of the maintenance facility operation.

Operates standard office equipment to include typewriter, calculator and reproduction machinery.

Assists in the development and compilation of statistical maintenance operating data; performs mathematical calculations.

Reviews or verifies information contained on data processing reports and other documents pertinent to the maintenance facility; operates data display equipment as necessary.

Responds to inquiries made by Authority organizations effectively and in a timely manner; maintains effective work relationships with other Authority facilities and offices.

May operate an Authority vehicle.

May work variable hours and at various locations.

Performs related duties as required.

MINIMUM QUALIFICATIONS AND EXPERIENCE:

Graduation from high school or possession of a high school equivalency certificate with responsible technical and administrative support or related experience in a maintenance operation. An equivalent combination of education and experience may be acceptable.

Knowledge of the Authority's maintenance administrative support procedures, rules and regulations.

Knowledge of, or the ability to rapidly acquire a knowledge of the designated maintenance operation.

Ability to effectively prepare assigned reports and to maintain related files and records.

DEFENDANT'S
EXHIBIT
16

- 2 -

Code No. 5683

Ability to accurately type 25 wpm and to effectively utilize standard office equipment, and data display equipment or the ability to rapidly acquire knowledge of the latter.

Ability to effectively compile data and to review reports.

Ability to communicate effectively both orally and in writing.

Ability to deal courteously and effectively with others.

Ability to work variable hours and at various Authority locations.

LICENSE:

Possession of or ability to rapidly obtain a District of Columbia, Maryland or Virginia motor vehicle operator's permit issued from the jurisdiction of residence.

MEDICAL GROUP:

Ability to satisfactorily complete the medical examination for this class.

Refer to the current **Union Contract** for the current **Progression Rates** for this position.

Approved by: _____

Date: _9/6/78_

Amended : 2/82



# AGREEMENT

between

### WASHINGTON METROPOLITAN
### AREA TRANSIT AUTHORITY

and

### LOCAL UNION 689

of the

### AMALGAMATED TRANSIT UNION
### AFL-CIO

Effective from May 1, 2004

through

June 30, 2008



DEFENDANT'S
EXHIBIT

17

# AGREEMENT

By and between the Washington Metropolitan Area Transit Authority, its successors, and assigns, (hereinafter the "Authority") and Local Union 689 of the Amalgamated Transit Union (hereinafter the "Union"), WITNESSETH:

That in the operation of the properties of the Authority, both parties agree hereto as follows:

## PART ONE
## GENERAL TERMS

### Sec. 101 - Purpose of Agreement

(a) The purpose of this Agreement is to provide the best possible service to the public, to provide the best possible working conditions for the employees, and at the same time to have due regard for the economical operation of the Authority's properties.

(b) The parties will not discriminate against any employee of the Authority because of race, age, color, religion, sex or national origin in any manner including upgrading, demotion, transfer, layoff, termination, rate of pay or other forms of compensation or benefits.

### Sec. 102 - Recognition of Union

(a) The Authority recognizes the Union as the exclusive bargaining representative for Operators, Construction and Maintenance Employees of the Authority, all work associated with the administrative and clerical classifications set forth elsewhere in this agreement, all employees employed in any and all of the classifications of Depot Clerks, Stock Clerks, Garage Clerks and Shop Clerks, Fare Box Pullers, Revenue Equipment Servicemen and Fare Box Inspectors, including all other employees whose wage rates are set

1

forth in other sections of this Agreement, and all operating and maintenance employees of the Authority in the subway system, but excluding Confidential Secretaries, Claims Adjusters, Accountants, Casual Employees, Human Resource's Employees, Supervisors, Street Supervisors, Dispatchers, Supervisor of Fare Box Maintenance, Professional Employees, and Guards as defined in the Labor Management Relations Act of 1947, as amended.

(b) The legal rights, obligations and responsibilities of the Authority and the Union with regard to collective bargaining and resort to binding interest arbitration are specified in the WMATA Compact. Within that framework, the Authority recognizes Local 689 as the exclusive bargaining representative of the employees covered by this agreement, and, except as expressly waived by other specific provisions of this agreement, the Union reserves the right to bargain and where necessary to seek interest arbitration concerning all issues relating to wages, hours and working conditions.

The Union acknowledges that all matters pertaining to the management of operations, including the type, kind and extent of service to be rendered to the public, the equipment used, the maintenance of reasonable efficiency standards, the hiring and establishment of standards for selection and qualification of employees, standards for the promotion of employees and their discipline and discharge for proper cause, and the development and enforcement of reasonable rules and regulations regarding employment are the prerogatives of the Authority and are reserved by the Authority unless expressly waived by specific provisions of this agreement, or by the past practices of the parties.

### Sec. 103 - Union Shop and Checkoff

(a) On and after the thirtieth day following the effective date of

this contract, all of the employe
in the bargaining unit as define
become and remain member
Union as a condition preceden
and the Union agrees to recei
such eligible employees accord
This Section shall become ope
thirty (30) days from the date o

(b) The Authority shall, on or bef
month, deduct from the pay (
leave pay, as well as other pa
Union employed by the Autho
the law, has filed, in writing, a
fines and assessments as the l
to be payable from each meml
to the Authority a list of emplo
and the amount of the deducti
of each member. The Authori
and duly authorized officer of
such deductions, together with
employees from whom such d
The Authority shall send to sa
the first presentation of the c
name, payroll designation and
new hourly-rate employee emp
the names of hourly-rate emplo
ing each month. On or before
of the contract years the Auth
nish to the Union a complete l
by this Agreement, showing th
of pay and department in whi
will also on request at that tim
names, classification, and dep

2

3

Case 1:07-cv-00122-ESH    Document 14-3    Filed 08/06/2008    Page 89 of 84

# PART SIX
# TERM OF AGREEMENT AND WITNESS

## Sec. 601 - Term

This Agreement is to continue in effect through June 30, 2008, and from year to year thereafter unless change is requested by either of the parties hereto by written notice ninety (90) calendar days prior to June 30, 2008, or ninety (90) calendar days prior to June 30 of any year thereafter. In the event the parties cannot reach agreement upon proposed changes or modifications, or in the event of a notice of termination if collective bargaining fails to result in agreement, then all matters in dispute shall be arbitrated as provided in the provisions of this Agreement dealing with the arbitration of future contracts.

## Sec. 602 - Witness

Executed this 10th day of July 2006.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

By _____
Dan Tangherlini, CEO and General Manager     7/10/06
                                                 (Date)

By _____
D. Richard Froelke, Director of Labor Relations     7/10/06
                                                 (Date)

LOCAL 689, AMALGAMATED TRANSIT UNION, AFL-CIO

By _____
Michael Golash, President-Business Agent     7/10/06
                                                 (Date)

124



**THE TRANSIT**
**(As Amended a**
The Transit Emp
Plan, heretofore ex
and restated to read

**NAME, EFF**
1.01   **Name.** The
ees' Retirenc
1.02   **Effective D**
Plan was orig
amended and
tive as of Ma
standing the f
in this amend
to be effective
Plan to retain
the Internal R
tive as of the
Revenue Code

Except as s
of this amend
ticipant whose
sumes or term
rights and ben
as an Employe
(including a P
Plan but who
ity) shall be do
sions of the Pl
her status as a



# PROMOTION/TRANSFER OPPORTUNITY
# WMATA EMPLOYEES ONLY

Application are now being accepted in the Office of Human Resource Management and Planning for the position listed below. Please submit you application to the Office of Human Resouce Management and Planning, 600 5ᵗʰStreet, NW, Room 7F, Washington, DC 20001 or fax to 202−962−1180.

**APPLICATIONS MUST BE DELIVERED TO THE OFFICE OF HUMAN RESOURCE MANAGEMENT AND PLANNING NO LATER THAN 5:00 PM ON THE CLOSING DATE OF THE POSITION**

| | |
|---|---|
| **POSITION/JOB CLASS:** | GARAGE CLERK/5683 |
| **FLSA:** | NON − EXEMPT |
| **DEPARTMENT/OFFICE:** | BUS/BLMT |
| **UNION/GRADE:** | L689 |
| **SALARY:** | $948.44 WEEKLY |
| **LOCATION:** | BLADENSBURG |
| **SHIFT:** | 8:30 AM − 5:00 PM |
| **DAYS OFF:** | SATURDAY/SUNDAY |
| **POSTING NUMBER:** | 03−0644−LW |
| **OPENING/CLOSING DATE:** | September 11 − September 24, 2003 |

**JOB DESCRIPTION:** This is administrative and clerical maintenance support work of a moderately difficult nature. Employee in this class is responsible for providing clerical maintenance support and administrative assistance to the operating maintenance facility to which assigned, including preparing and maintaining reports and records and for utilizing designated office equipment.

**QUALIFICATION REQUIREMENTS:**To be considered for the position, you must meet minimum qualifications. It is, therefore, very important for you to include on your application any education/experience you have had that is described in the minimum qualifications. Incomplete information may delay the assessment process.

**MINIMUM QUALIFICATIONS:**Graduation from high school or possession of a high school equivalency certificate with responsible technical and administrative support or related experience in a maintenance operation. Knowledge of the Authority's maintenance administrative support procedures, rules and regulations.An equivalent comibination of education and experience may be acceptable. Ability to accurately tpye 25 wpm. A typing test will be given.

**EVALUATION CRITERIA MAY INCLUDE ONE OR MORE OF THE FOLLOWING:**
1) Education, training and experience
2) Personal Interview
3) Medical examination which may include alcohol and drug testing
4) Performance and attendance record

**The order of preference for selection for L689 Maintenance and Construction positions will be made on the basis of fitness and ability with preference given to: Maintenance and Construction seniority district, System−Wide (L689), Authority−Wide and external candidates, respectively.**

DEFENDANT'S EXHIBIT
18

*************** -COMM. JOURNAL- ******************* DATE SEP-30-2004 ***** TIME 15:40 *** P.01

MODE = MEMORY TRANSMISSION                    START=SEP-30 15:39    END=SEP-30 15:40

FILE NO.= 109

| STN NO. | COM | ABBR NO. | STATION NAME/TEL. NO. | PAGES | DURATION |
|---------|-----|----------|----------------------|-------|----------|
| 001 | OK | ☎ | 93015686620 | 001/001 | 00:00'30" |

                                                        -COUN

*********************************** -202-962-2550  - ***** -            - ********



# PROMOTION/TRANSFER OPPORTUNITY
## WMATA EMPLOYEES ONLY

Application are now being accepted in the Office of Human Resource Management and Planning for the position listed below. Please submit you application to the Office of Human Resouce Management and Planning, 600 5th Street, NW, Room 7F, Washington, DC 20001 or fax to 202–962–1180.

**APPLICATIONS MUST BE DELIVERED TO THE OFFICE OF HUMAN RESOURCE MANAGEMENT AND PLANNING NO LATER THAN 5:00 PM ON THE CLOSING DATE OF THE POSITION**

| | |
|---|---|
| POSITION/JOB CLASS: | FACILITIES MAINTENANCE CLERK/5331 |
| FLSA: | NON – EXEMPT |
| DEPARTMENT/OFFICE: | OPER/PLNT |
| UNION/GRADE: | L689 |
| SALARY: | $948.44 WEEKLY |
| LOCATION: | METRO CENTER |
| SHIFT: | 7:30AM – 4:00PM |
| DAYS OFF: | SATURDAY/SUNDAY |
| POSTING NUMBER: | 03–0700–MB |
| OPENING/CLOSING DATE: | September 25 – October 8, 2003 |

**JOB DESCRIPTION:** This is administrative and clerical support maintenance work involving the provision of technical and administrative assistance to the FMNT facility to which assigned. Employee is responsible for preparing and maintaining reports and records, and for utilizing designated office equipment such as personal computers, visual data terminals, data processors, electronic typewriters, calculators and reproduction machines.

**QUALIFICATION REQUIREMENTS:** To be considered for the position, you must meet minimum qualifications. It is, therefore, very important for you to include on your application any education/experience you have had that is described in the minimum qualifications. Incomplete information may delay the assessment process.

**MINIMUM QUALIFICATIONS:** High School diploma or GED. Responsible technical and administrative support or related experience in a plant maintenance facility. Or, an equivalent combination of education and experience. Possession of a valid driver's license.

**EVALUATION CRITERIA MAY INCLUDE ONE OR MORE OF THE FOLLOWING:**
1) Education, training and experience
2) Personal Interview
3) Medical examination which may include alcohol and drug testing
4) Performance and attendance record

**ORDER OF PREFERENCE:** The selection for Maintenance Clerks will be made on the basis of fitness and ability with preference given to Maintenance Clerks, System–wide (L689), Authority–wide, and external candidates, respectively.

DEFENDANT'S EXHIBIT 19

| Position | Posted | Posting # | Applicants | Plaintiff Applied | PCN | Fill Date | Name | Status |
|----------|--------|-----------|-----------|-------------------|-----|-----------|------|--------|
| Facilities Mtc. Clerk | 9/25/2003 | 03-0700 | 112 | yes | 3092 | 12/23/2003 | Randolph, James | internal |
| Job Access Info Clerk | 9/12/2005 | 05-0954 | 441 | yes | 9934 | 1/17/2006 | White, Keisha | external |
| Customer Info Agent | 1/23/2006 | 06-0071 | 281 | no | 8626 | no | Position reclassed as Admin Aide 5/2006; abolished 7/2007 | |
| Receptionist | 6/4/2007 | 07-0410 | 273 | no | 2252 | 10/9/2007 | Gorman-Seldon,Darlene A | internal |



DEFENDANT'S EXHIBIT
20

1 (Pages 1 to 4)

---

1

1  IN THE UNITED STATES DISTRICT COURT
2      FOR THE DISTRICT OF COLUMBIA
3  ----------------------------------+
4  DONNA J. ALSTON,           + Civil Action
5        Plaintiff,    + No. 1:07CV 00122
6     v.            +
7  WASHINGTON METROPOLITAN AREA    +
8  TRANSIT AUTHORITY,         +
9        Defendant.   +
10 ----------------------------------+
11
12     Deposition of GINA PERVALL-WALKER, M.D.
13          Washington, D.C.
14        Thursday, January 24, 2008
15           10:11 A.M.
16
17  Job No.: 1-120326
18  Pages 1 - 96
19  Reported by:  Denice Z. Lombard, CSR
20
21
22

---

3

1          A P P E A R A N C E S
2
3      ON BEHALF OF PLAINTIFF:
4    BRUCE M. BENDER, ESQUIRE
5    AXELSON, WILLIAMOWSKY, BENDER & FISHMAN, P.C.
6    401 N. Washington Street, Suite 550
7    Rockville, Maryland 20850
8    (301) 738-7679
9
10     ON BEHALF OF DEFENDANT:
11   KATHLEEN A. CAREY, ESQUIRE
12   ASSISTANT GENERAL COUNSEL
13   WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
14   OFFICE OF GENERAL COUNSEL
15   600 5th Street, Northwest, Second Floor
16   Washington, D.C. 20001
17   (202) 962-1013
18
19     ALSO PRESENT: Donna Alston.
20
21
22

---

2

1      Deposition of GINA PERVALL-WALKER, M.D.,
2  held at the offices of:
3
4    WASHINGTON METROPOLITAN
5    AREA TRANSIT AUTHORITY
6    Medical Office
7    616 H Street, Northwest
8    Lower Level
9    Washington, D.C. 20001
10   (202) 636-7141
11
12
13
14
15     Pursuant to agreement, before Denice Z.
16  Lombard, Certified Shorthand Reporter and Notary
17  Public in the District of Columbia
18
19
20
21
22

---

4

1          C O N T E N T S
2  EXAMINATION OF GINA PERVALL-WALKER, M.D.    PAGE
3  By Mr. Bender              7
4  By Ms. Carey              82
5  By Mr. Bender             90
6
7
8          E X H I B I T S
9  EXHIBIT NO.      DESCRIPTION          PAGE
10 Exhibit 1  WMATA Medical Office
11        Follow Up Status        13
12 Exhibit 2  Report from Medical Faculty
13        Associates dated 1-28-06 and
14        Washington Hospital Center
15        handwritten note         13
16 Exhibit 3  Hourly Payroll Return To Duty and
17        Medical Office Return To Duty Notice 13
18 Exhibit 4  E-mail to Mr. Brown from the witness
19        dated 2-17-0613         13
20 Exhibit 5  Medical evaluation or return to
21        duty evaluation results form filled
22        out by Ms. Alston and the witness   24

---

DEFENDANT'S
EXHIBIT
21

17

1    Q    Okay. This is a form that's used to capture
2  results of a medical evaluation or return-to-duty
3  evaluation. And it's a two-sided form. The first
4  side of the form is for the employee to complete,
5  which includes information such as her name, her
6  address and a brief medical history.
7        And the second side of the form is where I
8  write my medical records.
9    Q    Okay. On the first side of the form, what
10  did she write regarding her medical history as of
11  2-17-06?
12    A    There's a questions area where she's to
13  answer yes or no for various medical conditions, and
14  she answered no for everything, and that includes
15  from history of head injury, asthma, chest pain,
16  heart disease, hospitalizations. It's a pretty
17  detailed review of systems, and she checked no.
18    Q    All right.
19    A    And she did not make any written
20  documentation herself. She signed the form
21  2-17-2006.
22    Q    So did she tell you she was suffering from

18

1  any medical issue at that point?
2    A    When I spoke with her.
3    Q    Okay. What did she tell you as a history?
4    A    She told me -- I'll just read what it says.
5    Q    Go right ahead.
6    A    "Employee referred for medical evaluation
7      after absence due to respiratory symptoms.
8      States she developed shortness of breathe
9      and wheezing while cleaning bus. She went
10      to Washington Hospital Center Emergency
11      Department, had evaluation, and provided
12      note stating she needs to avoid chemicals."
13        It goes on to say:
14      "She stated she had not been provided a
15      mask, but with further questioning, she
16      told me that she had worn a mask, and with
17      her mask, she had symptoms despite wearing
18      the mask, but not as severe.
19      "She had recently had an evaluation by a
20      pulmonologist and referred for further
21      evaluation, but unsure of the reasoning for
22      this."

19

1    Q    Was the pulmonologist Dr. Silver, the doctor
2  from George Washington that we were looking at his
3  note in Exhibit 2?
4    A    Dr. Silver is an internist. I believe the
5  pulmonologist is Hasselquist.
6    Q    Okay.
7    A    But Dr. Silver probably referred her to
8  Dr. Hasselquist.
9    Q    All righty, go ahead and finish then.
10    A    And:
11      "Made employee aware that I will need to
12      review Washington Hospital records and get
13      statement from pulmonologist of ability to
14      perform duties with exposures with or
15      without mask."
16      And, "Held off pending."
17    Q    Well, as of this date you had the Exhibit 2,
18  the two letters from the George Washington and
19  Washington Hospital Center, correct?
20    A    Yes.
21    Q    And the two letters indicate, do they not,
22  that she has a pulmonary condition -- and I'm reading

20

1  from Dr. Silver's report -- "which is exacerbated by
2  fumes and she needs to be placed in a work
3  environment free from noxious fumes," correct? He
4  told you that.
5    A    Correct.
6    Q    And the Washington Hospital Center facility,
7  signed by another physician whose name I can't read,
8  says:
9      "If possible, she needs to avoid chemicals
10      and fumes as these are likely to be a cause
11      of many of her symptoms."
12        So two different physicians told you that
13  she needed to avoid chemicals and fumes, correct?
14      MS. CAREY: Objection to the
15  characterization.
16      Go ahead.
17  BY MR. BENDER:
18    Q    Well, they may not have told you, but they
19  recorded that --
20      MS. CAREY: Same objection.
21  BY MR. BENDER:
22    Q    -- which you had in your possession; is that

## Washington Metropolitan Area Transit Authority
## Office of Human Resource Management and Planning

600 Fifth Street, N. W., Washington, D. C. 20001
WWW.WMATA.COM
Fax: (202)962-1180

### Employment Application



| | |
|---|---|
| Position Desired: | (05-0954-EY) |
| | Full Time |
| Date Entered: | 09/27/2005 13:55:53    Generalist:    ROMINA DAVIS |
| Name: | Keisha M White |
| Maiden: | Social Security Number: 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 |
| Address: | 2702 Bellbrook Street |
| | Temple Hills , MD 20748 |
| Phone: Home | 301-894-1099    Office: |
| Email Address: | kmwhite10@cs.com |
| Are you age 18 or over? | Yes |
| Special Qualifications: | |

I have approximately 5 years in providing administrative support functions and customer service experience. Ability to supply accurate and centralized reporting, database management, maintain filing systems. Excellent research and data gathering skills. Expert knowledge of MS Office Suite, Word, Excel, PowerPoint, Access, Publisher, Visio, etc. as well as other software applications. Ability to type 50 wpm, prioritize and manage projects.

### EDUCATION

| Level | Name of School City and State Where Located | Number of Years Attended | Did you Graduate? | List Diploma Degree or Certificates | Major Field |
|---|---|---|---|---|---|
| High School | Suitland High School Suitland, MD | 4 | Yes | diploma | |
| College | DeVry University Columbus, OH | 4 | Yes | Bachelor | Business Adm |
| Trade Vacational or Technical | | | Yes | | |

DEFENDANT'S EXHIBIT
22

| Post Graduate Other | | | Yes | | |
|---|---|---|---|---|---|
| | | | | | |

**Have you served in U.S. Armed Forces?**   No

If yes, From:                   To:

    Final Branch:

    **Type of Work:**

    **Training:**

## PREVIOUS EMPLOYERS

MAY WE CONTACT YOUR CURRENT EMPLOYER FOR A REFERENCE?                   Yes

Name of employer         JP Morgan Chase

Date From:   07/2004           To:   09/2005

Address:         800 Brooksedge Blvd. Westerville, OH 43081

Position Held:         Financial Service Advisor

Salary: Start   22880             End:   22880

Describe the responsibilities of your position:

· Responsible for analyzing accounts by handling highly sensitive information. Provide exemplary customer service by Resolving any customer inquiries regarding account inaccuracies and identifying trends to ensure account security is maintained.
· Work closely with team and managers to understand and comply with business procedures and federal regulations. Discuss ideas and recommendations of departmental improvements to enhance the organization¿s effectiveness.

Name of Immediate Manager or Supervisor:         Johnny Moses

Telephone Number:   614-776-7659

Reason(s) for leaving:

relocated state of residence

Name of employer   Central Ohio Transit Authority (COTA)

Date From: 11/2003           To: 03/2004

Address:   1600 McKinley Ave. Columbus, OH 43222

Position Held:   Mobility Intern

Salary: Start   20880           End:   20880

Describe the responsibilities of your position:

· As an intern with COTA, assisted and supported Director of Paratransit and Mobility Management with the implementation of a new taxi voucher transportation service. Conducted quality research on neighboring transit authorities and other major transportation services.
· Gathered pertinent data through telephone interviews, email correspondence and monthly governance board meetings. Analyzed and documented information into reports and presented information to Director. All information gath

Name of Immediate Manager or Supervisor:   Carol Perkins
Telephone Number:   614-275-5821
Reason(s) for leaving:

internship ended

Name of employer    FedEx Express
Date From: 02/2001          To: 11/2003
Address:    7066 Cargo Rd. Columbus, OH 43219
Position Held:    handler
Salary: Start    20000          End: 20000
Describe the responsibilities of your position:

· Developed accurate record keeping, memorization and leadership skills while
working in a team-oriented environment.  Along with team members, received,
sorted and loaded freight and packages to their appropriate destinations in a
time sensitive environment.
· Assisted in training fellow coworkers on aircraft operation policies and manual
procedures and proper equipment safety.

Name of Immediate Manager or Supervisor:   Pat Koetz
Telephone Number:   614-492-6148
Reason(s) for leaving:

accepted internship opportunity w/COTA

### PERSONAL INFORMATION

1. Have you ever been discharged (fired) or requested to resign from a former
   position?

   No     If yes, please explain:

2. Have you ever been an applicant or employee of the Washington Metropolitan Area
   Transit Authority?  No

   If answer is yes, please give name(s) at time of employment date(s) and
   position title(s):
   Name:
   Date of Employment:
   Position Title:

3. Do you have relatives working for the Washington Metropolitan Area Transit
   Authority?  No

   (If answer is yes, please give names(s), relationship(s) and position title(s)
    in the ADDITIONAL INFORMATION section.)

4. Have you ever been convicted for any offense other than a traffic violation?
   No

   If yes, please explain:

5. What is minimum annual salary you will accept?  25000

6. Indicate source from which you learned of this position:
   www.wmata.com

### DRIVING INFORMATION

Commercial driver's license?   No        Are you 21 years or over?  Yes
Original issue date:

| NAME | HOME ADDRESS | PHONE | OCCUPATION |
|------|--------------|-------|------------|
| Jeffrey Effinger | | **H:** 614-352-6986<br><br>**W:** 937-6457437 | Electrical Engineer |
| Ronald Tyler, Jr | | **H:** 614-776-5097<br><br>**W:** 216-401-3899 | Employee Srvcs Representative |
| Sandra White | | **H:** 301-574-1080<br><br>**W:** 703-414-6693 | Analyst |

**PROFESSIONAL REFERENCES**

**ADDITIONAL INFORMATION**

**Reviewed by:**

**Applicant Status:** Received in ESBR

**Comments:**



# Washington Metropolitan Area Transit Authority

## ━ MEMORANDUM ━

**metro®**

SUBJECT: Application for Position

**FROM:** _James Randolph III_
*(Please Print)*

**HOME ADDRESS:** _13510 Hillrod lane_
_upper Marlboro MD_   Zip _20774_

Posting Date _Sept 25, Oct, 2003_

Posting Number _030700 MB_

**TO:**   ERS-Employment Services

Please consider me for the position of (use the announcement) _Facilities Maintenance Clerk /5331_
_____ in the Office of _Oper/Plnt_

located at _Metro Center_   This is a TA/TS grade _____

Union _L689_   Preferred Shift (if applicable) _7:30 AM - 4:00 PM_

**THIS APPLICATION MAY BE THE ONLY DOCUMENT(S) USED TO EVALUATE YOUR QUALIFICATIONS, THEREFORE IT IS IMPORTANT THAT YOU PROVIDE ALL ESSENTIAL INFORMATION. (A CURRENT RESUME IS PREFERRED BUT NOT REQUIRED).**

My specific qualifications for this position are: (You may attach additional pertinent information).

_1-91-91-H_
_9-29-96-S_

------------------------------ **PERSONAL DATA** ------------------------------

I.D. Number _733333_   S.S. Number _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_   Full Time ☒ Part Time ☐

Current Phone: Office (_240_) _401-1352_   Home (_301_) _390-4546_

Current Position/Grade _Custodian_   Shift _6:30 AM - 3:00 PM_

**Non-Rep.** ☐ **Union:** ☐ Local 2   ☒ 689   ☐ 246   ☐ 922   Date of Employment _January 14, 1991_

H.S Grade Completed _12th_   College Degree: ☐ BA ☐ MA ☐ Ph.D   Major: _____

License(s) Held _Mear_ and _Drivers_   Other _____

Signature _[signature]_   Date _10/8/03_

9.102 (REV. 4/89)

DEFENDANT'S EXHIBIT 23

**James R. Randolph, III**
**13510 Hillrod Lane**
**Upper Marlboro, MD 20774 (301)390-4546**

| | |
|---|---|
| **Career Objective** | To obtain a challenging and flexible position which will allow me to use, strengthen and further develop present skills and facilitate personal and professional growth. |

**Education**

| | |
|---|---|
| **1985 - 1986** | Cleveland Institute of Electronics, Cleveland, OH<br>Studied basics of installation and maintenance of electronic systems. |
| **1979 - 1982** | Princess Ann High School<br>Virginia Beach, VA<br>Awarded High School Diploma, College Preparation Concentration |

**Work Experience**

| | |
|---|---|
| **1991 - Present** | **Washington Metropolitan Area Transit Authority** |
| **1999 - Present** | Office of Plant Maintenance - Custodian |

Responsible for collection and disposal of varied forms of debris, inclusive of environmentally destructive agents, in accordance with Federal (EPA) and jurisdictional regulations.

Cleaned various items and surfaces and, as required, restored same to original condition, utilizing broad range of knowledge of proper operation of equipment, cleaning techniques and chemical application(s).

Maintained facilities to which assigned at level which met or exceeded general industry and WMATA standards, ensuring healthy workplace and public environments.

Performed administrative functions in absence of Maintenance Clerk, inclusive of but not limited to: electronic input of time and attendance records for ATU Local 689 personnel; gathering of data for formulation of various reports and dissemination of same.

Performed in supervisory capacity in absence of supervisor(s): formulated work schedules; assessed material/equipment requirements and participated in acquisition process; monitored activities of crew members; evaluated facilities' custodial requirements and ensured requirements were met in timely and efficient manner.

**1991 - 1996**      Metro Transit Police Department - Special Police Officer

Enforced security regulations in accordance with Metro and jurisdictional regulations to: ensure safety of personnel and patrons; ensure security of properties and assets.

Compiled data relative to labor functions, i.e., time and attendance records and task assignments.

Delegated tasks to subordinates based on assessments of tasks, labor requirements, and manhour availability.

Performed as armored car personnel alternate. Duties generally entailed revenue collection and transportation functions; as necessary, interacted with contracted firms (Brinks Armored Services) to ensure safe transportation, storage and security of revenue and incidentals (bus transfers, etc.).

**1991 - 1995**      **RCI Systems, Inc. - Service Technician**

Held part-time position; general duties entailed installation and servicing of various communication systems and components.

**1950 - 1991**      **Sound Installation - Installation Technician**

Installed and serviced custom audio and visual communication and entertainment systems.

**1989 - 1990**      **Recording Consultants, Inc. - Installation Technician**

Installed and serviced telecommunications and audio-visual equipment and systems.

**1989 (02 - 06)**      **Christian Broadcasting Network - Sr. Systems Engineer Assistant**

Installed various visual broadcasting equipment, inclusive of router switches and sound distribution and transmission systems/components.

**1988 - 1989**      **Southeast Audio, Inc. - Installer**

Assisted Director of Technology and Satellite Communications, Christian Broadcasting Network, with installation of various audio equipment.

**1984 - 1988**      **Christian Broadcasting Network - Television Studio Technician**

Operated various broadcasting equipment; assisted with development of studio configurations and lighting and set layout and construction.

## APPLICANT FLOW REPORT

### SECTION 1

**Position Title:** Facilities Maintenance Clerk     **Grade:** ☐Non-Rep  ☐ Non-union  ☒Union: Local 689

**Dept/Off:** OPER/PLNT     **Hiring Manager:** Paula Lee     **Title:** Supervisory Management Analyst - GMAC

**Interview Panel:** ☐Yes   ☒No     **HRMP Representative:** _____

**Panel Members:** _____     _____
                   _____     _____
                   _____     _____

### SECTION 2   (FOR HRMP USE ONLY)

Job Positing No._____     Internal Posting:☐No     ☐Yes   Posting Dates ___ to ___

External Recruitment:  ☐No     ☐Yes                     Advertised: ☐No ☐Yes

Affirmative Action Outreach:     ☐No          ☐Yes

Total Applicants:___   Internal:___   External:____   Referred:____ Interviewed:_____

### SECTION 3

#### CANDIDATES INTERVIEWED

| Applicant's Name | Gender M/F | *EEO Code | Source Internal/External | Disposition and Reason for Selection or Non- Selection |
|---|---|---|---|---|
| Valerie Reddish | F | B | Internal | Not Selected Excessive Absences - Most Senior |
| Katrina Ingram | F | B | Internal | Not Selected Excessive Absences - Most Senior |
| Vikki Griffin | F | B | Internal | Not Selected - Less Senior |
| James Randolph III | M | B | Internal | Selected Most Qualified - Most Senior |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

*EEO Code- White/Black/Asian/Hispanic/Native American          (Use additional Applicant Flow Reports if necessary)

Prepared by: Paula Lee     Title: Supervisory Management Analyst
             (print name)

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**
**APPLICANT EVALUATION FORM**

An Applicant Evaluation Form must be completed for each applicant interviewed by the hiring manager. In cases where an Interview Panel is also used to interview applicants, each panel member must complete an evaluation form for each applicant interviewed by the panel.

In complete the evaluation, the applicant should be assessed in terms of the suitability of his or her background, experience, skills, abilities, and other requirements for performing the duties and responsibilities of the position in a fully satisfactory manner.

**Applicant's Name:**    James Randolph III

☐ External    ☒ Internal    ☐ Non-represented    ☐ Represented: Local:    **689**

**Position Title:**    Facilities Maintenace Clerk        Grade:_____

☐ Non-Represented    ☐ Local 2    ☒ 689    ☐ 922        ☐ 246        ☐ 246 Special

**Interview Date:**        12/08/03

---

**INTERVIEW EVALUATION SUMMARY**

☐    Applicant meets minimum qualifications of the position but possesses few, if any of the desirable skills, competencies and professional/work exposures identified in the job description; and rates average or below average in most evaluation areas.

☒    Applicant meets the qualifications of the position, possesses many of the desirable skills, competencies and professional/work exposures identified in the job description; and rates above average in most evaluation areas.

☐    Applicants meets the qualifications of the position, possesses most of the desirable skills, competencies and professional/work exposures identified in the job description; and rates above average in most evaluation areas.

---

**COMMENTS:**    _____

_____

☒ RECOMMENDED FOR HIRE    ☐ NOT RECOMMENDED FOR HIRE

Interviewer's Name:  (print)___Paula D. Lee____    Title:____Supervisory, Management Analyst
        ☐ Panel Member        ☒ Hiring Manager

Interviewer's Signature: _Paula Lee_    Date: _12/8/03_

May 15, 2006

Ms. Donna Alston
5017 East Capitol St, SE
Washington, DC 20019

Dear Ms. Alston:

The Office of Human Resource Management Services (HRMS) has been advised by the Medical Services Branch that you have been permanently medically disqualified from the position of Cleaner, effective April 25, 2006. In accordance with the agreement between the Washington Metropolitan Area Transit Authority and Local Union 689, Section 124, you were referred to HRMS for assistance in a job change. This is to advise that your contact person in HRMS will be Mary Bailey, and she can be reached at 301-618-7518. For your information, your Section 124 entitlement will expire on April 25, 2009, three years from the date you were medically disqualified.

If you have a change of address during your absence, it is your responsibility to immediately advise HRMS of that change.

I have enclosed a copy of the most recent position vacancy listings, as well as in-house application forms, to assist you in applying for vacant positions. In the future, you will receive the vacancy listings in the mail from HRMS. If you prefer, we can forward future vacancy listings via email. If you are interested in having this done, please send your email address to rrikard@wmata.com.

If you have any questions, please feel free to contact either Ms. Bailey or myself.

Sincerely,

R. E. Rikard

R. E. Rikard
Employment Program Specialist
Office of Human Resource Services

Attachments

cc:    HRMS  -  Mary Bailey
       BMNT  -  Stephen Edwards
       L689   -  Michael Golash
                 Brenda Thomas
       OPAS  -  Rob McFerron

Washington
Metropolitan Area
Transit Authority

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

By Metrorail
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus:
Routes 01, 03, 08, P6,
70, 71, 90, X2

A District of Columbia,
Maryland and Virginia
Transit Partnership

DEFENDANT'S
EXHIBIT
24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| DONNA J. ALSTON | : | |
| | : | |
| Plaintiff | : | Civil Action No.:1:07cv00122(ESH) |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON METROPOLITAN AREA: | | |
| TRANSIT AUTHORITY | : | |
| | : | |
| Defendant. | : | |

## AFFIDAVIT OF ROSLYN RIKARD

1.  My name is Roslyn Rikard.  I am employed by the Washington Metropolitan Area Transit Authority and have been so employed since 1984.

2. My current position is Employment Program Specialist in Workforce Services.

3. In my current position I am responsible for compliance with rights and benefits available to employees determined to be medically disabled from their job position. (Includes Section 124 and Section L-16 employees)

4. I am familiar with Ms. Donna Alston and have been since she was placed on the Section 124 list of Local 689 employees in April of 2006.

5. On May 15, 2006, I wrote to Ms. Alston and provided her with information regarding her employment status.  That letter with my signature is Exhibit #24.

6. On at least three occasions, I met with Ms. Alston in my office to discuss her employment status and her job search.

7. I am aware that Workforce Services has mailed job vacancy announcements to Ms. Alston.  There have been a limited number of occasions when Ms. Alston did not receive the announcements by mail.  However, on those occasions Workforce Services corrected the administrative problem and Ms. Alston continued to receive the notices.

8. When WMATA began to use a computer software program to provide access to job listings, the HEART program, I wrote, and had mailed to each Section 124 employee, including Ms. Alston, a letter explaining the system and identifying each

employee, including Ms. Alston, a letter explaining the system and identifying each WMATA location where a Kiosk was available that provided access to the system.

9. If an employee requests to receive vacancy announcements by either U.S. Mail or email, I initiate the steps enabling the employee to be so notified.

10. I routinely suggest to Section 124 employees, including Ms. Alston, that they avail themselves of the training classes offered to all WMATA employees, to either hone existing skills or develop new skills. I do this in an attempt to expand the individual employee's resume and in an attempt to make them qualified for more positions both within and outside of the Authority.

11. I request that all Section 124 employees provide me with a copy of their applications for any jobs within WMATA. This enables me to make a knowing and diligent follow-up on the employee's behalf regarding the status of that application. I requested the same information from Ms. Alston. However, Ms. Alston never provided that information to me.

12. From July 16, 2007 through September 14, 2007 and from October 1, 2007 through December 6, 2007, WMATA conducted two training classes for Station Manager Positions in the Rail Division. Each class was open only to medically disabled employees. Ms. Alston was notified of the classes. I scheduled appointments on two occasions with WMATA Health Services in order for Ms. Alston to obtain medical clearance for the position of Station Manager. She failed to appear for either appointment. Ms. Alston did not participate in either training class.

13. Ms. Alston remains a Section 124 employee entitled to all the rights and benefits of Section 124 employees. Such employees remain WMATA employees, and may remain on the Section 124 list for three years. Ms. Alston is entitled to remain on that list until April 25, 2009.

I SWEAR AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THESE STATEMENTS ARE TRUTHFUL AND ACCURATE TO THE BEST OF MY PERSONAL KNOWLEDGE

_10 April 2008_
Date

_Roslyn Rikard_

Roslyn Rikard as
Employment Program Specialist
WMATA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

DONNA J. ALSTON                    :
                                   :
        Plaintiff                  :    Civil Action
No.:1:07cv00122(ESH)
                                   :
        v.                         :
                                   :
WASHINGTON METROPOLITAN AREA:
TRANSIT AUTHORITY                  :
                                   :
        Defendant.                      :

AFFIDAVIT OF STEVEN GODBEY

I affirm under the penalty of perjury that the following
statements are true and correct and are based upon my personal
knowledge.

1. My name is Steven Godbey and I am an employee of the
Washington Metropolitan Area Transit Authority.

2. I am employed as a Supervisor in Employment Services at WMATA.

3. As part of my duties and responsibilities, and in my
experience at WMATA,  I am knowledgeable of, and familiar with,
the software systems relied upon by WMATA to capture and report
personnel matters including those associated with the hiring and
selection process.

4. I have reviewed that material in response to a request for
information about Donna Alston, specifically with respect to four
positions which she claims she applied for, when those positions
were posted and who, if anyone, was ultimately selected for the
position and why.

5. Attached is a condensed form of some of the information I have
reviewed. (Exhibit #20)

6. Exhibit #20 includes the following information: the name of
the position, the date it was posted in order to give applicants

an opportunity to apply, whether Ms. Alston applied for the
position; when the position was filled, the identity of the
person who was selected for the position, if anyone; or if the
position still exists.

7. The position of Job Access Information Clerk was filled by
Keisha White.  Ms. White was selected from outside the Collective
Bargaining Unit based upon her direct experience in the transit
industry and with disabled clientele.

8. The position of Facilities Maintenance Clerk was filled by
James Randolph III.  Mr. Randolph was qualified for the position
and had more seniority in Local 689 than did Ms. Alston.  Mr.
Randolph's seniority date is 9/29/1996.

9. The position of Garage Clerk required that the candidate be
able to type 25 words per minute.  Donna Alston applied for the
position, but was unable to pass the typing test.  The two
openings for Garage Clerk were filled by Nena Spriggs and
Christopher Smartt.


Further this affiant sayeth not.

                                        Steven Godbey, Supervisor
                                        Employment Services
                                        April 30, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

DONNA J. ALSTON                    :
                                   :
          Plaintiff,               :
                                   :
          v.                       :          Civil Action No.:1:07cv00122(ESH)
                                   :
WASHINGTON METROPOLITAN AREA       :
     TRANSIT AUTHORITY             :
                                   :
          Defendant.               :

**O R D E R**

This matter came before the Court pursuant to the Defendant WMATA's

motion for summary judgment on all claims.  After considering the motion, the

opposition thereto and the record in this case, the Court finds and concludes that

the motion should be granted.

Therefore, it this ___ Day of _____, 2008

ORDERED that the Defendant WMATA's motion for summary judgment is

granted, and it is

FURTHER ORDERED that judgment is entered for the Defendant and against

the Plaintiff on all claims.

_____
Judge Ellen S. Huvelle
United States District Court

Copies electronically to:
Kathleen A. Carey
Counsel for Defendant WMATA

Bruce M. Bender
Leizer Goldsmith
Counsel for Plaintiff Alston