**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DONNA J. ALSTON,         )
                    )
        Plaintiff,    )
                    )
        v.            )     CA 07-0122 (ESH)
                    )
WASHINGTON METROPOLITAN AREA   )
TRANSIT AUTHORITY,    )
                    )
        Defendant.    )

**DEFENDANT WMATA'S REPLY TO
PLAINTIFF'S  OPPOSITION TO WMATA'S
MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

<u>**Introduction**</u>

Defendant WMATA submits this consolidated: (1) Reply to Plaintiff's Opposition to WMATA's Motion for Summary Judgment; and (2) Opposition to Plaintiff's Cross-Motion fo Summary Judgment.   Plaintiff's Opposition significantly reduces the scope of her claim in this Rehabilitation Act case.   Prior to WMATA's summary judgment motion, Plaintiff alleged that there were six positions to which she was entitled to be reassigned.  Plaintiff has dropped her claims as to four of these positions, thus leaving only two positions - - Job Access Information Assistant and Receptionist - - in issue.

With respect to the Job Access Information Assistant, WMATA determined that none of the in-house candidates, including Plaintiff, were adequately qualified.  Plaintiff admits in Paragraph 10 of her Statement of Material Facts Not in Dispute that this position "was provided to a more  qualified  candidate."   Contrary to Plaintiff's

argument, Aka v. Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998) (en banc) does not require WMATA to reassign Plaintiff to this position in light of the fact that WMATA determined that neither Plaintiff nor any of the other in-house applicants had the experience WMATA was seeking.  Moreover, such an interpretation of Aka is without foundation in light of the Supreme Court's post-Aka decision in U.S. Airways v. Barnett, 535 U.S. 391 (2002).

With respect to the Receptionist position, Plaintiff acknowledges that she never even submitted an application.  Plaintiff attempts to blame WMATA for her not receiving notice of the vacancy.  However, this job was first advertised at a time when Plaintiff was receiving the notices by mail, and she did not apply.  WMATA clearly has the right to adjust its notification system for Section 124 employees such as Plaintiff, and information regarding such vacancies was otherwise available.  Moreover, WMATA hired a more qualified candidate for the position.

The reasons advanced by WMATA both in its initial Memorandum and in this Reply/Opposition demonstrate that there are no genuine issues of material fact as to WMATA's entitlement to summary judgment, because WMATA had no duty to transfer Plaintiff to either the Job Access Information Assistant or Receptionist positions.  The fact that WMATA provided Plaintiff with the opportunity to seek alternative positions under Section 124 of the Collective Bargaining Agreement does not provide her with any legally mandated guarantee of receiving one of these positions, particularly where she admits that there was a more qualified candidate for

the Job Access Information Assistant job and Plaintiff failed to apply for the Receptionist position. Assuming, arguendo, the Court denies WMATA's motion, that decision does not mean that Plaintiff is entitled to summary judgment on her cross-motion. WMATA has conceded, for purposes of its motion for summary judgment only, that Plaintiff is substantially limited in a major life activity. However, Plaintiff has not established this, as a matter of law, and WMATA reserves the right to contest this issue, if future proceedings are deemed necessary. Moreover, Plaintiff has not, and cannot, establish that she was entitled to reassignment to either of the two positions in issue. Consequently, regardless of the Court's ruling on WMATA's motion, Plaintiff's cross-motion should be denied.

## ARGUMENT

**I.    WMATA Is Entitled To Summary Judgment Because Plaintiff Failed To Identify Any Vacant Position For Which She Applied And Was The Most Qualified Applicant, Consistent With The Applicable Collective Bargaining Agreement.**

The crux of Plaintiff's argument is that WMATA violated the Rehabilitation Act by failing to transfer her to either the Job Access Information Assistant position or the Receptionist position.[1]    Plaintiff contends that, in this Circuit, an employer is required to reassign a minimally qualified employee to a vacant position, and not just allow the employee to compete with all other applicants, relying on Aka v. Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). For the following reasons, Plaintiff's argument misconstrues Aka, particularly in light of the

---

[1] As noted above, Plaintiff has dropped her claims regarding the other four positions addressed in WMATA's initial Memorandum.

Supreme Court's subsequent decision in U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002), and the purpose and nature of Section 124 of the Collective Bargaining Agreement between WMATA and Local 689, Amalgamated Transit Union, which represented Plaintiff.

**A.    The Purpose Of Section 124 Is To Facilitate The Retention Of Workers With Disabilities Who Would Otherwise Be Unable To Continue Work With WMATA, Consistent With The Seniority Provisions Of The Collective Bargaining Agreement.**

Plaintiff attacks Section 124 of the Collective Bargaining Agreement, or at least WMATA's interpretation of it, contending that the Rehabilitation Act mandated the reassignment of Plaintiff, without competition from other employees. (Plaintiff's Memorandum at 7-8). In particular, Plaintiff challenges WMATA's right to select the best qualified applicant. Plaintiff's argument fails for several reasons.

The very purpose of Section 124 is to provide a means to allow medically disqualified employees a method of retaining employment with WMATA by transferring to a bargaining unit position for which the employee is qualified. Significantly, in quoting the first paragraph of Section 124, at page 7 of her Memorandum, Plaintiff leaves out the sentence "No such job offer shall be made until after other bidding rights under the contract are exhausted. (e.g., Sec. 301, 506)."

At any given time, there are approximately 100 Local 689 employees in Section 124 status. (Rikard Affidavit, ¶ 6). Consequently, although WMATA works with individuals in an attempt to match such employees with an appropriate position, this is not a situation such as a small agency or company attempting to accommodate

4

only a few medically disqualified employees.  WMATA has to consider the interests of the other Section 124 employees, as well as its need to protect the public by hiring the best qualified person for a position, consistent with the seniority provisions mandated by the contract and recognized by the Supreme Court in Barnett.

Contrary to Plaintiff's argument, Aka does not mandate that WMATA must hire a lesser qualified or unqualified person for a position to accommodate a person, such as Plaintiff, who arguably is protected by the Rehabilitation Act.  In Aka, an Americans with Disabilities Act ("ADA") case, the D.C. Circuit reversed summary judgment for the employer and remanded, inter alia, for the district court to determine, "through summary judgment or trial," whether the employer "had an obligation under the ADA to reassign Aka to a vacant position."  156 F.3d at 1306.

Plaintiff's strained interpretation of Aka that "an employee who seeks reassignment must be given the reassignment if he/she is qualified" (Plaintiff's Opposition at 15) simply is not consistent with the holding in Aka and subsequent case law.  In U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002), the Court held that an employer's showing that a requested accommodation conflicts with seniority rules is generally sufficient to demonstrate, as a matter of law, that the requested accommodation is not reasonable within the meaning of the ADA.  See discussion of Barnett at pages 9-10 of WMATA's initial Memorandum.

Moreover, Plaintiff in the instant case is simply wrong to suggest that Aka somehow holds that an employer must choose a lesser qualified applicant for a

position simply because that person may possess a disability within the purview of

the Rehabilitation Act.  In EEOC v. Humiston-Keeling, Inc., 227 F.3d 1024 (7th Cir.

2000), an employee injured on the job was reassigned to a temporary, less strenuous

position.  When that position expired, the employee applied for several vacant clerical

positions with the employer without success.  The company subsequently terminated

the employee.  The district court granted summary judgment for the employer.  The

Seventh Circuit affirmed, holding that the ADA did not require the employer to

reassign a disabled employee to a job where there was a better applicant where the

employer's policy was to hire the best applicant for the job rather than the first

qualified applicant.   The court specifically rejected EEOC's argument that the

employee with a disability should be chosen over a more qualified nondisabled person,

provided only that the disabled person is minimally qualified for the job and absent

undue hardship.  227 F.3d at 1027-28.  Distinguishing EEOC's reliance on Aka, the

Seventh Circuit stated:

> Aka is distinguishable.  It does not address the situation in
> which a nondisabled person is the superior applicant for the
> job to which the disabled person seeks reassignment and
> the employer has a consistent policy of preferring the best
> candidate for a vacancy rather than merely hiring the first
> qualified person to apply, as is often done for routine low-
> skilled jobs.  The court assumed that the alternative to a
> duty to reassign a person who is minimally qualified is a
> duty of the employer just to "consider" the person for the
> job, with no obligation actually to reassign him even if
> there is no competing applicant, let alone one no better
> than the disabled person.  On that assumption the statute's
> provision that reassignment can be a mandatory
> accommodation would indeed be meaningless.  Aka merely

6

> rejects an "interpretation of the reassignment provision as mandating nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates," an interpretation that the court thought "would render that provision a nullity." 156 F.3d at 1305. That is not the same thing as holding that the employer must pass over the superior applicant who, as we have emphasized, might himself or herself be disabled or belong to some other protected class.

227 F.3d at 1028.

Similarly, in Ozlowski v. Henderson, 237 F.3d 837 (7th Cir. 2001), the court affirmed summary judgment for the employer in a Rehabilitation Act case. The Seventh Circuit held that the plaintiff "failed to identify a vacant position at the Postal Service for which he was otherwise qualified." 237 F.3d at 842. The court further stated that "[e]xcept as specifically discussed below, Ozlowski does not provide any evidence of his qualifications in comparison to the legitimate prerequisites for any of the positions he identified or any evidence that such positions were vacant, other than his conclusory statements." 237 F.3d at 840. The court also cited EEOC v. Humiston-Keeling, supra, for the proposition that the ADA does not require an employer to reassign an employee with a disability to a vacant position where there is a better candidate. 237 F.3d at 841-42.

The foregoing decisions demonstrate that there is no basis for Plaintiff's argument that Aka compels placement of Plaintiff in either of the two remaining positions (Job Access Information Assistant and Receptionist) for which she claims entitlement without competition. WMATA simply had no obligation to transfer

7

Plaintiff to positions for which she was either unqualified or, alternatively, minimally qualified, where more qualified candidates were selected.  See Section I(B), infra.  Moreover, U.S. Airways, Inc. v. Barnett, supra, makes clear that seniority provisions generally must be upheld over requested transfers, absent circumstances not present here.  Furthermore, Plaintiff's attempt to have herself placed in either of these two positions ignores the fact that there are approximately 100 Local 689 employees at any given time in Section 124 status.  WMATA and Local 689's efforts to accommodate one of these employees must also take into account the interests of the other similarly situated employees.

**B.    Plaintiff Was Not Qualified For The Job Access Information Assistant Position Or, Alternatively, WMATA Selected The More Qualified Candidate.**

_____Plaintiff bears the burden of proving her qualifications for the position to which she seeks to be transferred.  See Desmond v. Mukasey, ___ F.3d ___ (D.C. Cir. July 1, 2008) (slip op. at 13-14).[2]  Moreover, it is not enough that she establish minimal qualifications, but rather that she is, if not the most qualified, at least as qualified as any other applicant.   EEOC v. Humiston-Keeling, Inc., 227 F.3d at 1028.  Furthermore, she must demonstrate that her selection would not run afoul of the seniority provisions of the collective bargaining agreement under U.S. Airways, Inc. v. Barnett.  Plaintiff cannot meet her burden.

---

[2] The D.C. Circuit's most recent Rehabilitation Act decision in Desmond v. Mukasey, (reversing summary judgment on the disability claim) is distinguishable on its facts, particularly where it centered on "nonaffirmative action employment discrimination" claims.  Slip op. at 13.

8

With respect to the Job Access Information Assistant position, Plaintiff unequivocally admitted in her Statement of Material Facts Not in Dispute No. 10 that this position "was provided to a more qualified candidate." That person was an outside candidate, Keisha White, who had previously worked for the Central Ohio Transit Authority for the Director of Paratransit and Mobility Management. (Defendant's Exhibit 22). WMATA's Job Access Information Assistant position involved functions providing transportation services for disabled (paratransit) customers. The successful applicant had directly applicable experience and specifically had

> assisted and supported the director of paratransit and mobility management with the implementation of a new taxi voucher transportation service. She conducted quality research on neighboring transit authorities and other major transportation services. She also gathered pertinent data through telephone interviews, e-mail correspondence and monthly governance board meetings. She analyzed and documented information into reports and presented the information to the director.

(Godbey Depo., Tr. 30, Exhibit #16 to Plaintiff's motion).

Plaintiff premises her argument with respect to the Job Access Information Assistant position on her allegation that WMATA's corporate designee stated in his deposition that Plaintiff "on paper" met the "minimum" qualifications for the position based on her education and some "clerical or administrative in a previous job, previous life" years before. (Godbey Depo., Tr. 24, lines 4-17). Plaintiff, at page 10 of her Memorandum, then unfairly leaps to the conclusion that "[t]his particular job is a direct example of the fact that WMATA's discriminatory policy required Ms. Alston

to compete with other non-disabled employees instead of being given priority for a job transfer." Preferential treatment is not required. See Terrell v. USAIR, Inc., 132 F.3d 621, 627 (11th Cir. 1998) (affirming summary judgment for the employer and stating that "[w]e cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers"); Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995) (reversing a judgment for the employee and stating that "we do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled"). Nowhere does Plaintiff demonstrate that her experience related in any way to "[a]bility to create and maintain a database, spreadsheets and word processing applications" or "[a]bility to effectively learn, or utilize existing computer systems such as ARTS and GIS." (Defendant's Exhibit 13, page 2).

It is somewhat ironic that Plaintiff seeks to have this court find that WMATA should have placed her in a position designed to assist persons with disabilities although she herself has no experience working with those persons the position seeks to assist, and the selected person possessed such experience. Consequently, Plaintiff has failed to meet her burden with regard to this position.

### C.    Plaintiff Did Not Apply For The Receptionist Position And, Alternatively, The Position Was Filled By A More Qualified Candidate.

Much of the case law discussed above in Section I(B) applies equally to the only other position, the Receptionist position, for which Plaintiff claims she should

have been placed, and will not be repeated here. Significantly, Plaintiff's Opposition at page 10 confirms that she never applied for the Receptionist position. Plaintiff merely alleges at pages 10 and 20 that, had she known of the vacancy, she would have applied for it.

Plaintiff alleges in Paragraph 8 of her Affidavit (Plaintiff's Exhibit 9) that she "was not sent vacancy announcements for jobs between May 2007 and December 2007." Significantly, as she acknowledges at page 19 of her Opposition, the Receptionist job was posted twice, once in 2006 when she was receiving the announcements, and re-advertised in May, 2007. Plaintiff does not even allege that she applied for this job when it was posted in 2006. Consequently, her claim that this was a job she should have received is belied by the fact that she never even applied for it when it was initially posted in 2006, or in 2007.

Moreover, Plaintiff's allegations regarding the Receptionist position, and her alleged failure to receive job announcements in the mail between May and December, 2007, provide her with no recourse. WMATA's Statement of Material Facts Not in Issue, which was not controverted by Plaintiff and thus is deemed conclusive, established the following facts. Rosalyn Rikard of WMATA's Office of Human Resource Services ("HRS") provides assistance to Section 124 employees, such as Plaintiff. (SMF, ¶ 10). Ms. Rikard provided Plaintiff with the name and telephone number of Plaintiff's main contact with HRS. (SMF, ¶ 13). Ms. Rikard met with Plaintiff on at least three separate occasions, answering questions and providing

information requested by Plaintiff.  (SMF, ¶ 15).  WMATA encouraged Section 124 employees to participate in WMATA-sponsored training classes.  (SMF, ¶ 16). Plaintiff failed to attend the training classes and failed to attend two appointments with WMATA's medical office to see if she could obtain medical clearance to work as a Metrorail Station Manager.  (Rikard Affidavit, ¶ 12).  Job postings during the relevant period were posted on WMATA's computer system.  (SMF, ¶ 17).  For Plaintiff to now claim, in effect, that she was cut-off from access to information pertaining to job vacancies during the period when the Receptionist position was re-advertised in 2007 is simply inconsistent with uncontradicted facts in the record. Plaintiff does not claim she was physically unable to access the job positions during this limited time period by the alternative means and contacts known to her.  Plaintiff knew how to access this information, and simply failed to utilize the alternative sources of information which WMATA made available to her.

Alternatively, Plaintiff simply lacked the qualifications for the Receptionist position.  The position description requires "two (2) years of experience as a receptionist in a busy office where inquiries are varied and numerous."  (Defendant's Exhibit 15).  Plaintiff lacked this minimum qualification.[3]  In contrast, the successful

---

[3] At pages 7-9 of her Opposition, Plaintiff appears to be challenging WMATA's interpretation of Section 124 of the collective bargaining agreement.  Issues of contract interpretation regarding the Collective Bargaining Agreement should be resolved by arbitration under § 66 of the WMATA Compact reprinted at D.C. Code § 9-1107.01(66) (2001).  However, Plaintiff raises a red herring, because what is in issue is the legal question of whether Plaintiff can meet her burden of proof regarding the Rehabilitation Act, and she has not, for the reasons stated.

candidate had approximately 34 years of experience in customer service with WMATA, including approximately 2 years acting in the position in issue.

## II.    Plaintiff's Cross-Motion For Summary Judgment Must Be Denied Because She Has Failed To Establish Any Violation Of The Rehabilitation Act.

_____The foregoing arguments, as well as the arguments in WMATA's initial Memorandum, demonstrate WMATA's entitlement to summary judgment, as well as the lack of merit to Plaintiff's Cross-Motion for Summary Judgment. WMATA will not repeat these arguments, which are incorporated by reference, but will only add the following brief additional points by way of opposition to Plaintiff's cross-motion.

Plaintiff failed to comply with the provisions of LCvR 56.1. That rule requires that each summary judgment motion be accompanied by a statement of material facts as to which there is no genuine issue which includes "references to the parts of the records relied on to support the statement." Plaintiff's Statement in support of her cross-motion provides no such record references. In addition, LCvR 56.1 requires that the opposing party submit a separate concise statement of genuine issues, including record references. Plaintiff has likewise failed to provide any statement controverting WMATA's Statement of Material Facts Not in Dispute. Consequently, under the rule, the court should treat WMATA's Statement as conceded.

Plaintiff incorrectly argues that WMATA has conceded her status as a person with a disability under the Rehabilitation Act. To clarify, only for purposes of WMATA's motion does WMATA assume, taking the evidence in the light most favorable to Plaintiff, that she would so qualify. WMATA does not concede this point

for purposes of Plaintiff's cross-motion. As Dr. Pervall-Walker testified in her deposition, she requested, but Plaintiff failed to provide, additional diagnostic studies and medical records regarding her claimed health status. (Pervall-Walker Depo. at 67-68). Dr. Pervall-Walker declared Plaintiff medically ineligible to perform the work of a bus cleaner, effective April 25, 2006, primarily as a cautionary action. Id. This designation permitted Plaintiff to receive benefits associated with Section 124 employees, but was not intended to constitute a legally sufficient determination for disability under the Rehabilitation Act.

Finally, although there are no genuine issues of material fact as to WMATA's entitlement to summary judgment, the reverse situation is not true, assuming, arguendo, that the court denies WMATA's motion for summary judgment. Clearly, Plaintiff has not established the absence of a genuine issue of fact to support an argument, which she herself does not make, that she was the best qualified candidate for either of the two remaining positions or that discrimination prevented her from getting either position. When addressing cross-motions for summary judgment, the court should "consider the record evidence with respect to each motion separately to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997). Under any scenario, Plaintiff's cross-motion should be denied.

14

## CONCLUSION

_____For the foregoing reasons, and as set forth in greater detail in WMATA's initial Memorandum, WMATA's Motion for Summary Judgment should be granted and Plaintiff's Cross-Motion for Summary Judgment should be denied.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Carol B. O'Keeffe
Unified Bar No. 445277
General Counsel

/s/_____
Mark F. Sullivan
Unified Bar No. 430876
Deputy General Counsel

/s/_____
Gerard J. Stief
Unified Bar No. 925933
Associate General Counsel

/s/_____
Kathleen A. Carey
Unified Bar No. 357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
Attorneys for Defendant WMATA
Kcarey@wmata.com

15

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant's WMATA's Reply to

Plaintiff's Opposition to WMATA's Motion for Summary Judgment and Opposition

to Plaintiff's Cross-Motion for Summary Judgment was sent by email to CORLISSV

@ ATT this 8th day of July 2008, to:

Bruce M. Bender
Van Grack, Axelson, Williamowsky,
Bender & Fishman, P.C.
401 N. Washington Street
Suite 550
Rockville, MD 20850

Leizer Goldsmith
The Goldsmith Law Firm, LLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20004-1109


                    __/s/_____
_____Kathleen A. Carey

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DONNA J. ALSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 07-0122 (ESH) |
| | ) | |
| WASHINGTON METROPOLITAN AREA | ) | |
| TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Upon consideration of the cross-motions for summary judgment filed by Defendant and Plaintiff, it is by the Court this ____ day of _____, 2008:

ORDERED, that Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The case is hereby dismissed with prejudice.  This is a final order.


_____
United States District Judge

Copies (electronically) to:

Kathleen A. Carey
Attorney for Defendant

Bruce M. Bender
Leizer Goldsmith
Attorney for Plaintiff

# MEDICAL FACULTY ASSOCIATES

## THE GEORGE WASHINGTON UNIVERSITY

RE:   DONNA JEAN ALSTON
MRN: 3268650
DOB: Jun 21, 1965

Jan 28 2006 12:00AM

To Whom it May Concern:

Re: Donna Alston

The patient is suffering from a pulmonary condition which is exacerbated by fumes. She needs to be placed in a work enviroment which is free from noxious fumes.

Please do not hesitate to contact me if you require further information.

Sincerely,

Paul A. Silver, M.D., F.A.C.P.
Associate Professor of Medicine
Assistant Director, Division of General Internal Medicine

Electronically signed by:PAUL  SILVER M.D.,F.A.C.P.  Jan 30 2006  6:07PM EST Author

WASHINGTON HOSPITAL CENTER
0 Irving Street, N.W. Washington, D.C. 20010
Telephone  877-7000

2479476
ALSTON
DONNA                                    F
BOLAD, ALADDIN    06/21/1965
19558147
02/03/06
2D05-B

℞    Not Valid for Controlled Substances

0300110

Mrs. Donna Alston was an inpatient
@ WHC on 2/3/06 (Friday) and needs
to abstain from work for one week, to
return 2/14/06. If possible, She needs to
avoid chemicals & fumes as these are
likely the cause of many of the
symptoms that Refill ___ Xs  require admission.

LABEL CONTENTS

Physician's Signature _____    M.D., D.D.S.    DEA No.

Printed Signature   NBUSHAN, NP    Date  1/9/06

0.01/02

DIVISION OF CARDIOLOGY
GW MEDICAL FACULTY ASSOCIATES
2150 PENNSYLVANIA AVENUE, NW, SUITE 4-414
WASHINGTON, DC 20037

## MEDICAL FACULTY ASSOCIATES

THE GEORGE WASHINGTON UNIVERSITY

### PRIMARY CARE ASSOCIATES

PATIENT WORK PROFILE

Patient Name _Alston, Derrick_ Date _1-5-06_
6-21-65

To Whom It May Concern:

_____ The above-named patient was in my office today for treatment.

_____ The above-named patient was under my care from _1-3-06_ to _1-4-06_.

_____ The above-named patient is free from all evidence of communicable diseases and is in good health and may resume work _____.

_____ The above-named patient must refrain until further notice from participation in _____.

_____ Please excuse the above-named patient from work between _____ and _____.

Signed _____

(202) 741-2476
Telephone Number

Comment:

Patient - White          Medical Record - Canary

2150 PENNSYLVANIA AVE., N.W.  •  WASHINGTON, DC 20037  •  (202) 741-2222

79-1011 (12/01)

M|C= 2|17

3|07 letter
2 583 2477

Ren. Paring

Barron
635 6794

Held Off

JAN 5'06 PM 3:09



THE GEORGE
WASHINGTON
UNIVERSITY
HOSPITAL

**Emergency Department**
**The George Washington University Hospital**
900 23rd St., N.W. Washington, D.C. 20037
202 / 715-4911

## *Medical Certificate*

Name: _____ Date: _____

This is to certify that the above patient was treated on _____

for _____

°   Work-related? Yes _____ No _____

°   **No work:**   From _____ To _____

°   **Light Duty:**   From _____ To _____

    Limitations: _____

    _____

°   **Regular work beginning:** _____

°   **Other:** _____

    _____


            **Signature:** _____

            **Printed:** _____

79-003 9/90

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
OFFICE OF INDUSTRIAL CONSTRUCTION & ENVIRONMENTAL SAFETY
WORKERS' COMPENSATION BRANCH

## RETURN TO DUTY CERTIFICATE

Employee Name: Donna Alston                    Employee No.: 001102

Work Location: BMNT                            Occupation: Bus Cleaner

Date of Injury: 12/22/2005                     Recurrence:

How Contacted: In Person                       Date Contacted: 01/04/06

Who Contacted Employee: Employee to SARP

### Physician Releasing Employee To Return To Duty

**Dr. GW Hospital**                            **Date of Report:** 12/22/06

**Effective Return To Duty Date:** __12/30/05__

☒    Claim has been accepted at this time.

☒    The above employee is certified to return to full duty with no restrictions.

☐    The above employee is certified to return to duty with the following restrictions:


DISABILITY: __12/22/05__ Thru __12/30/05__

Restrictions/Comments:


Office of ICES: __Sharon Howell 202-962-1547__          Date Issued: 01/04/06


Superintendent/Supervision: Mr. Brown
Schaffer: K. Pullen
Medical: Vera Liverpool


**Failure to timely report to work on your effective return to work date may result in disciplinary action subject to the Absenteeism Policy.**

JAN 5'06 PM 3:09

**THIS INFORMATION IS FOR OFFICIAL USE ONLY AND WILL NOT BE RELEASED TO UNAUTHORIZED PERSONS**

## Washington Metropolitan Area Transit Authority
### Record of Periodic Medical Examination/Return to Duty Evaluation

**M** metro

| Name (Last, First, Middle)   Print Clearly | Date of Birth | Payroll # | Daytime Tel (8 am - 5 pm) |
|---|---|---|---|
| Alston, Donna J. | 06 12 1165 | 001102 | 202 583 2177 |

**Address** 5017 East Capitol St SE    Wash D.C.    20019
Street / Apt No. / City / State / Zip Code

| Date Employed | Occupation | Office/Work Location | Work Phone |
|---|---|---|---|
| 12 26 00 | Prob. Bus Cleaner | Southern Ave | 202 635 6794 |

**Last day worked** 05, 17, 05    Mo Day Yr    Doctor's Certificate [ ] Yes [ ] No   If yes, give dates of coverage: From 1 29 05 through 05, , 05

### COMPLETE HEALTH HISTORY

**Have you ever had or do you now have any of the following:**

| | Y | N | | Y | N | | Y | N |
|---|---|---|---|---|---|---|---|---|
| Head or spinal injury | [ ] | [✓] | Fractures | [ ] | [✓] | Lupus | [ ] | [✓] |
| Seizures, fainting | [ ] | [✓] | Carpal Tunnel Syndrome | [ ] | [✓] | Sarcoidosis | [ ] | [✓] |
| Cataracts/glaucoma | [ ] | [✓] | Bursitis/tendinitis | [ ] | [✓] | TB | [ ] | [✓] |
| Hearing loss | [ ] | [✓] | Gonorrhea/syphilis | [ ] | [✓] | Surgical procedures | [ ] | [✓] |
| Asthma/Bronchitis/Emphysema | [ ] | [✓] | Hemorrhoids | [ ] | [✓] | Hospitalization | [ ] | [✓] |
| Chest pains/Irregular heart beat | [ ] | [✓] | Cancer | [ ] | [✓] | Any Drug rehab/counseling | [ ] | [✓] |
| Heart Problems | [ ] | [✓] | HIV/AIDS | [ ] | [✓] | Are you currently taking | | |
| High blood pressure | [ ] | [✓] | Mental Illness | [ ] | [✓] | medications? | [ ] | [✓] |
| Hiatal Hernia/Peptic ulcer | [ ] | [✓] | Anxiety | [ ] | [✓] | Do you take medications regularly | [ ] | [✓] |
| Diabetes | [ ] | [✓] | Depression | [ ] | [ ] | Any recent illness since your | | |
| Arthritis | [ ] | [✓] | Allergy | [ ] | [✓] | last visit? | [ ] | [✓] |
| Muscle Strain/sprain | [ ] | [ ] | Anemia | [ ] | [✓] | History of Low Back Pain | [ ] | [ ] |

**If answers to any of the above is yes, please explain in detail below.**

_____
_____
_____
_____
_____
_____

The Americans with Disabilities Act enables us to give you the opportunity to voluntarily identify yourself confidentially as disabled and to indicate the nature of such disability in connection with our positive actions to employ disabled persons. If you are disabled, state the nature of your disability and any accommodations required in the space below.

_____

I, the undersigned, do hereby certify that the answers to the above questions are true and give permission for this medical examination.

| Donna J. Alston | 05, 14, 05 | (signature) | M.D. | 5 19 05 |
|---|---|---|---|---|
| Patient Signature | Date | Reviewed by | | Date |

50.074 (02/97)

EXCERPT FROM PLAINTIFF'S EXHIBIT #4

# GEORGE WASHINGTON UNIV. HOSPITAL
# EMERGENCY RECORD

Name: Alston, Donna J
Age: F40
MedRec: 3268650
AcctNum: 110954187

**DIAGNOSIS (Dec 23 2005 01:18 DMA)**
FINAL: PRIMARY: 786.50 CHEST PAIN, NONDIAGNOSTIC ADDITIONAL: E868.3 Carbon
Monoxide poisoning (non fire).

**RADIOLOGY INTERPRETATION**
CHEST (Dec 23 0:11 DMA): Interpretation of chest X-ray shows, no infiltrates, no pneumothorax, no
hemothorax, no masses, no CHF, no effusion, no free air, Cardiomegaly.
(Dec 23 0:11 DMA): Interpretation of chest X-ray shows, no infiltrates, no pneumothorax, no
hemothorax, no masses, no CHF, no effusion, no free air, Cardiomegaly.

**HPI SHORTNESS OF BREATH**
CHIEF COMPLAINT (22:37 DMA): Patient presents for the evaluation of shortness of breath.
HISTORIAN (22:37 DMA): History obtained from patient.
TIME COURSE (22:37 DMA): Onset of symptoms reported as sudden, Onset was 2 months ago ,
Complaint is intermittent.
QUALITY (22:37 DMA): tightness.
ASSOCIATED WITH (22:37 DMA): CHF Symptoms: Peripheral edema, Peripheral edema.
SEVERITY (22:37 DMA): Maximum severity is mild, Currently symptoms are mild.
EXACERBATED BY (22:37 DMA): Patient's condition exacerbated by bus exhaust.
RELIEVED BY (22:37 DMA): Patient's condition relieved by nothing.
NOTES (22:38 DMA): pt c/o intermitten chest tightness, lightheadedness, wheezing, and ankle
swelling while at work. Resolves after leaving work. Works as a bus cleaning and is around bus
exhaust all day and on her feet. No fevers, URI sx, SOB, CP.

**HISTORY**
MEDICAL HISTORY (21:53 DEA): History of cardiac disease, including cardiomyopathy.
IRON DEFECIENCY
ANEMIA. .
PSYCHIATRIC HISTORY (21:53 DEA): No previous psychiatric history. .
SURGICAL HISTORY (21:53 DEA): History of laparotomy.
SOCIAL HISTORY (21:53 DEA): Denies alcohol abuse, Denies tobacco abuse, Denies drug abuse. .
FAMILY HISTORY (21:53 DEA): Family history is not contributory to this case.
MEDICATION (21:53 DEA): Medication Prenatal was removed.
MEDICAL HISTORY (22:40 DMA): History of pulmonary disease, including pulmonary hypertension,
anemia.
PSYCHIATRIC HISTORY (22:40 DMA): No previous psychiatric history.
SURGICAL HISTORY (22:40 DMA): Patient has had no previous surgical history.
SOCIAL HISTORY (22:40 DMA): Denies alcohol abuse, Denies tobacco abuse, Denies drug abuse,
Patient consumes alcohol socially.
FAMILY HISTORY (22:40 DMA): Family history includes coronary artery disease, Family history
includes hypertension, sister IM at age 45.
NOTES (22:40 DMA): Nursing records reviewed, Agree with nursing records.

**ROS (Dec 22 2005 22:39 DMA)**
CONSTITUTIONAL: No fever, No chills, No fatigue, No weakness.
EYES: Negative eye review of systems.

EXCERPT FROM PLAINTIFF'S EXHIBIT #5

# M E M O R A N D U M



SUBJECT: Medical Evaluation                    DATE: September 6, 2006
         **Donna Alston, #001102**

    FROM: HRMS/MSBR - Gina C. Pervall-Walker, M.D.

    TO: CIVR - Teresa R. Bailey

On February 17, 2006, Ms. Alston was referred to WMATA's Medical Office by Supt. William Brown for evaluation as a result of a doctor's statement she submitted to him on or around February 14, 2006. This statement, dated February 3, 2006, advised that Ms. Alston "avoid chemicals and fumes as these are likely the cause of many of the symptoms that required admission." During this evaluation, Ms. Alston was contradictory in reference to use of a mask while on duty. She initially stated that she did not use a mask and later stated that the mask did not relieve her symptoms. At that time, due to health/safety concerns, Ms. Alston was held off by Medical pending further evaluation.

In an effort to clarify Ms. Alston's medical condition and determine if she required personal protective equipment, Ms. Alston was requested to provide medical records and a detailed statement was requested from Ms. Alston's treating Pulmonologist. This information showed that Ms. Alston's pulmonary evaluation was incomplete. On March 13, 2006, I made her aware that she needed to complete the testing as recommended by her treating physician and provide results to WMATA's Medical Office. On April 19, 2006, Ms. Alston was made aware that she still had not provided results of a complete evaluation as previously requested. On April 20, 2006, Ms. Alston submitted medical records which had previously been received, but did not provide results of testing that had been recommended in February 2006. She was again requested to provide these results. On April 25, 2006, Ms. Alston admitted to being noncompliant with her medical evaluation. Therefore effective April 25, 2006, based upon available information, she was medically disqualified and referred for alternate job placement.

cc:    FILE

EXHIBIT #26

Washington
Metropolitan Area
Transit Authority

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DONNA J. ALSTON,                         )
                                         )
        Plaintiff,                   )
                                         )
     v.                            )          CA 07-0122 (ESH)
                                         )
WASHINGTON METROPOLITAN AREA             )
TRANSIT AUTHORITY,                       )
                                         )
        Defendant.                   )

## WMATA'S STATEMENT OF GENUINE ISSUES IN DISPUTE
## AS TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

WMATA notes that Plaintiff, in violation of L.Cv.R. 56.1, has failed to provide any references to the record in support of her Statement of Material Facts Not in Dispute.  Given Plaintiff's failure to demonstrate any support in the record at this time for her "facts", the Court should not consider them when considering the Cross-Motions For Summary Judgment.  Assuming a response is deemed necessary, WMATA submits this brief statement with the paragraph numbers corresponding to Plaintiff's statement.

1.     Plaintiff has not been an employee of WMATA since August 16, 1999, but has been an employee since June 26, 2000. (Defendant's Exhibit # 3).

3.     Defendant has no documentation that Plaintiff was "exposed to toxic bus fumes over many years."

4.     Plaintiff's Exhibit #4, Report of Periodic Medical Examination/Return to Duty Evaluation dated May 14, 2005, indicates no problems such as asthma, bronchitis, emphysema, and no allergies.  Plaintiff's Exhibit #5, Medical Record dated December

23, 2005, indicates that the onset of Plaintiff's symptoms of shortness of breath was "sudden" and first occurred two weeks prior. (Plaintiff's Exhibit #4 and #5, excerpts attached hereto).

5.    WMATA has no documentation of a request by Plaintiff for a transfer to a vacant position for which she was qualified as an accommodation in April 2005.

6.    After treatment in the Emergency Room of the George Washington University Emergency Room on December 22, 2005, Ms. Alston was cleared to return to "regular work" beginning on December 30, 2005.  On February 6, 2006, WMATA's Medical Office received a note from the Washington Hospital Center holding Ms. Alston off work from February 3, 2006 to February 10, 2006 and permitting her to return to work on February 14, 2006. (Defendant's Exhibit #25)

7.    WMATA has no documentation of a request by Plaintiff for a transfer to a vacant position for which she was qualified as an accommodation in January, 2006.

9-10. WMATA disputes that Plaintiff was qualified for either the Job Access Information Assistant position or the Receptionist position.

11.    WMATA posted the receptionist position as vacant on two separate occasions: 2006 and 2007.  Ms. Alston failed to apply on either occasion. (Deposition of Steven Godbey, WMATA Corporate Designee at pages 32-33)    Ms. Alston has never addressed the posting in 2006 and has not provided any explanation for why she never applied for the position at that time.  WMATA disputes that Ms. Alston was qualified for the position.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY**

/s/_____
Kathleen A. Carey # 357990
Assistant General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1496
Kcarey@wmata.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Genuine Issues in

Dispute As to Plaintiff's Cross-Motion for Summary Judgment  was sent by email to

CORLISSV @ ATT this 8th day of July, 2008 to:

Bruce M. Bender
Van Grack, Axelson, Williamowsky,
Bender & Fishman, P.C.
4 01 N. Washington Street
Suite 550
Rockville, MD 20850

Leizer Goldsmith
The Goldsmith Law Firm, LLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20004-1109

_____          ____/s/_____
                                       Kathleen A. Carey

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONNA J. ALSTON,                           )
                                           )
                Plaintiff,                 )
                                           )
        v.                                 )        CA 07-0122 (ESH)
                                           )
WASHINGTON METROPOLITAN AREA               )
TRANSIT AUTHORITY,                         )
                                           )
                Defendant.                 )

## SECOND AFFIDAVIT OF ROSLYN RIKARD

1. I am employed by the Washington Metropolitan Area Transit Authority and have been so employed since 1979, initially as a contract worker and since 1984 as a WMATA employee.

2. Since 1984, I have been employed in the field of human resources at WMATA.

3. From 1984 through 1992, I was employed as a Personnel Assistant and a Personnel Generalist. In each position I evaluated candidates for vacant positions and made hiring recommendations to the Assistant General Manager of WMATA. During my tenure, I was personally responsible for the hiring recommendations for Local 689 vacancies, Authority-wide, and for the hiring recommendations for the Rail Division at WMATA. In 1992 I became a program specialist, still with WMATA.

4. I am familiar with, and personally knowledgeable of, the policies of WMATA regarding hiring of persons for vacant positions.

5. It is the general policy of WMATA to hire the most qualified individual

applicants for vacant positions (including the two positions at issue in this case) consistent with the requirements of applicable law and in accordance with the terms of applicable Collective Bargaining Agreements.

6. I am currently in the position of Employment Program Specialist in Workforce Services. At all relevant times, including the period in which Ms. Alston has been on the Section 124 list of Local 689 employees determined to be medically ineligible for their previous job positions, I have been responsible for compliance with the rights and benefits available to these employees. At any given time in recent years, there have been approximately 100 employees on the Section124 list. Of these 100 employees, approximately 60 are on the list as a result of non-work related injuries or illnesses, and approximately 40 are on the list as a result of work related injuries or illnesses.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JULY 8, 2008.

Roslyn Rikard
Roslyn Rikard
Employment Program Specialist
WMATA