**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DONNA J. ALSTON                    :

        *Plaintiff*            :

v.                                 :        Civil No. 07-00122 (ESH)

WASHINGTON METROPOLITAN            :
AREA TRANSIT AUTHORITY
                                   :
        Defendant

**PLAINTIFF'S REPLY BRIEF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

## I.    ARGUMENT

Defendant filed an Opposition to Plaintiff's Motion for Cross Summary Judgment arguing that the D.C. Circuit's decision in Aka v. Washington Hospital Center, 156 F. 3d 1284 (D.C.Cir.1998) (en banc) does not support Plaintiff's position herein. This is simply incorrect as will be discussed at length below.  Further, Defendant argues that the U.S. Supreme Court's decision in U.S. Airways v. Barnett, 535 U.S. 391 (2002) supports its position in this case. This is factually incorrect because the two jobs that Plaintiff sought reassignment to that are at issue were not ultimately provided to a candidate who had priority under union seniority rules. In fact Barnett supports Plaintiff's claim herein because the decision unequivocally notes that the ADA does allow preferences in the context of a reassignment as a reasonable accommodation.

Finally, Plaintiff contends that a 2007 Supreme Court decision is controlling in this court, Long Island Care at Home Ltd. V. Coke, 127 S. Ct. 2518 (2007) because it held that an agency's interpretation of its regulations must be given "controlling" weight. Here, the EEOC has issued interpretative guidelines and enforcement guidance that if a

disabled person seeks reassignment and is qualified for a job, they must be given the reassignment, despite the fact that there is a better qualified applicant. This Court must follow the interpretation of the EEOC and give it controlling weight; if so, Plaintiff's motion must be granted irrespective of the <u>Aka</u> decision.

> **A.     Aka  Entirely Support Plaintiff's Position**

Defendant first argues that "Plaintiff's argument misconstrues <u>Aka v. Washington Hospital Center</u>, 156 F.3d 1284 (D.C. Cir. 1998) (<u>en banc</u>), particularly in light of the Supreme Court's subsequent decision in <u>U.S. Airways, Inc., v. Barnett</u>, 535 U.S. 391 (2002)." (Def.'s Mem. At 3-5).  Defendant's argument is incorrect as a matter of law on both points. First Defendant gives short shrift to <u>Aka</u> by ignoring the entire logic and language of the <u>Aka</u> decision which does mandate that an employee be transferred to a vacant position without competition if the employee is disabled as long as there is a showing that vacant positions exist and there is no undue hardship on the employer.

The <u>Aka</u> majority states specifically that:

> "To begin with, the statutory text, the word 'reassign' must mean more than allowing an employee to apply for a job on the same basis as anyone else...Indeed, the ADA's reference to reassignment would be redundant if permission to apply were all it meant..." <u>Id</u>. at 1304.

The Court concluded that it could not "decide the precise contours of an employer's reassignment obligation" because there was no briefing on the issue. However, the <u>Aka</u> majority made it clear that it strongly rejected the dissenting opinion's interpretation of the ADA which was that the reassignment provision only allowed disabled employees to compete with all other applicants.

The Court stated:

> "To adopt the dissenters' interpretation of the reassignment provision as mandating nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates, however, would render that provision a nullity." Id. at 1305.

The dissenting opinion's interpretation in Aka of the ADA reassignment provision is exactly the interpretation that the Defendant WMATA seeks this Court to adopt and which has been rejected by the Aka  majority.

The Defendant latches onto the last sentence of Aka that the case was reversed and remanded for the district court to determine, "through summary judgment or trial" whether the employer "had an obligation under the ADA to reassign Aka to a vacant position." to argue that Plaintiff's position is not consistent with the holding in Aka.  Id. at 1306. Defendant's argument is entirely incorrect.  A remand was the result of Aka but the only reason the Court remanded the case on this issue was because the court made it clear there was no evidence taken or briefing on this issue of "reassignment to a vacant position."  Id. at 1305.  The Court stated that on remand the District Court t had to be provided information such as "whether a vacant position for which Aka was qualified was available, and whether reassigning Aka would have been an undue hardship." Id. at 1306. Further, the District Court had to determine whether a certain portion of the collective bargaining agreement at issue "permitted WHC to perform this reassignment." Id.

These were the only factors that were necessary to be determined on remand; in the present case, all factors have been briefed and  militate a finding in favor of the Plaintiff. First as noted in Plaintiff's initial brief herein there were two vacant jobs

-3-

available – the Job Access Information Assistant and Receptionist positions. Second

there has been no assertion by WMATA that undue hardship would have existed if Ms.

Alston was transferred to either of these positions. Finally, there has been no assertion

that the collective bargaining agreement in this case did not permit such a reassignment

because it obviously does.  Given that these facts have all been briefed and answered

in this case in favor of the Plaintiff and the unequivocal language of the D.C. Circuit

majority in Aka, this Court must find that the Defendant violated the Rehabilitation Act

by failing to reassign Ms. Alston to one of the two vacant positions at issue per the

mandate of Aka.

### B.    The Tenth Circuit In Midland Brake Also Supports Plaintiff's Position

Similarly, the Tenth Circuit in Smith v. Midland Brake, Inc., 180 F. 3d 1154 (10th

Cir. 1999) (en banc) reached the same conclusion as the en banc court in Aka.

Although Midland Brake was cited by Plaintiff in her initial brief, Defendant WMATA has

ignored it entirely.  The Tenth Circuit, as did the D.C. Circuit in Aka, specifically rejected

the argument

> "that the reassignment duty imposed by the ADA is no more
> than a duty merely to consider without discrimination a
> disabled employee's request for reassignment along with all
> other application the employer may receive from other
> employees or job applicants for a vacant position."

Id. at 1164. (See Ex. 1, Petition for Writ of Certiorari in Huber, supra at 11-12 ).

The Tenth Circuit noted that said argument "does violence to the literal meaning

of the word reassignment" and "would render the reassignment language in 42 U.S.C.

§12111(9) a nullity." Id.

The Tenth Circuit held that "the reassignment obligation must mean something

more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position." Id. at 1165. The Tenth Circuit agreed with the EEOC's interpretation of its own regulations that "reassignment means that the employee gets the vacant position if s/he is qualified for it. Otherwise reassignment would be of little value and would not be implemented as Congress intended." Id. at 1166-67 (internal quotation marks omitted)(emphasis added)

C.    **Plaintiff's Interpretation of <u>Aka</u> Was Recognized By the United States Supreme Court When It Granted A Petition for Writ of Certiorari In <u>Huber v. Wal- Mart Stores</u>**

In fact, the United States Supreme Court recognized that <u>Aka</u> requires an employee to be reassigned to a vacant position without competition because it was one of the two principal cases relied upon when it granted a writ of certiorari in <u>Huber v. Wal-Mart Stores</u>, 486 F. 3d 480 (8th Cir. 2007), <u>cert</u>. <u>granted</u> <u>in</u> <u>part</u>, 128 S. Ct. 742 (2007).

The Supreme Court granted certiorari in <u>Huber</u> on the following issue:

"1) If a disability prevents an employee from performing the essential functions of his or her current position, does the ADA require:
        (A) that the employer reassign the employee to a vacant, equivalent position for which he or she is qualified, as the Tenth and District of Columbia Circuits have held; or
        (B) that the employer merely permit the employee to apply and compete with other applicants for the vacant, equivalent position for which he or she is qualified, as the Seventh and Eighth Circuits have held?" (See Petition for a Writ of Certiorari in <u>Huber v. Wal-Mart Stores</u>, Ex. 1 and discussion of <u>Aka</u> at pp. 10-12 therein).

After the Petition was granted, the parties reached a settlement and there was no decision on this issue. However, the petition illustrates that <u>Aka</u> was principally relied upon to show that there is a split in the Circuits on this issue. (Ex. 1)  The Tenth and

D.C. Circuits have held that reassignment is required to a disabled employee if they are qualified for a job, even if there is a better qualified candidate, whereas the Seventh and Eighth Circuits have held to the contrary.

**D.     The Supreme Court's Decision in U.S. Airways v. Barnett Does Not Support WMATA In this Case But Supports Plaintiff's Position**

Defendant argues that somehow the Supreme Court decision of U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002) supports its position. Said assertion also is incorrect. The Supreme Court in Barnett, supra, only held that if a requested accommodation of transferring a disabled employee to a vacant position conflicts with union seniority rules, then the requested accommodation of the job transfer is generally not reasonable unless the employee shows other circumstances that make the job transfer reasonable.  Id. at 406.

However, in the present case the two employees who were selected for the jobs that Ms. Alston asserts she was not transferred to had no union seniority over Ms. Alston. Union seniority rules played no part in the hiring of the two people for the jobs in question. Therefore, Barnett, lends no support to WMATA's position in this case.

In fact, Barnett supports Plaintiff's position herein because US Airways in Barnett argued that preferences should play no part in the ADA. However, the Supreme Court totally rejected this argument and observed that

> "While linguistically logical, this argument fails to recognize what the Act specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of 'reasonable accommodation' that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy. By definition any special 'accommodation' requires the employer to treat

-6-

an employee with a disability differently, <u>i.e. preferentially</u>. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach. Were that not so, the 'reasonable accommodation' provision could not accomplish its intended objective..."   <u>Id</u>. at 397.

The Court concludes on this issue that

"The simple fact that an accommodation would provide a 'preference' in the sense that it would permit the worker with a disability to violate a rule that others must obey - cannot, in and of itself, automatically show that the accommodation is not 'reasonable.' As a result, we reject the position taken by U.S. Airways, and Justice Scalia to the contrary."   <u>Id</u>. at 398.

In the case <u>sub judice</u>, WMATA claims that it has a workplace rule that "the best qualified candidate" must be given the job and that if Plaintiff was reassigned to the jobs in question she would be given a preference in conflict with this rule. However, the Supreme Court expressly rejected this argument by stating that sometimes reasonable accommodations required under the ADA do violate workplace neutral rules but this does not make the accommodation unreasonable. [1]

As noted under the D.C. Circuit's interpretation of the reassignment provision, the disabled individual is given a preference for the job over non-disabled individuals who apply for it. This is consistent with the Supreme Court's analysis in <u>Barnett</u>.

**E.    Plaintiff's Position As Set Forth In Aka and Midland Brake Is Consistent With The EEOC's Interpretation of Its Regulations Which Must Be Given Controlling Weight Under Supreme Court Precedent**

---

[1] Defendant relies heavily on the Seventh Circuit's decision in <u>EEOC v. Humiston-Keeling, Inc.</u>, 227 F. 3d 1024 (7th Cir. 2000) to support it's position. However, this decision is inconsistent with Barnett because it is premised on the holding that disabled employees should not be given preferences, which was specifically rejected by the U.S. Supreme Court.

The Petitioner in <u>Huber</u>, <u>supra</u>, aptly set forth the EEOC position in the interpretation of its regulations on this subject.

> "The Equal Employment Opportunity Commission has interpreted its regulations on the issue of reassignment of disabled individuals to require that all employee with disabilities must be reassigned as long as they are "qualified" for the vacant position: "Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time."

29 C.F.R. Part 1630. App. §1630.2(o).

The Commission stresses that the reassignment requirement

> "means that the employee gets the vacant position if s/he is qualified for it. Otherwise reassignment would be of little value and would not be implemented as Congress intended." Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act, EEOC Enforcement Guidance No. 915.002 (Oct. 17, 2002). The Commission rejected the suggestion that the reassignment duty requires only 'that the employee be permitted to compete for a vacant position.' Id. Instead , it has specifically declared that '[t]he employee does not need to be the best qualified individual for the position in order to obtain it as a reassignment."

(See Petition for Writ of Certiorari in <u>Huber</u>, <u>supra</u> at 21)

The Supreme Court in <u>Long Island Care at Home, Ltd. v. Coke</u>, 127 S. Ct. 2339 (2007), held that "controlling" weight is given to an agency's interpretation of its own regulations, (i.e. an advisory memorandum written to interpret a certain regulation that was in litigation at the Department of Labor).

In the present case, the above cited EEOC agency interpretation was first developed as interpretive guidelines in an appendix to the EEOC regulations in 1991. See 29 C.F.R. Part §1630.2(o). The agency interpretive guidelines were further

developed as enforcement guidance. See Reasonable Accommodation and Undue Hardship, supra.

Long Island Care is controlling in this case and requires this Court to interpret the ADA and Rehab Act per the EEOC's interpretation of its guidelines. If there is any question about the precise holding in Aka, Long Island Care disposes of the issue because the interpretation of the EEOC regulations could not be any clearer – Ms. Alston was entitled to the job reassignment because she was "qualified" for them and as a disabled individual was entitled to a preference over better qualified candidates.

**F.    Plaintiff Was Qualified For the Job Access Information Assistant Position**

WMATA attempts to argue that Plaintiff was not qualified for this position. This is a ridiculous assertion because its own corporate representative, Mr. Godbey admitted in his deposition that Plaintiff met the minimum qualifications for this job. (Godbey dep. Ex. 16, p. 24).

WMATA's only other argument is that Plaintiff has admitted that a more qualified individual was selected for this job. WMATA has missed the point entirely because the ADA and Rehab Act require that Plaintiff be given a preference for this job as long as she is "qualified" for the job, despite the fact there may be a more qualified applicant.[2] (See discussion, infra at pp. 1-8)

---

[2] Defendant's citation of Terrell v. USAIR, Inc., 132 F. 3d 621, 627 (11th Cir. 1998) and Daugherty v. City of El Pas, 56 F. 3d 695, 700 (5th Cir. 1995) for the proposition that preferential treatment is not required under the ADA is in direct conflict with the Supreme Court's holding in Barnett, supra, as set forth above.

-9-

### G.    Plaintiff Was Qualified For the Receptionist Position

Defendant argues that Plaintiff was not qualified for this position either because she did not have two years of experience as a receptionist. However, Plaintiff's expert Lee Mintz reviewed the job descriptions and issued a report that in fact Plaintiff was qualified for this position. (Ex. 14, Mintz addendum report)   In fact, Plaintiff has signed a Supplemental Affidavit, (Ex. 2), that she had six years of experience performing receptionist functions.  Defendant has submitted no record evidence to support its bold allegation by counsel.  Therefore, since the only evidence of record is that Plaintiff was qualified for this position, Defendant's argument must be rejected.

Defendant argues also that Plaintiff could have known about this job vacancy in May 2007 even if she was not sent the vacancy announcement because she had access to the job vacancy on WMATA's computer system.

WMATA's assertion in this regard is incorrect. Ms. Alston in her supplementary affidavit makes it abundantly clear that she did not have any way to find out about the receptionist position that was advertised in May 2007. (Ex. 2)  She was not sent the vacancy announcements by WMATA. Nonetheless, she made an effort to find out about vacancies in this time period. She went down to the WMATA offices to try to access all vacancy announcements on the WMATA computer. The clerk told her that the computer was broken in this time period of May 2007 and for several months thereafter. (Ex. 2)

Thereafter, Ms. Alston asked the clerk to identify all jobs that were available that she was qualified for and were within her work restrictions and she was not told about the receptionist position. In sum, Ms. Alston did everything possible to find out about this vacancy but was not told of its existence by written vacancy announcement or in

person and, could not access the computer system at WMATA.  As Judge Wald aptly stated in <u>Aka</u>, Ms. Alston was not required to hire a private detective to find out about this vacancy. Therefore, Ms. Alston's lack of an application for this position should not defeat her claim regarding this position as it was a vacant position that existed at the time and she was qualified for it.

Alternatively, these are disputed issues of material fact as to whether Plaintiff was qualified for this position and whether she should have applied for this position. WMATA's motion must be denied on this particular job because of these disputed facts.

## II.    CONCLUSION

For all of the above reasons, Plaintiff requests that this Court grant summary judgment as to liability for the failure of the Defendant to reassign Ms. Alston to one of the two vacant positions in issue. Further, Plaintiff requests that this Court enter injunctive relief and order the Defendant to transfer Plaintiff to one of these two vacant positions. Plaintiff also requests a hearing on damages in this case. Finally, Plaintiff requests that Defendant's Motion for Summary Judgment be denied as a matter of law. In the alternative, Plaintiff contends that Defendant's motion for summary judgment be denied as there are disputed issues of fact.

Respectfully submitted,

**AXELSON, WILLIAMOWSKY,**              **THE GOLDSMITH LAW FIRM, LLC**
**BENDER & FISHMAN, P.C.**


/S/_____            /S/_____
Bruce M. Bender, Bar # 381319         Leizer Goldsmith, Bar # 419544
401 N. Washington St., Suite 550      5335 Wisconsin Avenue, NW, #440
Rockville, MD 20850                   Washington, D.C. 20015
(301) 738-7660                        (202) 895-1506
Attorneys for Plaintiff               Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July 2008, a copy of the foregoing was mailed, postage prepaid to:

Kathleen A. Carey, Esq.
Assistant General Counsel
Washington Metropolitan Area Transit Authority
600 Fifth Street, N.W.
Washington, D.C. 20001


/S/_____
Bruce M. Bender

Supreme Court, U.S.
F I L E D

No. 0 7 - 4 8 0 OCT 0 4 2007

OFFICE OF THE CLERK

In The

# Supreme Court of the United States

◆

PAM HUBER,

*Petitioner,*

v.

WAL-MART STORES, INC.,

*Respondent.*

◆

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Eighth Circuit**

◆

**PETITION FOR A WRIT OF CERTIORARI**

◆

C. Brian Meadors
*Counsel of Record*
Rebekah J. Kennedy
Pryor, Robertson, Beasley,
    Smith & Karber, PLLC
315 North 7th Street
P. O. Drawer 848
Fort Smith, AR 72902-0848
(479) 782-8813

Eric Schnapper
Univ. of Washington
    School of Law
William H. Gates Hall,
    Box 353020
Seattle, WA 98195-3020
(206) 616-3167

Samuel R. Bagenstos
Appellate Litigation Clinic
Washington University Law
1 Brookings Drive, Box 1120
Saint Louis, MO 63130-4899
(314) 935-9097

COCKLE LAW BRIEF PRINTING CO. (800) 225-6964
OR CALL COLLECT (402) 342-2831

PLAINTIFF'S
EXHIBIT
1

i

## QUESTIONS PRESENTED

Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* (ADA), requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The statute expressly lists "reassignment to a vacant position" as a "reasonable accommodation." *Id.* § 12111(9)(B). The Equal Employment Opportunity Commission (EEOC) has issued regulations implementing that definition, 29 C.F.R. § 1630.2(o)(2)(ii), and it has interpreted those regulations to provide that "[t]he employee does not need to be the best qualified individual for the position in order to obtain it as a reassignment." The questions presented are:

1. If a disability prevents an employee from performing the essential functions of his or her current position, does the ADA require:

   (a) that the employer reassign the employee to a vacant, equivalent position for which he or she is qualified, as the Tenth and District of Columbia Circuits have held; or

   (b) that the employer merely permit the employee to apply and compete with other applicants for the vacant, equivalent position for which he or she is qualified, as the Seventh and Eighth Circuits have held?

ii

**QUESTIONS PRESENTED** – Continued

2.   Is the EEOC's interpretation of its regulation entitled to deference under *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339 (2007) – a case decided twelve days after the Eighth Circuit rendered its decision in this case?

iii

## PARTIES TO THE PROCEEDING

Petitioner Pam Huber and Respondent Wal-Mart Stores, Inc., were the only parties to the proceeding in the United States Court of Appeals for the Eighth Circuit. The United States Equal Employment Opportunity Commission participated as an amicus below, as did the Chamber of Commerce of the United States and the Equal Employment Advisory Council.

iv

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................... i

PARTIES TO THE PROCEEDING ........................ iii

TABLE OF AUTHORITIES .................................... vi

OPINIONS BELOW ............................................... 1

JURISDICTION ..................................................... 1

STATUTORY AND REGULATORY PROVISIONS
    INVOLVED .......................................................... 2

STATEMENT OF THE CASE ................................ 2

REASONS FOR GRANTING THE WRIT.............. 9

    I.  The Eighth Circuit Incorrectly Decided an
    Important Question of Law on Which the
    Circuits are in Conflict................................ 10

        A.  There is a Longstanding Conflict in the
        Circuits Regarding the Interpretation
        of the ADA's Requirement of "Reas-
        signment" as a Reasonable Accommo-
        dation...................................................... 10

        B.  The Eighth Circuit's Decision Conflicts
        with the ADA's Plain Text, This Court's
        Decision in *Barnett*, and the EEOC's
        Directives ............................................... 16

    II.  This Court's Decision in *Long Island Care*,
    Issued Twelve Days After the Eighth Cir-
    cuit's Ruling, is an Intervening Develop-
    ment That May Determine the Outcome of
    this Litigation............................................... 23

CONCLUSION....................................................... 25

v

## TABLE OF CONTENTS – Continued

| | Page |
|---|---|
| APPENDIX A, Eighth Circuit's Opinion | App. 01 |
| APPENDIX B, District Court's Opinion | App. 10 |
| APPENDIX C, Order Denying Rehearing En Banc | App. 27 |
| APPENDIX D, Statutory and Regulatory Materials | App. 29 |
| APPENDIX E, Stipulations | App. 50 |

vi

## TABLE OF AUTHORITIES

Page

CASES

*Aka v. Washington Hosp. Center*, 156 F.3d 1284
(D.C. Cir. 1998) (*en banc*) ............................... *passim*

*Board of Trustees v. Garrett*, 531 U.S. 356
(2001) .................................................................... 17

*Bragdon v. Abbott*, 524 U.S. 624 (1998) .............. 20, 22

*Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th
Cir. 1999)............................................................... 15

*Carter v. Tisch*, 822 F.2d 465 (4th Cir. 1987)............. 19

*Carty v. Carlin*, 623 F. Supp. 1181 (D. Md. 1985) ......... 19

*Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73
(2002) .................................................................... 21

*Dark v. Curry County*, 451 F.3d 1078 (9th Cir.
2006), cert. denied, 127 S. Ct. 1252 (2007)............ 15

*EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024
(7th Cir. 2000)................................................. *passim*

*Gile v. United Airlines, Inc.*, 95 F.3d 492 (7th
Cir. 1996)............................................................... 19

*Griffin v. Defense Mapping Agency*, 864 F.2d
1579 (Fed. Cir. 1989) ............................................ 19

*Guillot v. Garrett*, 970 F.2d 1320 (4th Cir. 1992) ...... 20

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561
(1995) .................................................................... 17

*Jackan v. New York State Dep't of Labor*, 205
F.3d 562 (2nd Cir.), cert. denied, 531 U.S. 931
(2000) .................................................................... 14

vii

TABLE OF AUTHORITIES – Continued

Page

*Lawrence v. Chater*, 516 U.S. 163 (1996) ................. 24

*Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339 (2007) ........................................... *passim*

*Mengine v. Runyon*, 114 F.3d 415 (3rd Cir. 1997)....................................................................... 14

*National Assn. of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518 (2007).......................... 16

*Shapiro v. Township of Lakewood*, 292 F.3d 356 (3d Cir. 2002) ......................................................... 14

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) *(en banc)*.............................. *passim*

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) ................................................................ *passim*


STATUTORY AND REGULATORY MATERIALS

28 U.S.C. § 1254(1)....................................................... 1

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*:

§ 12101(b)(1) ........................................................... 15

§ 12102(A) ................................................................. 6

§ 12111(8) .................................................................. 2

§ 12111(9) ........................................................... 12, 16

§ 12111(9)(B) ................................................... *passim*

§ 12112(a)................................................................... 2

§ 12112(b)(5)(A)..................................................... i, 2

viii

TABLE OF AUTHORITIES – Continued

Page

§ 12116 ................................................................ 2, 20

§ 12201(a) ................................................................ 20

Section 504 of the Rehabilitation Act of 1973,
  29 U.S.C. § 794:

§ 794(d) ................................................................ 15

29 C.F.R., Part 1630:

§ 1630.2(o)(2)(ii) ................................................ i, 2, 21

§ 1630.9 ................................................................ 21

App. § 1630.2(o) .......................................... 3, 21, 23

*Reasonable Accommodation and Undue Hard-
  ship Under the Americans with Disabilities
  Act*, EEOC Enforcement Guidance No. 915.002
  (Oct. 17, 2002) ........................................ 3, 21, 22, 24

1

## PETITION FOR A WRIT OF CERTIORARI

Pam Huber respectfully petitions for a writ of certiorari to the United States Court of Appeals for the Eighth Circuit in the above-entitled case.

———————◆———————

## OPINIONS BELOW

The panel opinion of the United States Court of Appeals for the Eighth Circuit (App., *infra*, at 1-9) is reported at 486 F.3d 480. The Eighth Circuit's order denying rehearing and rehearing *en banc*, with an accompanying dissent (App., *infra*, at 27-28), is reported at 493 F.3d 1002. The opinion of the district court (App., *infra*, at 10-26) is unreported.

———————◆———————

## JURISDICTION

The court of appeals entered its judgment on May 30, 2007, and it denied a petition for rehearing and rehearing *en banc* on July 18, 2007. App., *infra*, at 1, 27. This petition is filed within 90 days of the latter date. This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

———————◆———————

2

## STATUTORY AND REGULATORY
## PROVISIONS INVOLVED

Relevant provisions of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and implementing regulations are set forth at App., *infra*, at 29-49.

———————◆———————

## STATEMENT OF THE CASE

1. The Americans with Disabilities Act (ADA) prohibits employers from "discriminat[ing] against a qualified individual with a disability." 42 U.S.C. § 12112(a). The statute defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). It defines "discriminat[ion]" to include the failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). And it explicitly lists "reassignment to a vacant position" among the "reasonable accommodation[s]" that employers must provide. *Id.* § 12111(9)(B).

The Equal Employment Opportunity Commission (EEOC) has statutory authority to promulgate regulations implementing these provisions, 42 U.S.C. § 12116, and it has done so. See 29 C.F.R. § 1630.2(o)(2)(ii) ("reasonable accommodation" includes "reassignment

3

to a vacant position"). In the interpretive guidance issued at the same time as its final regulations, the EEOC explained that "[e]mployers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time." 29 C.F.R. Pt. 1630, App. § 1630.2(o). Elaborating on its interpretation of its regulations, the agency has stated that an employee with a disability need only be "'qualified' for the new position," and that "[t]he employee does not need to be the best qualified individual for the position in order to obtain it as a reassignment." *Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Enforcement Guidance No. 915.002 (Oct. 17, 2002).

2. This case arises from the district court's grant of summary judgment in favor of Petitioner Pam Huber on a set of facts to which both parties stipulated. App., *infra*, at 26.

Before she acquired her disability, Huber worked for Respondent Wal-Mart as an Order Filler in Respondent's Clarksville, Arkansas, distribution center; the job paid $13.00 per hour. *Id.* at 51. But Huber injured her right arm and hand in an accident. *Id.* The parties agree that the injury "substantially limits one or more of her major life activities," and that she therefore "has a 'disability' as defined in the Americans with Disabilities Act." *Id.*; see 42 U.S.C. § 12102(A) (defining "disability" under the ADA).

4

Huber's disability prevented her from performing her job as an Order Filler, even with reasonable accommodations in that position. App., *infra*, at 51. Therefore, Huber requested that Wal-Mart accommodate her by allowing her to continue to work at the company and reassigning her "to a vacant, equivalent position." *Id.* Such a position did, in fact, exist at the facility where she worked: "an open Router position," which paid $12.50 per hour. *Id.* at 25, 51. The parties stipulated that the Router job was "a vacant, equivalent position." *Id.* at 51. The parties also stipulated that Huber "met the qualifications of the Router position" – that is, she "could have performed the essential functions of the Router position with or without reasonable accommodation." *Id.* at 52; see 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" under the ADA).

But Wal-Mart did not transfer Huber into the Router job. App., *infra*, at 51-52. Although Huber was concededly qualified for the position, the company required her to compete for it like any other applicant. *Id.* Wal-Mart ultimately "gave the job to a non-disabled employee," because it "did not consider [Huber] the *most* qualified candidate." *Id.* (emphasis added). Wal-Mart assigned Huber to a position at another facility as a Maintenance Associate, a janitorial position that paid $6.20 per hour – less than half of what she had been making as an Order Filler. *Id.* at 3, 52. No party contends that the Maintenance Associate job is "equivalent" to the Order Filler job. *Id.* at 25 (stating that the Router job "was equivalent

5

to the Plaintiff's position," but that "Plaintiff's transfer to the Maintenance Associate position amounted to a demotion").

3. On June 15, 2004, Huber filed this lawsuit in the United States District Court for the Western District of Arkansas. She claimed that Wal-Mart's refusal to transfer her to the vacant, equivalent Router position violated the ADA. App., *infra*, at 10. The parties stipulated that:

> [T]he only issue before the Court is whether an employer must, as a reasonable accommodation under the ADA, reassign a disabled employee to a vacant, equivalent position if she is qualified for the position, or whether the employer may follow its policy of hiring the most qualified person for the job, thereby requiring the disabled employee to compete for the position.

*Id.* at 50. The parties then filed cross-motions for summary judgment. *Id.* at 10-11.

The district court granted summary judgment to Huber. *Id.* at 26. The court noted that "there is a circuit split" on the dispositive question. *Id.* at 15. In particular, "[t]he Tenth Circuit Court and D.C. Circuit Court espouse the view that forcing a qualified, disabled employee to compete with others in order to be provided a reassignment as a reasonable accommodation for his disability violates the ADA." *Id.* (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (*en banc*); and *Aka v. Washington*

6

*Hosp. Center*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*)). The "other view," the court noted, could be found in the Seventh Circuit's decision in *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir. 2000). App., *infra*, at 15-16. The district court concluded that the Tenth and District of Columbia Circuits were correct as a matter of statutory text, congressional intent, and the precedent of this Court. *Id.* at 20-24.

As to statutory text, the district court noted that the statute lists "reassignment to a vacant position" as the relevant accommodation, 42 U.S.C. § 12111(9)(B) – language that suggests a more active role for the employer than merely considering the employee for reassignment. App., *infra*, at 22. The district court also observed that the reassignment language would be "meaningless" under Wal-Mart's interpretation: If an employer need only consider an employee with a disability for reassignment and apply the same standards it applies to other applicants for the new position, the reassignment language adds nothing to the ADA's general prohibition on discrimination. *Id.* at 21. Wal-Mart had argued that doing anything more than considering the disabled employee under the same standards would impermissibly amount to providing that employee a "preference." *Id.* at 20. But the district court noted that this Court had rejected that "identical argument" in *US Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002), which observed that "[b]y definition, any special 'accommodation' requires the employee to

7

treat an employee with a disability differently, *i.e.*, preferentially." App., *infra*, at 20.

Because Huber was concededly "qualified" for the Router position, the district court held that Wal-Mart could not require her to compete with all other applicants for the same position. *Id.* at 24. And because Wal-Mart had not transferred Huber into that position, or any other vacant, equivalent position, the court concluded that the company had violated the ADA. *Id.* at 24-26.

4.   The Eighth Circuit reversed. *Id.* at 9. It noted that the circuits to have decided the question "differ with respect to the meaning of the reassignment language under the ADA." *Id.* at 5. But unlike the district court, the Eighth Circuit agreed with the Seventh Circuit's view. *Id.* at 6-8. The Eighth Circuit held that "the ADA only requires Wal-Mart to allow Huber to compete for the job, but the statute does not require Wal-Mart to turn away a superior applicant." *Id.* at 7. In reaching that conclusion, the court relied on the Seventh Circuit's pre-*Barnett* statement that "'[t]he contrary rule would convert a nondiscrimination statute into a mandatory preference statute.'" *Id.* (quoting *Humiston-Keeling*, 227 F.3d at 1028). The Eighth Circuit did not attempt to reconcile its holding with the EEOC's interpretation of the reassignment

8

requirement in the ADA regulations.[1] Because "Huber was treated exactly as all other candidates were treated for the Wal-Mart job opening, no worse and no better," the Eighth Circuit concluded that the company provided all the accommodation that was required. *Id.* at 9.

Huber sought rehearing and rehearing *en banc*. The Eighth Circuit denied her petition, but only four of the eleven active circuit judges actually voted for that result. *Id.* at 27-28. Three judges did not participate, and four judges (Judges Murphy, Bye, Melloy, and Smith) dissented. *Id.* Judge Murphy spoke for the four dissenters:

> Because the panel's opinion renders a statutory provision in the ADA superfluous, overlooks EEOC guidance, and is contrary to the Supreme Court's admonition in *US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002), that preferences are a valid means to achieve the statutory goals, I respectfully dissent from the denial of an en banc rehearing of this case.

*Id.* at 28.

————————◆————————

---

[1] Huber had called the court's attention to the relevant EEOC pronouncements in both her brief and oral argument before the Eighth Circuit.

9

### REASONS FOR GRANTING THE WRIT

The Eighth Circuit acknowledged that its holding conflicted with the Tenth Circuit's holding in *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (*en banc*). See App., *infra*, at 5-8. And although the Eighth Circuit denied it, see *id.* at 6 n.2, its holding also conflicted with the District of Columbia Circuit's holding in *Aka v. Washington Hosp. Center*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). There is now an intractable split in the circuits on the interpretation of the ADA's "reassignment" requirement, with the Seventh and Eighth Circuits lined up on one side and the Tenth and District of Columbia Circuits lined up on the other. Moreover, the judges who dissented from the denial of *en banc* rehearing correctly observed that the Eighth Circuit's ruling "renders a statutory provision in the ADA superfluous, overlooks EEOC guidance, and is contrary to the Supreme Court's admonition in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), that preferences are a valid means to achieve the statutory goals." App., *infra*, at 28. This Court should grant certiorari to resolve the conflict in the circuits and make clear, in accordance with the EEOC's interpretation, that the "reassignment" language cannot be satisfied by merely permitting a disabled incumbent employee to compete with the rest of the world for a vacant, equivalent position.

Even if the Court does not set the case for plenary review, it should grant certiorari, vacate the Eighth Circuit's judgment, and remand for further proceedings. Twelve days after the Eighth Circuit

10

issued the decision under review, this Court issued its decision in *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339 (2007). In *Long Island Care*, the Court emphasized that "an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." *Id.* at 2349 (internal quotation marks omitted). The Eighth Circuit not only disregarded the statutory text but also entirely ignored the EEOC's interpretation of the Commission's own "reasonable accommodation" regulations – an interpretation that is in direct conflict with the court's decision. Had the Eighth Circuit heeded the principle of deference articulated in *Long Island Care*, it could not have done so.

I.   **The Eighth Circuit Incorrectly Decided an Important Question of Law on Which the Circuits are in Conflict**

A.   **There is a Longstanding Conflict in the Circuits Regarding the Interpretation of the ADA's Requirement of "Reassignment" as a Reasonable Accommodation**

As both the district court and the Eighth Circuit acknowledged, App., *infra*, at 5, 15, this case implicates a longstanding conflict in the circuits. In reversing the district court's judgment of liability, the Eighth Circuit held that the ADA "does not require an employer to reassign a qualified disabled employee to a vacant position when such a reassignment would violate a legitimate nondiscriminatory policy of the

11

employer to hire the most qualified candidate." *Id.* at 8. By requiring "reassignment" as a form of reasonable accommodation, the court held, "the ADA only *requires Wal-Mart to allow Huber to compete for the job, but does not require Wal-Mart to turn away a superior applicant." *Id.* at 7. In so holding, the court expressly relied on the Seventh Circuit's decision in *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir. 2000), which held that "the ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant." *Id.* at 1029. Quoting *Humiston-Keeling*, the Eighth Circuit reasoned that "[t]he contrary rule would convert a non-discrimination statute into a mandatory preference statute." App., *infra*, at 7.

But the holdings of the Seventh and Eighth Circuits directly conflict with holdings of the Tenth and District of Columbia Circuits. In *Smith, supra,* the plaintiff argued that his employer violated the ADA by refusing to reassign him to various vacant positions within the company; the *en banc* Tenth Circuit reversed the district court's grant of summary judgment to the employer. See *Smith*, 180 F.3d at 1179-1181. In reaching its decision, the Tenth Circuit specifically rejected the argument "that the reassignment duty imposed by the ADA is no more than a duty merely to consider without discrimination a *disabled employee's request for reassignment along* with all other applications the employer may receive from other employees or job applicants for a vacant position." *Id.* at 1164. That argument, the court

12

concluded, "does violence to the literal meaning of the word reassignment" and "would render the reassignment language in 42 U.S.C. § 12111(9) a nullity." *Id.* Instead, the Tenth Circuit held that "the reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position." 180 F.3d at 1165. It endorsed the EEOC's statement that "[r]eassignment means that the employee gets the vacant position if s/he is qualified for it. Otherwise reassignment would be of little value and would not be implemented as Congress intended." *Id.* at 1166-1167 (internal quotation marks omitted). By endorsing the precise argument the Tenth Circuit rejected, the Eighth Circuit brought itself squarely into conflict with the *Smith* holding. Indeed, the Eighth Circuit itself acknowledged the conflict. See App., *infra*, at 5-8.

The Eighth Circuit's holding also conflicts with the holding in *Aka*, *supra*. The *Aka* plaintiff, whose disability prevented him from performing his original job, argued that his employer violated the ADA by refusing to transfer him to various vacant positions for which he was qualified. See *Aka*, 156 F.3d at 1287-1288. The district court granted summary judgment to the employer, but the *en banc* D.C. Circuit reversed. See *id.* at 1306. As had the Tenth Circuit, the *Aka* court specifically rejected the argument that the "only right" created by the ADA's reassignment language is "to be treated like any other applicant for [the] position" sought in reassignment. *Id.* at 1303.

13

The D.C. Circuit held that "the word 'reassign' must mean more than allowing an employee to apply for a job on the same basis as anyone else." *Id.* at 1304. It reasoned that "the core word 'assign' implies some active effort on the part of the employer," and that "the ADA's reference to reassignment would be redundant" if "a disabled employee is never entitled to any more consideration for a vacant position than an ordinary applicant." *Id.*

The Eighth Circuit denied that its ruling conflicted with *Aka.* See App., *infra,* at 6 n.2. As the Eighth Circuit read *Aka,* that case holds only that "'allow[ing] the disabled employee to submit his application along with all of the other candidates'" is insufficient, but it says nothing about when an employer must actually reassign such an employee. *Id.* (quoting *Aka,* 156 F.3d at 1305). But *Aka* cannot be read so narrowly. The D.C. Circuit specifically held that an employer cannot satisfy its reassignment obligations by "treat[ing]" the disabled employee "like any other applicant for [the new] position" and giving her the same "consideration for a vacant position [as] an ordinary applicant." *Aka,* 156 F.3d at 1303, 1304. The Eighth Circuit held precisely the opposite: that the ADA requires only "a legitimate nondiscriminatory policy of the employer to hire the best candidate," App., *infra,* at 8; and that Wal-Mart had satisfied its reassignment obligations because "Huber was treated exactly as all other candidates were treated for the Wal-Mart job opening, no worse and

14

no better." *Id.* at 9. That holding cannot be squared with *Aka.*

In addition to the direct conflicts with the decisions of the Tenth and District of Columbia Circuits, the Eighth Circuit's decision stands in tension with the decisions of a number of other courts of appeals. The Third Circuit, for example, has held that a "disability-neutral rule" cannot automatically defeat the ADA's reassignment obligation. *Shapiro v. Township of Lakewood*, 292 F.3d 356, 360-361 (3d Cir. 2002) (Alito, J.). That holding conflicts with the rationale employed by the Eighth Circuit here – that a "legitimate nondiscriminatory policy" defeats the reassignment obligation. App., *infra*, at 8. And the Second, Third, Sixth, and Ninth Circuits have described the reassignment duty in mandatory terms – terms inconsistent with the Eighth Circuit's holding that an employer need do no more than allow the employee to compete for a new position on the same basis as all other applicants.[2]

---

[2] For example, in *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 565 (2nd Cir.), cert. denied, 531 U.S. 931 (2000), the Second Circuit rejected the employer's argument that "individuals who are unable to perform the duties of their current positions cannot require their employers to transfer them to other vacant positions which they are capable of performing." The court concluded, to the contrary, that "[i]f Jackan can establish that there was a vacant position into which he could have been transferred pursuant to then-existing civil service rules whose duties he could have performed, he may claim the protection of the ADA." *Id.* at 565-566. In *Mengine v.*

(Continued on following page)

15

The Eighth Circuit's decision thus implicates a longstanding conflict in the circuits. And it is a conflict with real consequences. A company with operations in the Eighth and Tenth Circuits is now subject to two different and inconsistent rules governing its treatment of employees who acquire disabilities while working for them. An employee with a disability in Kansas City, Missouri, has lesser rights under the ADA than an employee with a disability in Kansas City, Kansas. That state of affairs intolerably undermines Congress's express purpose "to provide a clear and comprehensive *national* mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (emphasis added).

---

*Runyon*, 114 F.3d 415 (3rd Cir. 1997), the Third Circuit similarly stated that "an employer has a duty to reassign a disabled employee if an already funded, vacant position at the same level exists." *Id.* at 419. (*Mengine* interpreted Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which since 1992 has imposed identical obligations as the ADA. See 29 U.S.C. § 794(d).) In *Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999), the Sixth Circuit declared that "[t]he ADA plainly states that re-assignment" – not consideration for reassignment – "may be required to reasonably accommodate a worker with a disability." *Id.* at 634. And in *Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2006), cert. denied, 127 S. Ct. 1252 (2007), the Ninth Circuit favorably cited the Tenth Circuit's decision in *Smith* and held that a plaintiff "is a qualified individual under the ADA if he can perform the essential functions of a reassignment position, with or without reasonable accommodation, even if he cannot perform the essential functions of the current position." *Id.* at 1089 (brackets and internal quotation marks omitted).

16

This Court should grant the writ of certiorari to resolve the conflict.

**B. The Eighth Circuit's Decision Conflicts with the ADA's Plain Text, This Court's Decision in *Barnett*, and the EEOC's Directives**

1. The Eighth Circuit's ruling disregards the plain import of the ADA's reassignment language. The statute lists "reassignment" – not "the opportunity to apply for reassignment" – as a reasonable accommodation. 42 U.S.C. § 12111(9)(B). The Eighth Circuit's interpretation of that language would render it superfluous. If the inclusion of the "reassignment" phrase in § 12111(9)(B) requires only that an employee with a disability be treated "no worse and no better" than "all other candidates" who apply for a vacant position, App., *infra*, at 9, that language adds nothing to the general prohibition against disparate treatment in 42 U.S.C. § 12112(a). This Court has repeatedly "cautioned against reading a text in a way that makes part of it redundant." *National Assn. of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2536 (2007).

Moreover, by reading the ADA's reassignment language as merely adopting an antidiscrimination rule, the Eighth Circuit's decision disregards Congress's express declaration that reassignment is a form of "reasonable accommodation." 42 U.S.C. § 12111(9). This Court has emphasized that the

17

accommodation requirement demands that employers do more than simply refrain from disparate treatment. See *Barnett*, 535 U.S. at 397-398; *Board of Trustees v. Garrett*, 531 U.S. 356, 372-373 (2001). And indeed, none of the other examples of accommodations listed in 42 U.S.C. § 12111(9)(B) ("job restructuring, part-time or modified work schedules," "acquisition or modification of equipment or devices," etc.) could be subject to the proviso that an employer can withhold the accommodation based on a "legitimate nondiscriminatory policy." Cf. App., *infra*, at 8. As this Court has explained, "[m]any employers will have neutral rules governing the kinds of actions most needed to reasonably accommodate a worker with a disability." *Barnett*, 535 U.S. at 398. If the accommodation requirement were limited to cases in which the employer's failure to accommodate constituted disparate treatment, "the 'reasonable accommodation' provision could not accomplish its intended objective." *Id.* at 397. The ADA's text provides no basis for treating reassignment any differently from the other accommodations listed in Section 12111(9)(B). Cf. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574-575 (1995) (terms in a statutory list are to be construed similarly to one another).

The Eighth Circuit did not follow the plain import of the ADA's text, because it agreed with the Seventh Circuit that doing so "would convert a nondiscrimination statute into a mandatory preference statute." App., *infra*, at 7 (quoting *Humiston-Keeling*, 227 F.3d at 1028). But this Court rejected the

18

identical argument in *Barnett*: "While linguistically logical, this argument fails to recognize what the Act specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal." *Barnett*, 535 U.S. at 397. The Court noted that "[b]y definition any special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*, preferentially." *Id.* The Eighth Circuit's ruling flies in the face of *Barnett* and calls out for this Court's review.[3]

2. The Eighth Circuit's ruling also disregards the history of the ADA's reassignment provision. The principle applied by the Eighth Circuit – that an employer has no duty to reassign an employee with a

---

[3] The Eighth Circuit attempted to draw support from *Barnett*'s holding that a reassignment that would violate the terms of an established seniority system is ordinarily not a reasonable accommodation. See App., *infra*, at 8. But, contrary to the Eighth Circuit's suggestion, *id.*, *Barnett* did not hold that a "legitimate nondiscriminatory policy" can trump the reasonable accommodation of reassignment – to the contrary, the Court directly rejected that argument. See *Barnett*, 535 U.S. at 397-398. Rather, the Court relied on labor-relations concerns that are uniquely salient in the context of seniority systems – that those systems create "expectations of consistent, uniform treatment," that they "include an element of due process," and that they "encourage employees to invest in the employing company." *Id.* at 404 (internal quotation marks omitted). And the Court held that a reassignment that would trump a seniority system might be a required accommodation in some circumstances, see *id.* at 405 – a holding that is inconsistent with the Eighth Circuit's holding that a nondiscriminatory policy automatically renders reassignment an unreasonable accommodation.

19

disability so long as it treats her the same as "all other candidates" for the new position, App., *infra*, at 9 – is precisely the principle that lower courts applied under the Rehabilitation Act and that Congress overturned by adding the reassignment language to the ADA.

At the time the ADA was enacted, neither the Rehabilitation Act nor its implementing regulations listed reassignment as a possible reasonable accommodation. See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496-497 (7th Cir. 1996) (discussing the law prior to 1992, when the Rehabilitation Act was amended to incorporate the ADA's standards of liability). Courts applying the Rehabilitation Act therefore concluded that there was nothing in the statute or its "regulations to suggest that reasonable accommodation requires an agency to reassign an employee to another position." *Carter v. Tisch*, 822 F.2d 465, 468 (4th Cir. 1987) (quoting *Carty v. Carlin*, 623 F. Supp. 1181, 1189 (D. Md. 1985)). Rather, an employer was required to find a new position for an employee with a disability only in those cases where the failure to do so constituted disparate treatment: "[A]n employer is not required to find alternative employment for an employee who cannot perform his job unless the employer normally provides such alternative employment under its existing policies." *Id.* at 467; accord *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580-1581 (Fed. Cir. 1989). Any duty to find an alternative position under these cases was purely a product of the statute's general nondiscrimination

20

rule and was *"wholly independent of the 'reasonable accommodation' requirement." Guillot v. Garrett*, 970 F.2d 1320, 1327 (4th Cir. 1992) (emphasis in original).

By including "reassignment to a vacant position" in the definition of "reasonable accommodation," 42 U.S.C. § 12111(9)(B), Congress made clear that the holdings in those cases that rejected "reassign[ment]" as an accommodation under the Rehabilitation Act could not apply to the ADA. Congress's decision to depart from the Rehabilitation Act in this respect is particularly notable. The ADA's operative terms are based largely on the equivalent terms in the Rehabilitation Act. See *Bragdon v. Abbott*, 524 U.S. 624, 631-632 (1998). Indeed, Congress directed the courts "to construe the ADA to grant at least as much protection as provided by" the Rehabilitation Act and its accompanying regulations. *Id.* at 632; see 42 U.S.C. § 12201(a). In the rare instances in which Congress departed from the Rehabilitation Act, those departures must be given effect. By failing to give effect to Congress's addition of the reassignment language to the ADA's accommodation definition, the Eighth Circuit's decision contravenes Congress's clear intent. This Court should grant certiorari to ensure that Congress's intent prevails.

3.  The Eighth Circuit's interpretation of the reassignment language also conflicts with the EEOC's interpretation of its "reasonable accommodation" regulations. The EEOC is the agency that administers and enforces Title I of the ADA. Pursuant to express statutory direction, 42 U.S.C. § 12116, the

21

EEOC has promulgated regulations implementing the ADA's "reasonable accommodation" requirement. See 29 C.F.R. §§ 1630.2(o), 1630.9; see *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 78-87 (2002) (EEOC regulations implementing ADA Title I are entitled to *Chevron* deference).

The Commission has interpreted those regulations as requiring that employees with disabilities be reassigned whenever they are "qualified" for the vacant position: "Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time." 29 C.F.R. Part 1630, App. § 1630.2(o). The Commission has emphasized that the reassignment requirement "means that the employee gets the vacant position if s/he is qualified for it. Otherwise, reassignment would be of little value and would not be implemented as Congress intended." *Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Enforcement Guidance No. 915.002 (Oct. 17, 2002). The Commission rejected the suggestion that the reassignment duty requires only "that the employee be permitted to compete for a vacant position." *Id.* Instead, it has specifically declared that "[t]he employee does not need to be the best qualified individual for the position in order to obtain it as a reassignment." *Id.*

Without even citing the EEOC's pronouncements and in direct conflict with them, the Eighth Circuit held that an employee with a disability has no right

22

to reassignment unless she is "the most qualified candidate." App., *infra*, at 8. But the Eighth Circuit should not have so lightly disregarded the Commission's position. As this Court recently emphasized, "an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." *Long Island Care*, 127 S. Ct. at 2349 (internal quotation marks omitted). As interpretations of the Commission's regulations, the EEOC pronouncements on reassignment are therefore entitled to "controlling" weight. And even if they were not, they would still "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bragdon*, 524 U.S. at 642 (internal quotation marks omitted). The Commission's expertise in employment relations and experience with the labor market strongly supports its conclusion that the reassignment duty "would be of little value" if it required only "that the employee be permitted to compete for a vacant position." *Reasonable Accommodation and Undue Hardship*, *supra*. The Eighth Circuit erred in disregarding that conclusion, and it effectively invalidated the EEOC's regulatory pronouncements throughout its seven-state jurisdiction. Certiorari is necessary to correct that error.

23

## II. This Court's Decision in *Long Island Care*, Issued Twelve Days After the Eighth Circuit's Ruling, is an Intervening Development That May Determine the Outcome of this Litigation

Even if the Court does not set the case for plenary review, it should grant the writ of certiorari, vacate the Eighth Circuit's judgment, and remand for further consideration in light of *Long Island Care, supra*. In *Long Island Care*, 127 S. Ct. at 2349 – a case decided twelve days after the Eighth Circuit issued its judgment – this Court emphasized the deference that is due to an agency's interpretation of its own regulations. This Court accorded "controlling" weight to "an 'Advisory Memorandum' issued only to internal Department [of Labor] personnel and which the Department of Labor appear[ed] to have written in response to" the very litigation that was before the Court. *Id.*

Had this Court's opinion in *Long Island Care* been issued before the Eighth Circuit decided this case, the court of appeals could not have disregarded the EEOC's interpretation of its regulations. That interpretation – which directly conflicts with the Eighth Circuit's decision – was first developed in the interpretive guidance publicly issued as an appendix to the EEOC's regulations in 1991. See 29 C.F.R. Part 1630, App. § 1630.2(o). It was further developed in publicly available enforcement guidance that was originally issued in 1999 and then amended, in response to this Court's *Barnett* decision, in 2002. See

24

*Reasonable Accommodation and Undue Hardship*, *supra*. If the purely internal advisory memorandum prepared in response to the *Long Island Care* litigation was "controlling," surely the EEOC's well settled and widely promulgated interpretation of the reassignment duty in its ADA regulations carries the same weight.

But *Long Island Care* had not been decided when the Eighth Circuit issued its ruling, and the court of appeals did not even cite the EEOC's longstanding interpretation of the reassignment duty. Accordingly, this is a textbook case for an order granting certiorari, vacating, and remanding. This Court's decision in *Long Island Care* is an "intervening development[]" (or a "recent development[] that "the court below did not fully consider") that "reveal[s] a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996). Because the Eighth Circuit did not have a full opportunity to consider the import of *Long Island Care*, and that precedent may well dispose of this litigation by requiring the court to defer to the EEOC's pronouncements, this Court should grant the writ of certiorari, vacate the judgment below, and remand for further consideration of that case.

———————◆———————

25

## CONCLUSION

The petition for writ of certiorari should be granted and the case set for plenary review. In the alternative, the Court should grant the petition, vacate the Eighth Circuit's judgment, and remand for further consideration in light of *Long Island Care*, *supra*.

Respectfully submitted,

C. BRIAN MEADORS
*Counsel of Record*
REBEKAH J. KENNEDY
PRYOR, ROBERTSON, BEASLEY,
   SMITH & KARBER, PLLC
315 North 7th Street;
   P. O. Drawer 848
Fort Smith, AR 72902-0848
(479) 782-8813

ERIC SCHNAPPER
UNIV. OF WASHINGTON
   SCHOOL OF LAW
William H. Gates Hall,
   Box 353020
Seattle, WA 98195-3020
(206) 616-3167

SAMUEL R. BAGENSTOS
APPELLATE LITIGATION CLINIC
WASHINGTON UNIVERSITY LAW
1 Brookings Drive, Box 1120
Saint Louis, MO 63130-4899
(314) 935-9097

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONNA J. ALSTON                    :

        Plaintiff                    :

v.                                 :         Civil No. 07-00122 (ESH)

WASHINGTON METROPOLITAN            :
AREA TRANSIT AUTHORITY

                               :

        Defendant

## <u>SUPPLEMENTARY AFFIDAVIT OF DONNA ALSTON</u>

1.     I, Donna Alston give this affidavit upon my personal knowledge and state that I am over 18 years of age and competent to testify herein.

2.     With respect to my prior work background I had six years of experience working in receptionist work answering phones. I did this work while I worked as a clerk typist at the Navy Yard, VA and other government agencies. These jobs required me to constantly answer phones and perform receptionist duties.

3.     I did not have any way to find out about the receptionist position that was apparently advertised in May 2007. As stated in my prior affidavit, I was not sent the vacancy announcements by WMATA. However, I did go down to the WMATA offices to try to access all vacancy announcements on the WMATA computer. The clerk told me that the computer was broken in this period of time of May 2007 and for several months thereafter.

4.     So I did not have any access to the WMATA vacancy announcements on computer either in May 2007. I then asked the clerk each time I came down to WMATA's offices what jobs were available that I was qualified for and were



within my work restrictions and I was never told about the receptionist position

being available. If I had been told that this position was available I definitely

would have applied for it but I had no knowledge of the vacancy announcement

and did everything in my power to find out about available jobs from May 2007

and for several months thereafter.

I SOLEMNLY SWEAR AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT
THE MATTERS AND FACTS CONTAINED IN THE FOREGOING ARE TRUE AND
CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Donna Alston