UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONNA J. ALSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0122 (ESH) |
| ) | |
| WASHINGTON METROPOLITAN AREA ) | |
| TRANSIT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiff Donna J. Alston has brought suit alleging that her employer, Washington Metropolitan Area Transit Authority ("WMATA"), violated the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, by failing to reasonably accommodate her disability by reassigning her to the positions of Job Access Information Assistant or Receptionist. The parties have filed cross-motions for summary judgment and, for the reasons stated herein, both motions will be denied.

**FACTUAL BACKGROUND**

Plaintiff was hired by WMATA on August 16, 1999, as a bus operator trainee. (Def.'s Stmt. of Undisputed Facts ["Def.'s Facts"] ¶ 2; Pl.'s Stmt. of Undisputed Facts ["Pl.'s Facts"] ¶ 1.) Plaintiff's employment was terminated on August 23, 1999, because of unsatisfactory job performance. (Def.'s Ex. 2 [Memorandum on Dismissal].) She was then rehired on June 26, 2000, for the position of Bus Cleaner Shifter. (Def.'s Facts ¶ 4; Pl.'s Facts ¶ 2.) Because she was unable to obtain her Commercial Driver's License, a prerequisite for the Bus Cleaner Shifter position, plaintiff accepted a voluntary demotion to the position of Bus Cleaner on August 2,

1

2000.  (Def.'s Facts ¶ 6; Def.'s Ex. 4b [Memorandum on Voluntary Demotion].)  Plaintiff worked as a Bus Cleaner until April 25, 2006, when she was declared medically ineligible due to a respiratory impairment.  (Def.'s Facts ¶ 8; Pl.'s Facts ¶ 8.)

The position of Bus Cleaner is in the Local 689, Amalgamated Transit Union, AFL-CIO, Collective Bargaining Unit, Maintenance and Construction District.  (Def.'s Facts ¶ 7.)  As a medically-ineligible, employee of Local 689, plaintiff was entitled to the protections and benefits of Section 124 of the Collective Bargaining Agreement, which permitted her to remain an employee for three years from the date she was declared medically ineligible while seeking reassignment to another position within WMATA.  (*Id.* ¶ 9.)

On May 15, 2006, Roslyn Rikard, an Employment Program Specialist in Workforce Services, sent a letter to plaintiff stating that she had been referred for assistance with a job change. (Def.'s Ex. 24 [Letter to Donna Alston from Roslyn Rikard].)  Ms. Rikard met with plaintiff on at least three occasions to answer questions and provide information.  (Rikard Aff. ¶ 6.)  Initially, Workforce Services mailed job vacancy announcements to plaintiff.   (*Id.* ¶ 7.) After defendant switched to an online posting and application system, Ms. Rikard notified all Section 124 employees of the change, explained how to access the system and provided the addresses of all WMATA locations where employees could use a computer to access the system. (*Id.* ¶ 8.)

From July 16, 2007 through September 14, 2007, and from October 1, 2007 through December 6, 2007, WMATA offered a training program for the position of Station Manager within the Rail Service.  (*Id.* ¶ 12.)  The training was limited to Section 124 employees.  (*Id.*) Plaintiff was referred to the WMATA Health Services for medical clearance for the Station

Manager position, but failed to keep either of two appointments that were made for her and thus, was not cleared. (*Id.*)

Plaintiff applied for over 70 jobs, before and after being declared medically ineligible for the Bus Cleaner position. (Pl.'s Facts ¶ 12.) Only two of these positions are presently at issue in this case. (*See* Pl.'s Mot. 18.) In the fall of 2005, plaintiff applied for the position of Job Access Information Assistant, but on January 30, 2006, it was given to an applicant who both parties agree was more qualified than plaintiff. (*Id.* ¶ 10.) In 2006, defendant posted a notice of vacancy for the position of Receptionist. Plaintiff did not apply and the position was not filled. (*See* Pl.'s Mot. 19; Def.'s Opp'n 11.) In May 2007, the Receptionist position was reposted. Plaintiff did not receive the job vacancy announcement and did not apply. (*Id.* ¶ 11.) However, she alleges that had she known of the vacancy, she would have applied, and according to her vocational rehabilitation expert, plaintiff would have been qualified to work as a receptionist. (*Id.*)

On January 17, 2007, plaintiff filed this lawsuit alleging that defendant discriminated against her based on her disability and failed to provide her with reasonable accommodation. Both parties have now moved for summary judgment.

## ANALYSIS

I. **LEGAL STANDARD**

    A. **Summary Judgment**

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor." *Id.* at 255; *see also Wash. Post. Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-movant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). When addressing cross-motions for summary judgment, the Court "consider[s] the record evidence with respect to each motion separately to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Phillip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir. 1997) (internal quotations marks and citation omitted.)

### B. The Rehabilitation Act

"The Rehabilitation Act prohibits discrimination 'solely by reason of her or his disability' against an 'otherwise qualified individual with a disability.'" *Kersey v. WMATA*, 533 F.Supp.2d 181, 183 (D.D.C. 2008) (quoting 29 U.S.C. § 794(a) (2000)). "The Act states that '[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [certain provisions] of the Americans with Disabilities Acts [ADA]." *Breen v. Dep't of Transp.*, 282

4

F.3d 839, 841 (D.C. Cir. 2002) (quoting 29 U.S.C. § 794(d)) (alterations in original). "Because of the similarities between the Rehabilitation Act and the ADA, cases interpreting either are applicable or interchangeable." *Scarborough v. Natsios*, 190 F.Supp.2d 5, 19 n. 10 (D.D.C. 2002) (internal quotation marks and citation omitted).

To establish a *prima case* of unlawful discrimination based on her employer's failure to accommodate her disability, plaintiff must show that "(1) she is disabled within the meaning of the Act; (2) her employer was aware of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) she was denied a reasonable accommodation." *Olds v. Natsios*, 2006 WL 416157, at * 3 (D.D.C. Feb. 22, 2006) (citing *Scarborough*, 190 F.Supp.2d at 19) (citations omitted).[1] "[T]he regulations implementing the Rehabilitation Act provide that an agency's duty of reasonable accommodation includes, in certain circumstances, the duty to reassign an employee to a vacant position . . . ." *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000). *See also Chapple v. Waste Mgmt. Inc.*, 2007 WL 628361, * 9 (D.Minn. Feb. 28, 2007) ("If no reasonable accommodation will allow a disabled employee to perform his current job, then 'in certain circumstances, reassignment may be necessary as a reasonable accommodation.'") (*quoting Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1018 (8th Cir. 2002)).

Once an employee has requested reassignment, the employer has a duty to engage in an interactive process with the employee to determine whether there is a job she can perform given

---

[1] Other courts in this Circuit have applied a three-prong test. *See Jones v. District of Columbia*, 505 F.Supp.2d 78, 88 n. 6 (D.D.C. 2007). The only real difference between the two formulations is that "the notice requirement of the four-prong test is implied in the three-prong test's requirement of an adverse employment decision due to a disability." *Id.* The difference is not material to the resolution of the parties' motions.

her limitations. *Jones*, 505 F.Supp. 2d at 91. To prevail on her reasonable accommodation claim, however, plaintiff must show more than that her employer failed to engage in the interactive process. She must demonstrate "that a reasonable accommodation was possible and would have led to a reassignment position." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (en banc). Thus plaintiff "bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time [she] sought transfer." *Jackan v. New York State Dept. of Labor*, 205 F.3d 562, 567 (2d Cir. 2000).

## II.    THE HIRING OF A MORE QUALIFIED APPLICANT IS NOT A DEFENSE TO PLAINTIFF'S REHABILIATION ACT CLAIM

Both parties move for summary judgment, arguing that a legal question is dispositive -- does the Rehabilitation Act require an employer to reassign a disabled employee to a vacant position for which the employee is qualified, even if there are more qualified applicants for the position? There is no dispute that both positions now identified by plaintiffs were filled by more qualified candidates. But, according to defendant, even assuming that plaintiff could establish her *prima facie* case, her right to reasonable accommodation through reassignment must give way to its policy of hiring the most qualified candidate for an open position. Plaintiff maintains that the reassignment provision of the Rehabilitation Act requires more from defendant than the opportunity to compete equally with other candidates for a vacant position. While the question whether an employer is required by the ADA and the Rehabilitation Act to reassign a disabled employer to a vacant position for which a more qualified applicant is available is a difficult one upon which the Circuits have split, *compare Smith v. Midland Brake Inc.*, 180 F.3d 1154 (10th Cir. 1999) *with E.E.O.C. v. Humiston-Keeling, Inc.*, 227 F.3d 1024 (7th Cir. 2000); *Huber v.*

*Wal-Mart Stores, Inc.*, 486 F.3d 480 (8th Cir. 2007),[2] this Court is bound by the D.C. Circuit's decision on this issue in *Aka v. Washington Hosp. Ctr*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc), and under *Aka*, defendant's legal argument must be rejected.

In *Aka*, plaintiff argued that his employer's failure to reassign him after he became disabled, and its hiring of more qualified applicants for the positions for which he applied, violated the ADA. *Id.* at 1303-04. The D.C. Circuit considered and rejected the position, adopted by the dissenting judges, that an employee who becomes disabled on the job is entitled to no more consideration for a vacant position than an ordinary applicant. *Id.* at 1304. The Court explained that the word "reassign" in the statute "must mean more than allowing an employee to apply for a job on the same basis as anyone else" because "[a]n employee who on his own initiative applies for and obtains a job elsewhere in the enterprise would not be described as having been 'reassigned.'" *Id.* The Court further reasoned that "the ADA's reference to reassignment would be redundant if permission to apply were all it meant" given that "the ADA already prohibits discrimination 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures.'" *Id.* (quoting 42 U.S.C. § 12112(a)). Thus, the Court concluded that "reasonable accommodations for existing *employees* who become disabled on the job do not fall within [the ADA's] ban [on 'preferences' for disabled applicants]." *Id.* (emphasis in original).

The Court acknowledges that the holding of *Aka* has been the subject of some dispute

---

[2] The Supreme Court granted certiorari in *Huber* to resolve the Circuit split. *See Huber v. Wal-Mart Stores, Inc.*, 128 S.Ct. 742 (2007). However, the parties subsequently reached a settlement, so the Court dismissed the writ. *See Huber v. Wal-Mart Stores, Inc.*, 128 S.Ct. 1116 (2008).

among the other courts that have considered its holding. The Tenth Circuit relied on *Aka* to support its holding that an employer has a duty to reassign an employee who has become disabled to another position for which he is qualified, even if a more qualified applicant is available. *See Midland Brake Inc.*, 180 F.3d at 1164-65. The Seventh Circuit, in contrast, found that "*Aka* merely rejects an 'interpretation of the reassignment provision as mandating nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates'" which "is not the same thing as holding that an employer must pass over the superior candidate who . . . might himself or herself be disabled or belong to some other protected class." *Humiston-Keeling, Inc.*, 227 F.3d at 1027-28.

  The Court cannot agree with the Seventh Circuit's narrow reading of *Aka*. The *Aka* Court held that the reassignment provision imposes some affirmative duty on the employer to find a position for an employee who has become disabled on the job. To find that this duty is excused by an employer's policy of hiring the most qualified candidate would be to hold that the employer's obligation to a disabled employee is limited to considering him along with every other applicant for the vacant position. This position was expressly rejected in *Aka*. *See Aka*, 156 F.3d at 1304. The Court therefore rejects defendant's argument that *Aka* is not controlling in this case, (*see* Def.'s Opp'n 5-6) and denies defendant's motion for summary judgment.[3]

---

[3] Moreover, as plaintiff points out in her reply (*see* Pl.'s Reply 7-9), this reading of *Aka* is consistent with the EEOC's regulations interpreting the "reasonable accommodation" requirement." The Court must give the EEOC's interpretation of its own regulations "controlling" weight. *See Long Island Care at Home Ltd. v. Coke*, 127 S.Ct. 2339, 2349 (2007). The Commission has specifically stated that "[t]he employee [with a disability] does not need to be the best qualified individual for the position in order to obtain it as a reassignment." *Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Enforcement Guidance No. 915.002 (Oct. 17, 2002). Rather, the "[e]mployer should reassign the individual to an equivalent position, in terms of pay, status, etc . . ., if the individual

**III.    DISPUTED ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT**

Applying *Aka*, the Court concludes that plaintiff is correct that defendant's duty to reassign plaintiff requires more than simply permitting her to compete on an equal basis with any other applicant for an open position. The Court disagrees, however, with plaintiff's assertion that the application of *Aka* requires the grant of summary judgment in her favor. (*See* Pl.'s Mot. 18; Pl.'s Reply 4.)

Plaintiff argues that she is entitled to prevail at summary judgment because her asthma substantially limits her in the major life activity of breathing; defendant was aware of her disability at least by the time it declared her medically ineligible for the position of Bus Cleaner; and because she was qualified for, but not reassigned to either position of Receptionist or Job Access Information Assistant. (*See* Pl.'s Mot. 14). However, as *Aka* explains, there are "[r]ecognized constraints on an employer's obligation to reassign a disabled employee . . . ." *Aka* , 156 F.3d at 1305. Reassignment can only to be to an existing, vacant job for which the plaintiff is qualified, and positions to which other employees have a "legitimate contractual or seniority right" are not considered "vacant." *Midland Brake Inc.*, 180 F.3d at 1170. Furthermore, the "reassignment need not involve a promotion" and the "employer has the authority to pick and choose which appropriate vacant job is to be offered to the otherwise qualified disabled employee." *Id.* Ultimately, the touchstone of the reassignment inquiry is "reasonableness." "Everything that an employer must do in terms of a reassignment is modified by the adjective reasonable, just as that adjective modifies any other accommodation required by

---

is qualified, and if the position is vacant within a reasonable amount of time." 29 C.F.R. Part 1630, App. § 1630.2(o).

the employer under the ADA." *Id.* at 1171. Thus, even assuming, as defendant apparently does, that plaintiff has demonstrated that she suffers from a disability of which defendant was aware, the Court concludes that material disputes of fact exist as to whether she was denied reasonable accommodation.

    **A.**  **A Factual Dispute Exists As To Plaintiff's Qualifications**

  Because both parties agree that plaintiff was medically ineligible to continue working as a Bus Cleaner, plaintiff is required to show that vacant positions existed that were equivalent in terms of status and pay to the Bus Cleaner position, *see* 29 C.F.R. Part 1630, App. § 1630.2(o), and that she was qualified for those positions. *See, e.g.*, *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) ("The plaintiff bears the burden of showing that a vacant position exists and that . . . [she] is qualified for that position.") In support of her position, plaintiff has submitted a report from a vocational rehabilitation expert indicating that she was qualified to perform the Job Access Information Assistant and Receptionist positions (*see* Pl.'s Ex. 14), and deposition testimony from defendant's corporate designee, Steven Godbey, who indicated that at least with respect to the Job Access Information Assistant position, she met the "minimum [qualifications] on paper." (Pl.'s Ex. 16 [Deposition of Steven Godbey] at 24.)[4]

  Defendant responds, however, that plaintiff was not qualified for either position,[5]

---

[4] Significantly, the vocational expert's report does not address the issue of whether the positions of Job Access Information Assistant and Receptionist were equivalent in terms of pay and status.

[5] Additionally, there is a factual dispute as to whether defendant was on notice of plaintiff's disability prior to filling the vacant Job Access Information Assistant position on January 30, 2006. Plaintiff maintains that defendant was on notice as early as October 2002, when she informed her supervisor that she had been to the emergency room and was having trouble breathing. (*See* Pl.'s Mot. 21.) Defendant contends that it was first made aware of

referencing the relevant job descriptions.  (*See* Def.'s Opp'n at 8-9, 12.)  With respect to the Job Access Information Assistant position, it is unclear from the record or from the vocational expert's report whether plaintiff was able "to create and maintain a database, spreadsheets, and word processing applications on a personal computer and to use Authority standard display devices and office equipment" or "effectively learn, or utilize existing computer systems such as ARTS and GIS to plan trips and itineraries."  (Def.'s Ex. 13 [Job Access Information Assistant Job Description] at 2.)   The vocational expert's report reflects that at some point, plaintiff enrolled in a course to learn to use the Microsoft Office Suite, but the report does not indicate whether plaintiff completed that program or whether any of her clerical experience in the early 1990s required any computer skills beyond basic typing.[6]  (*See* Pl.'s Ex. 14 at 4.)  Additionally, the record does not reflect whether plaintiff had "[c]onsiderable progressively responsible administrative support experience."  (Def.'s Ex. 13 at 3.)   The expert report states that plaintiff held a Clerk Typist position at Walter Reed "in the 1990s through a work study program" and "was employed as a Secretary at the V.A. Hospital in 1993, with responsibilities for typing, filing, and answering phones."  (Pl.'s Ex. 14 at 4.)   No further information is given about plaintiff's responsibilities or tenure in either position.

Finally, with respect to the Receptionist position, the expert's report fails to address whether plaintiff  has "two (2) years of experience as a receptionist in a busy office where

---

plaintiff's need for a reassignment on February 17, 2006, when plaintiff informed Dr. Gina Pervall-Walker of her need to be placed in a work environment free from noxious fumes. (*See* Def.'s Mot. 16.)

[6] Furthermore, the record reflects that plaintiff was unable to pass a typing test when she applied for the position of Garage Clerk, which required the ability to type 25 words per minute. (*See* Steven Godbey Aff. ¶ 9.)

11

inquiries are varied and numerous." (Def.'s Ex. 15 [Receptionist Job Description] at 2). Plaintiff has submitted a supplementary affidavit with her reply in which she asserts that she has six years of experience working as a receptionist at the Navy Yard and "other government agencies," (Pl.'s Reply Ex. 2 [Donna Alston Supp. Aff.] ¶ 2) and that "[t]hese jobs required [her] to constantly answer phone and perform receptionist duties." (*Id.*) This generalized statement by plaintiff (offered for the first time in her reply) that she has the experience necessary to perform the job she desires is insufficient to allow plaintiff to prevail on summary judgment.

Based on the conflicting evidence in the record, it is clear that there is a material factual dispute as to whether plaintiff was qualified for either position. Because the Rehabilitation Act "does not require that a disabled employee be reassigned to a position for which is he not otherwise qualified," *Aka*, 156 F.3d at 1305, plaintiff has failed to establish that she is entitled to summary judgment on her reasonable accommodation claim. *See also Midland Brake, Inc*, 180 F.3d at 1178 ("It would not be reasonable to require an employer to reassign an employee to a position for which he or she is not otherwise qualified with or without reasonable accommodation, or to require a redefinition of the essential requirements of a vacant job so as to bring it within the qualification of a disabled employee.").

### B.     A Factual Dispute Exists As To Whether Defendant Was Responsible for Plaintiff's Failure to Receive Reassignment

Moreover, even if plaintiff were qualified for either or both positions, there is a significant question as to whether defendant may be held responsible for failing to reassign her to a new position after she was medically disqualified. (*See* Def.'s Mot. 17 ("WMATA has consistently assisted and attempted to assist the Plaintiff in securing a different position within

WMATA and has more than met its burden under the Rehabilitation Act.").)

"The interactive process is typically an essential component of the process by which a reasonable accommodation can be determined." *Midland Brake, Inc*, 180 F.3d at 1172. "[B]oth parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified . . . for another job within the company and, if so, to identify an appropriate reassignment duty if any is reasonably available." *Id.* "The interactive process includes good-faith communications between the employer and employee." *Id.* "[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability." *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 634 (7th Cir. 1998). "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable *only* if it bears responsibility for the breakdown of the interactive process." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (emphasis added).

Plaintiff contends that defendant was responsible for her failure to receive a reassignment because it did not help her identify positions that she could apply for; it failed to send her job vacancy postings for the last six months of 2007 (which resulted in her missing the opportunity to apply for the Receptionist position);[7] and it denied her the Job Information Access Assistant position for which she applied. (*See* Pl.'s Mot. 8.) Defendant's account of the breakdown in the process is quite different. According to Rosalyn Rikard, she instructed plaintiff to contact her before applying to any open positions so that Rikard could track her applications. (Rikard Aff. ¶ 11.) Plaintiff did not do so, returning only months after submitting her applications without the

---

[7] Plaintiff does not explain, however, why she did not apply for the position the first time it was posted in 2006, when she was receiving the announcements. (*See* Pl.'s Mot. 19-20.)

information that would have allowed Rikard to follow up with the appropriate hiring managers. (*Id.*) Rikard also tried to help plaintiff qualify for a special training program for the position of Station Manager that was limited to medically-eligible Section 124 employees. (*Id.* ¶ 12.) She referred plaintiff to WMATA Health Services for medical clearance, but plaintiff failed to keep either appointment that Rikard made for her. (*Id.*) Finally, it appears that plaintiff never contacted Rikard during the six month period in 2007 to explain that she wasn't receiving job announcements and to inquire about potential vacancies.[8]

On this record, a substantial factual dispute exists as to whether plaintiff's failure to receive reassignment can be attributed to a breakdown in the interactive process caused by defendant. A jury could reasonably conclude that plaintiff's failure to comply with Ms. Rikard's instructions regarding the application process and her refusal to participate in the medical screening for the position of Station Manager obviated any further responsibility on the part of defendant to reassign plaintiff in finding a reassignment. *See, e.g.*, *Midland Brake Inc.*, 180 F.3d at 1177 ("[T]he employer is free to choose the reassignment that is to be offered to the qualified individual with a disability. If the disabled individual rejects that reassignment, the employer is under no obligation to continue offering other reassignments. The ADA does not entitle an employee to a free ranging or perpetual right to a new position within the company.") Plaintiff's motion for summary judgment must therefore be denied.

---

[8] In her supplementary affidavit, plaintiff claims for the first time that she "did go down to the WMATA offices to try to access all vacancy announcements on the WMATA computer" and [t]he clerk told [her] that the computer was broken in this period of time of May 2007 and for several months thereafter." (Pl.'s Reply Ex. 2 ¶ 3.) She maintains that she "then asked the clerk each time I came down to WMATA's offices what jobs were available that I was qualified for and were within my work restrictions and I was never told about the receptionist position being available." (*Id.* ¶ 4.)

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment [Dkt. 14] is DENIED and plaintiff's motion for summary judgment [Dkt. 17] is DENIED.

**SO ORDERED**.

                                               /s/
                              ELLEN SEGAL HUVELLE
                              United States District Judge

DATE:    August 12, 2008